**NICHOLAS & BUTLER, LLP**
    Matthew B. Butler (SBN 201781)
    Jeffrey D. Montez (SBN 260192)
225 Broadway, 19th Floor
San Diego, California 92101
Telephone: (619) 325-0492
Facsimile: (619) 325-0496
mbutler@nblaw.org
jmontez@nblaw.org

**WINTERS & ASSOCIATES**
    Jack B. Winters, Jr. (SBN 82998)
1901 First Avenue, Suite 400
San Diego, CA 92101
(619) 234-9000

Attorneys for Plaintiffs
Geoffrey Moyle, Pauline Arwood
Thomas Rollason, and Jeannie Sanders

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEOFFREY MOYLE, an individual, PAULINE ARWOOD, an individual, THOMAS ROLLASON, an individual, and, JEANNIE SANDERS, an individual, on behalf of themselves and all others similarly situated, and ROES 1 through 500, inclusive,<br><br>    Plaintiffs,<br><br>vs.<br><br>LIBERTY MUTUAL RETIREMENT BENEFIT PLAN; LIBERTY MUTUAL RETIREMENT PLAN RETIREMENT BOARD; LIBERTY MUTUAL GROUP INC., a Massachusetts company; LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts company; and, DOES 1 through 50, inclusive,<br><br>    Defendants. | CASE NO.: 10-CV-2179-DSM-BLM<br><br>**CLASS ACTION FIRST AMENDED COMPLAINT FOR:**<br><br>**(1)**   **Determination of Terms of Plan and Clarification of Rights to Future Benefits Under 29 U.S.C. § 1132(a)(1)(B);**<br><br>**(2)**   **Promissory Estoppel;**<br><br>**(3)**   **Violation of 29 C.F.R. 2560.503-1 (h)(2)(i);**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION FIRST AMENDED COMPLAINT

N&B
ATTORNEYS AT LAW
SAN DIEGO

Plaintiffs Geoffrey Moyle, Pauline Arwood, Thomas Rollason and Jeannie Sanders (collectively "Plaintiffs") on behalf of themselves and all others similarly situated, hereby complain and allege on information and belief as follows:

# I.

# PARTIES

## A. INDIVIDUAL PLAN PARTICIPANTS

1. Plaintiff GEOFFREY MOYLE is an individual and a former employee of Golden Eagle Insurance Company (hereinafter "Old Golden Eagle") and/or Golden Eagle Insurance Corporation (hereinafter "Golden Eagle Corp."). Moyle is a participant in defendant LIBERTY MUTUAL RETIREMENT BENEFIT PLAN as defined under 29 U.S.C. § 1002(7). Moyle is a resident of San Diego County, California.

2. Plaintiff PAULINE ARWOOD is an individual and a former employee of Old Golden Eagle and Golden Eagle Corp. Arwood is a participant in defendant LIBERTY MUTUAL RETIREMENT BENEFIT PLAN as defined under 29 U.S.C. § 1002(7). Arwood is a resident of San Diego County, California.

3. Plaintiff THOMAS ROLLASON is an individual and a former employee of Old Golden Eagle and Golden Eagle Corp. Rollason is a participant in defendant LIBERTY MUTUAL RETIREMENT BENEFIT PLAN as defined under 29 U.S.C. § 1002(7). Rollason is a resident of San Diego County, California.

4. Plaintiff JEANNIE SANDERS is an individual and a former employee of Old Golden Eagle and Golden Eagle Corp. Sanders is a participant in defendant LIBERTY MUTUAL RETIREMENT BENEFIT PLAN as defined under 29 U.S.C. § 1002(7). Sanders is a resident of San Diego County, California.

# II.

# CLASS ALLEGATIONS

5. Plaintiffs bring this action on behalf of themselves and all members of the class (the "Class") defined as follows: all former employees of Golden Eagle Insurance Company (hereinafter "Old Golden Eagle"); Golden Eagle Insurance Corporation (hereinafter "Golden Eagle

1  Corp."); Liberty Mutual Group Inc. (hereinafter "LMGI") and/or Liberty Mutual Insurance
2  Company (hereinafter "LMIC") (LMGI and LMIC are collectively referred to hereinafter as
3  "Liberty Mutual") from October 1, 1997 who participated in the Liberty Mutual Retirement
4  Benefit Plan (hereinafter "Plan") and were denied credit for all years of service with Old Golden
5  Eagle for the purposes of calculating all benefits owed to them under the Plan from October 1,
6  1997 to the present.

7      6.    Plaintiffs bring claims under ERISA 29 U.S.C. § 1001 et seq.

8      7.    Defendants' conduct has imposed a common injury on the members of the Class.

9      8.    Defendants have acted, and refused to act, on grounds generally applicable to the
10 Class, which makes final declaratory and injunctive relief with respect to each claim as a whole
11 appropriate.

12     9.    The representative Plaintiffs will faithfully represent the Class, and each is a
13 member of the Class.

14     10.    The Class is composed of hundreds or thousands of persons, the joinder of which
15 would be impractical.

16     11.    The individual identities of the individual members of the Class are ascertainable
17 through Defendants' records or by public notice.

18     12.    There is a well-defined community of interest in the questions of law and fact
19 involved affecting the members of the Class.

20     13.    On information and belief, more than two-thirds of the members of the Class are,
21 when this action was filed and continuing to date, residents of California.

22     14.    Plaintiffs will fairly and adequately protect the interests of the Class.

23     15.    Plaintiffs have retained counsel experienced in handling class claims and claims
24 involving violations of ERISA.

25     16.    Plaintiffs' claims are typical of the claims of the Class, which all arise from the
26 same operative facts involving violations of ERISA.

27     17.    A class action is a superior method for the fair and efficient adjudication of this
28 controversy. Class-wide damages are essential to induce Defendants to comply with federal law.

The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because management of these claims are likely to present significantly fewer difficulties than those presented in many class claims, such as claims for securities fraud.

18. The questions of law or fact common to the claims or of the representative plaintiffs and the claims of each member of the Class predominate over any questions of law or fact affecting individual members of the Class. Class representation is superior to other available methods for the fair and efficient adjudication of this controversy. Questions of law and/or fact that are common to the claims include but are not limited to:

(A) Whether the terms of the Plan allow for the Old Golden Eagle employees to be entitled to credit for all years of employment for Old Golden Eagle under the Plan if they remained employed by Liberty Mutual and/or Golden Eagle Corp.;

(B) Whether the Plan administrator violated and will continue violating ERISA by denying Plaintiffs and all members of the Class their appropriate benefits under the Plan;

(C) Whether the Plan administrator violated 29 C.F.R. § 2560.503-1(h)(2)(i) and 29 C.F.R. § 2560.503-1 (m)(8) by refusing to turn over to Plaintiffs a complete administrative record on demand.

(D) Whether the defendants represented to Old Golden Eagle employees that they would be entitled to credit for all years of employment for Old Golden Eagle under the Plan if they remained employed by Liberty Mutual and/or Golden Eagle Corp.

19. Defendants have responded to Plaintiffs' claims and rejected same on grounds generally applicable to the Class, thereby making appropriate final declaratory relief with respect to the Class as a whole.

20. Unless a class is certified, Defendants will retain monies and benefits retained as a result of their conduct taken against the Plaintiffs and the Class. Unless class-wide declaratory

relief and an injunction for the Class are issued, Defendants will continue to commit the violations alleged, and members of the Class will continue to be harmed.

### C. DEFENDANTS

21. Defendant LIBERTY MUTUAL RETIREMENT BENEFIT PLAN (hereinafter "Plan") is an employee welfare benefit plan as defined by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. and the benefits sought and referred to in this action under the Plan are subject to ERISA, 29 U.S.C. § 1003(a) and are not exempt under 29 U.S.C. § 1003(b).

22. Defendant LIBERTY MUTUAL GROUP INC. (hereinafter "LMGI") is a Massachusetts company in the business of selling insurance and is authorized to do business and doing business in the State of California and County of San Diego in particular. Liberty Mutual Group has identified itself as a *de facto* Plan Administrator by virtue of its service, its letterhead, its denial of Plaintiffs' claims for benefits and by providing its alleged justifications for such denial. The following information previously provided to the Ninth Circuit Court of Appeals by Defendant Liberty Mutual Retirement Benefit Plan ("LMRBP") in Case No. 05-56858 identified the LMRBP Retirement Board as the sole Plan Administrator: "The only entity with the authority to make claim determinations is the Plan's Retirement Board, which is the designated Plan Administrator" [Excerpt from LMRBP's Answering Brief, page 21.] LMGI is also the Plan Sponsor.

23. Plaintiffs are informed and believe that the sole authorized and designated Plan Administrator is Defendant LIBERTY MUTUAL RETIREMENT BENEFIT PLAN RETIREMENT BOARD, which is comprised of employees, officers and/or directors of LIBERTY MUTUAL INSURANCE COMPANY.

24. Defendant LIBERTY MUTUAL INSURANCE COMPANY (hereinafter "LMIC") is a Massachusetts company in the business of selling insurance and is authorized to do business and doing business in the State of California and County of San Diego in particular. LMIC purchased Golden Eagle Insurance Company on or around October 1, 1997. LMIC then established defendant GOLDEN EAGLE INSURANCE CORPORATION (hereinafter "Golden

Eagle Corp."), a California corporation, out of assets from the Golden Eagle Insurance Company (hereinafter "Old Golden Eagle") as a subsidiary of LMIC. LMIC is a subsidiary of LMGI.

25. Defendants LMGI and LMIC are collectively referred to hereinafter as "Liberty Mutual."

26. Plaintiffs are unaware of the true names, identities or capacities, whether individual, corporate, associate or otherwise, of those defendants sued herein as DOES 1 through 50, inclusive. Plaintiffs therefore sue said defendants by such fictitious names. Plaintiffs will seek leave to amend this complaint to set forth the true names and capacities of these defendants when they are ascertained.

27. Plaintiffs are informed and believe and on that basis allege that defendants sued herein as DOES 1 through 50, inclusive, and each of them, are in some way responsible for the acts and events complained of herein, and proximately caused the injuries and damages to plaintiffs which are described in this complaint. Plaintiffs will seek leave of court to amend this complaint to more specifically set forth these defendants' wrongful conduct when it has been ascertained.

28. Plaintiffs are informed and believe and on that basis allege that at all times herein mentioned, defendants, and each of them, were the parent companies, subsidiary companies, predecessors- or successors-in-interest, agents and/or employees of the remaining defendants and, in doing the things herein complained of, were acting within the course and scope of such parent/subsidiary relationship, agency and/or employment.

29. Pursuant to the agreement of the Plaintiffs and defendants the Parties agreed to address all of the Plaintiffs claims and appeals collectively.

### III.

### JURISDICTION AND VENUE

30. Jurisdiction of this Court is appropriate pursuant to 28 U.S.C. § 1331 federal question jurisdiction. This action arises out of Defendants' violations of the ERISA, 29 U.S.C. §§ 1001 et seq. Further jurisdiction is appropriate pursuant to 28 U.S.C. § 1367.

31. Venue is proper in this district pursuant to 28 U.S.C. § 1391 in that the acts and transactions giving rise to this action as alleged in this complaint occurred in this district.

32. Each of the Defendants at all times herein relevant conducted and/or continue to conduct business in California, County of San Diego, and Defendants, and each of them, violated United States and California law in California, County of San Diego. Defendants, and each of them, have sufficient minimum contacts with California and intentionally availed themselves of the laws of California by advertising to California residents, entering into and/or administrating insurance contracts and claims with California residents, entered into employment agreements with Plaintiffs in California, agreeing to and providing employee benefits to their California employees, and generally conducting transactions and operating business offices open to the public in California and County of San Diego.

## IV.

## FIRST COUNT
### (Determination of Terms of Plan and Clarification of Rights to Future Benefits Under 29 U.S.C. § 1132(a)(1)(B))
### By Plaintiffs and the Class Against Defendant Plan Only

33. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs above as if set forth at this paragraph.

34. On or about April 1988, Old Golden Eagle hired Moyle. On or about February 1989, Old Golden Eagle hired Sanders. On or about May 1990, Old Golden Eagle hired Arwood and Rollason.

35. On or around October 1, 1997, Liberty Mutual obtained control over the assets of Old Golden Eagle. During this period of time Liberty Mutual desired and sought to employ, or keep employed, existing employees of Old Golden Eagle at the time of the purchase and during the ownership transition. One of the principal assets of the Old Golden Eagle was the experience and knowledge of these employees. Liberty Mutual established defendant Golden Eagle Corp. out of the obtained assets and liabilities of Golden Eagle.

36. During this time and during the transition, Defendants, and each of them, by and through their agents, employees and representatives, advised Plaintiffs and others similarly

1  situated that if they remained in their positions and agreed to be employed by Liberty Mutual
2  and/or Golden Eagle Corp. after the acquisition, such employees would be eligible for the Plan
3  with full credit for the years of service with Old Golden Eagle. Defendants, and each of them, by
4  and through their agents, employees and representatives, also advised Plaintiffs that they would
5  be vested in such Plan with full credit in the Plan for all the years of employment with Old
6  Golden Eagle prior to and up to LMIC's purchase of Old Golden Eagle, in addition to their
7  continued time of employment with Liberty Mutual and/or Golden Eagle Corp. During meetings
8  with Plaintiffs and other employees of Old Golden Eagle, representatives of defendants advised
9  that employees who chose to stay would received full credit for their years of service.

10  37.  On around April 30, 2001, Plaintiffs received a booklet entitled, "Your Personal Benefits Statement" from Liberty Mutual. This booklet explained and demonstrated to Plaintiffs and other similarly situated the nature of their retirement benefits under the Plan. By way of example, this booklet indicated Moyle's hire date of April 12, 1988 (the date of his hiring by Old Golden Eagle) and indicated his total employment of 18 years and 4 months, less his Liberty Mutual Past Service Credit of 64 months.

16  38.  The Plan documents in effect from the date of the acquisition reflected that Plaintiffs were to be credited for the years of prior service with Old Golden Eagle.

18  39.  Plaintiffs are informed and believe that they received other similar writings with similar representations from the Defendants.

20  40.  On or around March 2002, Moyle's employment with Golden Eagle Corp. and/or Liberty Mutual ended. Thereafter each of the other Plaintiffs' employment also ended.

22  41.  Upon retirement, Liberty Mutual sent Plaintiffs documentation regarding their benefits. By way of example, on or around April 30, 2002, Liberty Mutual sent Moyle a document titled "Liberty Mutual Retirement Benefit Plan Calculations Statement." On the first page of this statement, it reflected Moyle's credited service years as only 4.416670 years, a substantial difference from the April 30, 2001 statement reflecting 18 years and four months, less his Liberty Mutual Past Service Credit of 64 months. All Plan documents provided to Plaintiffs

1  and others similarly situated should include within "credited service" those years employed with
2  Old Golden Eagle.

3      42.    Liberty Mutual provided similar Plan Description materials to Plaintiffs and others
4  similarly situated. The Summary Plan Description for the Plan effective January 2002 – the Plan
5  description effective at the time Moyle's employment with Golden Eagle Corp. and/or Liberty
6  Mutual ended – contains at least a partial description of the Plan terms and conditions. Plaintiffs
7  are unaware of any other Plan description in effect at that time or whether this Summary Plan
8  Description is intended to or does in fact act as the operative agreement between Plaintiffs and
9  Defendants with regarding to the rights and obligations under the Plan.

10      43.    In this Summary Plan Description, the terms and conditions provide in part
11  regarding Plaintiffs retirement benefits: "[t]he amount of the benefit would depend on your years
12  of service with the Company and your pay" and consists of "benefits credited to a member after
13  June 1, 1973." The Summary Plan further states that "Your annual Company pension under the
14  Career Benefit is the sum of these yearly benefit amounts credited to you during your entire
15  service as a member of the Plan." Finally, the Summary Plan further provides that Plaintiffs
16  would be entitled to "Past Service Credit" for the years employed with Old Golden Eagle.

17      44.    Specifically, the Plan provides in pertinent part:

18  Additional Provisions

19      Past service credit with certain employers who either
20  become part of the Liberty Mutual Group and adopted the
Retirement Plan, or from who you are directly hired into the
21  Liberty Mutual Group, is credited for eligibility, vesting, early
retirement and spouse's benefits purposes as defined below,
22  subject to the Plan's break in services rules, for:
…
23      Golden Eagle Insurance Corporation employees who were
employed as of October 1, 1997 for service with Golden Eagle
24  Insurance Co.

25      45.    On May 23, 2002, Liberty Mutual told Moyle that contrary to the prior oral and
26  written representations and documents he received from Defendants, Defendants would not
27  provide Moyle any credit for the years of employment and service with Old Golden Eagle.
28

1  46. On or around November 1, 2004, Sanders' employment with Golden Eagle Corp. and/or Liberty Mutual ended.

47. On or around September 28, 2007, Rollason's employment with Golden Eagle Corp. and/or Liberty Mutual ended.

48. On or around March 29, 2002, Pauline Arwood employment with Golden Eagle Corp. and/or Liberty Mutual ended.

49. Plaintiffs contend that the terms and conditions of the Plan provide Plaintiffs with credit for the years they were employed with Liberty Mutual and/or Golden Eagle Corp. and past service credit for years Plaintiffs were employed with Old Golden Eagle, up through the date of the end of each of their employment with Golden Eagle Corp. and/or Liberty Mutual.

50. On or around March 14, 2005, Moyle filed a complaint in the United States District Court for the Southern District of California against the Plan and Liberty Mutual and others. (Case No. 05-cv-507 DMS (WMC).) The district court dismissed the case pending Moyle's exhaustion of administrative remedies, a decision affirmed on appeal to the Ninth Circuit Court of Appeals filed on August 23, 2007.

51. On or around January 26, 2008, Plaintiff Moyle filed a claim with Liberty Mutual and thereafter Plaintiffs Arwood, Rollason and Sanders also filed claims with Liberty Mutual. These claims and Defendants' denial of these claims meet the requirement that administrative remedies be exhausted.

52. In these claims, Plaintiffs requested the basis of any denial to the claim for proper benefits based on each of the Plaintiffs entire employment with Old Golden Eagle, Golden Eagle Corp. and/or Liberty Mutual based on their understanding of the terms of their employment upon their transition as new employees to the newly-created Golden Eagle Corp. and Liberty Mutual in 1997. In 2009, the Parties agreed to treat the claims of all Plaintiffs collectively.

53. These claims request copies of all Plan documents and the administrative record for the claim, including all documents regarding the Plaintiffs' contentions that they were to be provided credit for employment time at Old Golden Eagle for benefits determination under the

Plan, among other documents. These requests were made pursuant to 29 C.F.R. § 2560.503-1(h)(2)(i) and 29 C.F.R. § 2560.503-1 (m)(8) et seq.

54. On or around April 23, 2008, LMGI, acting as a de facto administrator, served an initial denial of Plaintiffs' claims.

55. On or around June 20, 2008, Plaintiffs appealed the denial since the claims were not reviewed by the actual Plan Administrator (Defendant LMRBP Retirement Board) and that LMGI did not provide full copies of the administrative record.

56. Throughout the overly lengthy claims evaluation process, Defendant LMGI and the Defendants in general took an adversarial approach to the Plaintiffs by stonewalling Plaintiffs' attempts to obtain portions of the administrative record they were entitled to obtain. Under ERISA, the Plan's board members and representatives and agents are fiduciaries to the Plaintiffs and other participants of the Plan.

57. In particular, Plaintiffs requested documents involving Liberty Mutual's 2009 review of and revisions to the Summary Plan description which Plaintiffs are informed and believe purports to modify the Plan to block Plaintiffs' interpretation of benefits as it relates to Old Eagle employees and to match the Defendants' incorrect interpretation - supporting its challenge to Plaintiffs' assertions and claims to date.

58. On or around October 23, 2009, Defendant LMGI, acting on behalf of itself and the other Defendants, denied each of the Plaintiffs' claims appeals. In denying these claims, Liberty Mutual cited the supposedly applicable portions of the Plan that indicate that the Plaintiffs' years of service at Old Golden Eagle were limited only to whether these employees were vested and/or eligible for the Plan benefits. Moreover, another reason for denying Plaintiffs' claims was that Plaintiffs' understanding and interpretation of the benefits they were entitled to under the Plan would "threaten the actuarial soundness and assets of the Plan."

59. Plaintiffs are informed and believe that existing Liberty Mutual employees who were participants of the Plan did not make any contributions into the Plan at any time on or before October 1997, when Liberty Mutual purchased Old Golden Eagle and established Golden Eagle Corp.

59.     Plaintiffs require and request a determination of the current and future rights of Plaintiffs and the Class to benefits under the terms of the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B).

60.     Plaintiffs and Class are vested beneficiaries of the Plan, were employed with Old Golden Eagle and subsequently employed with Liberty Mutual and/or Golden Eagle Corp and, thus, are entitled to a clarification of their rights to current and future benefits under the Plan and the amounts of those benefits.

61.     Plaintiffs and the Class are entitled to credit under the Plan for the time they were employed with Old Golden Eagle when receiving benefits under the Plan, based on the terms and conditions of the Plan, as well as those documents, writings and representations regarding such Plan supplied to Plaintiffs and the Class based on a reasonable and correct interpretation of such documents, writings and representations.

62.     The parties have stipulated in the claims process that the interpretation of the "Years of Credited Service" section of the Plan ultimately determines the merits of Plaintiff's claims under the Plan, save for the claims set forth in Count IV of this Complaint. (Section 3.1).

63.     Section 1.69 of the operative 1997-1998 Plan, which deals with "Full-Time Employees", states:

> "For purposes of determining Accrued Benefits under the Final Average Pay formula set forth in Section 3.1(a), one Year of Credited Service shall be credited for each 12 full calendar months of service, whether or not consecutive, between his Entry Date and his Service Termination Date, except as provided below."

This provision is not limited to service with Liberty Mutual and nowhere in the Plan is there language which limits "service" to years actually worked at Liberty Mutual, rather than at Old Golden Eagle.

64.     The Plan defines "Entry Date" as the first of the Month (Section 1.25). The Plan does not define "Entry Date" as the date of entry into the Plan itself, as was asserted by Defendants in their denial of Plaintiffs' claims. The Plan defines "Employment Commencement

Date" as the first date upon which an Employee is credited with an Hour of Service. (Section 1.24).

65. Section 2.6(d) of the Plan provides: "For purposes of applying the eligibility and participation provisions of Article 2 . . . . . such employee's prior service with GEIC (Old Golden Eagle) shall be considered employment service with the Employer under this Plan."  This provision clearly informed Plaintiffs and all other class members that their years of service at Old Golden Eagle would be fully credited for purposes of determining their "Years of Credited Service" under the Plan.

66. Section 2.2 "Eligibility and Vesting Years of Service Vesting"; Years of Credited Service" at Section 2.2(c) provides:

> Subject to Section 2.2(d), Section 2.7, Section 3.4(c) and Appendix C, Section C.5, all Years of Credited Service and fractional Years of Credited Service shall be taken into account in determining a Participant's Accrued Benefit under the Plan."

67. In Section 1.20, "Eligibility; Years of Service" is defined as having the "same meaning as Vesting Year of Service for Full-Time Employees as set forth in Section 1.68(b)". Accordingly, for purposes of vesting Benefits under the Plan, the term "Years of Service" has the same meaning for both Eligibility and Vesting purposes. This leads to a simple formula: Vesting Years of Service = Eligibility Years of Service.

68. Section 2.6(d) of the Plan states:

> (d) "Golden Eagle. The following special rules apply to former employees of Golden Eagle Insurance Company ("GEIC") who became employed by the Golden Eagle Insurance Corporation, a wholly owned subsidiary of the Company, on October 1, 1997 as a result of the acquisition by the Company of the assets of GEIC. For purposes of applying the eligibility and participation provisions of Article 2 and the vesting provisions of Article 6, . . . . . . such employees' prior employment service with GEIC shall be considered employment service with the Employer under the Plan."

69. In sum, as the Plan provided credit for Old Golden Eagle years of service for eligibility, credit for vesting or credit for participation purposes, all of these had the net effect of also providing Plaintiffs and members of the class with a full credit for all Old Golden Eagle

years for purposes of **credit for years of service for determination of accrued benefits.** In its denial of Plaintiffs' claims and in an effort to avoid the clear import of the Plan's own language and definitions, Defendants fashioned from whole cloth a "make believe" Plan provision which they styled "Prior Service Credit for Purposes of Benefit Accrual." No such provision appears in either the Plan or the Summary Plan description.

70. To the extent there exists any ambiguity in Plan documents and materials provided to Plaintiffs and the Class about the Plan, or inconsistencies between Plan documents provided to Plaintiffs and the Class and principal Plan documents, the Plan is equitably estopped from denying Plaintiffs and the Class benefits under the Plan as any ambiguous language of the Plan is properly construed against the drafters of same (i.e., the Plan and their attorneys).

71. To the extent there are any ambiguities in the documents or Plan materials provided to Plaintiffs and the Class, or inconsistencies between Plan documents provided to Plaintiffs and the Class and principal Plan documents, such ambiguities or inconsistencies or both must be resolved in favor of Plaintiffs and the Class. If there is any ambiguity in the Plan documentation provided to Plaintiffs and the Class, the doctrine of contra preferentum would provide Plaintiffs and the Class credit for the period of time employed with Old Golden Eagle.

72. Plaintiffs therefore seek a judicial declaration that their years of employment with Old Golden Eagle be properly credited as Years of Service for purposes of accrual of retirement benefits under section 3.1 of the Subject Plan, and that Plaintiffs' present and future retirement benefits, and those of the class, be increased in an amount which takes into account, for benefit accrual purposes, all of their respective Years of Service with Old Golden Eagle as well as Years of Service with Liberty Mutual and/or Golden Eagle Corp.

73. Plaintiffs and the Class are entitled to the benefits requested in this complaint and that the Defendants, and each of them, shall be required to acknowledge such benefits and, upon such terms as the Court finds just, effectuate such obligations including but not limited to the funding of such obligations for the benefit of the Plan.

74. Defendants' denial of Plaintiffs' claims are not entitled to deference and this complaint and the allegations in it shall be reviewed on a *de novo* basis. The denials of Plaintiffs'

1  claims came not from the actual Plan Administrator (the LMRBP Retirement Board), but rather
2  from Defendant LMGI, the Plan Sponsor and responsible financial contributor.  Plaintiffs are
3  informed and believe that Defendant LMG conducted the entire investigation and orchestrated the
4  claims denial determinations without the required vetting by the LMRBP Retirement Board and
5  without said Board giving consideration to the entire claims record.

6  75.  Such claims processing demonstrates that the claims denials were made by
7  Defendant LMGI and passed upon by Defendant LMRBP Retirement Board at a time when LMGI
8  and its agents, employees and administrators, were operating under a conflict of interest, failed to
9  comply with appropriate notification procedures, failed to adequately advise the Plaintiffs and the
10 Class of the true facts and circumstances, and in other ways to be demonstrated at the time of trial,
11 are not entitled to any deference with regard to any decisions, interpretations or other matters to be
12 resolved herein.

13 76.  As a result of the Defendants' conduct, Plaintiffs have been required to retain the
14 services of legal counsel and has incurred attorney's fees and costs in prosecuting this and the
15 previous actions described in this complaint. As this action seeks to resolve legitimate issues
16 regarding the Plaintiffs' and the Class' rights and the rights of other Plan participants, as well as
17 the obligations and duties owed to the Plan itself, among other goals, Plaintiffs anticipate incurring
18 additional attorneys' fees and costs pursuing this action in an amount according to proof at trial.
19 Plaintiffs are entitled to a reasonable attorneys' fee award pursuant to 29 U.S.C. § 1132(g)(1)
20 and/or all other applicable law.

**V.**

**SECOND COUNT**
**(Promissory Estoppel)**
**By Plaintiffs and the Class Against All Defendants**

24 77.  Plaintiffs re-allege and incorporate by reference each and every allegation contained
25 in paragraphs above as if set forth at this paragraph.

26 78.  Defendants made a clear and unambiguous promise to Plaintiffs and the Class that
27 if they accepted employment from Liberty Mutual and/or Golden Eagle Corp, their time of
28 employment at Old Golden Eagle would be credited for the purposes of benefits under the Plan.

79. Defendants breached this promise by refusing to grant credit to Plaintiffs and the Class for time worked at Old Golden Eagle for the purposes of benefits under the Plan. Defendants also breached this promise by denying Plaintiffs claims for benefits based on Defendants' representations regarding benefits under the Plan.

80. Plaintiffs and the Class relied upon Defendants' promises regarding crediting time employed at Old Golden Eagle for the purposes of benefits under the Plan and, as a sign of their reliance, accepting employment with Liberty Mutual and/or Golden Eagle Corp. Plaintiffs' and the Class' reliance on Defendants' promise was foreseeable since the promise was an inducement to the Old Golden Eagle employees to become employed by Liberty Mutual and/or Golden Eagle Corp.

81. As a result of Defendants breaches, Plaintiffs and the Class suffered an injury or injuries as a result of Defendants' behavior in the form of reduced benefits under the Plan. The only method of avoiding the injustice of the injuries sustained by the Plaintiffs and the Class as alleged in this Complaint is to enforce the promise Defendants' made to Plaintiffs and the Class and to provide complete credit for years they were employed by Old Golden Eagle for purposes of benefits under the Plan.

82. As a result of Defendants' conduct toward Plaintiffs and the Class and the consequences proximately caused by it, as alleged in this Complaint, Plaintiffs and Class suffered damages in an amount to be proven at trial.

## VI.

### THIRD COUNT
**(Violation of 29 C.F.R. 2560.503-1 (h)(2)(i).)**
**By Plaintiffs Against Defendants LMRBP Retirement Board and LMGI)**

83. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs above as if set forth at this paragraph.

84. This Count is brought on behalf of the individual claimants only and is not brought as a class action.

85. The Code of Federal Regulations in 29 C.F.R. 2560.503-1 (h)(2)(i) states the procedures to appeal a claim made to an employee benefit plan will not be deemed to provide a

claimant with reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claimant is

> (iii) . . . . provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section;
>
> …

Paragraph (m)(8) of 29 C.F.R. 2560.503-1 states as follows

> A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information
> (i) Was relied upon in making the benefit determination;
> (ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; [or]
> (iii) Demonstrates compliance with the administrative process and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination
>
> …

86. Plaintiffs submitted claims for benefits under the Plan to LMRBP on or around January 26, 2008. These claims were initially denied on or around April 23, 2008.

87. On or around June 20, 2008, Plaintiffs appealed the denial since the claims were not reviewed by the actual Plan Administrator (Defendant LMRBP Retirement Board) and that LMGI did not provide full copies of the administrative record. Substantial portions of the records and documentation related to the Plaintiffs claims were not provided. Pursuant to 29 C.F.R. § 2560.503-1, the Plan's claim denial and review procedures was required to provide Plaintiffs, "free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits". 29 C.F.R. § 2560.503-1(h)(2)(iii). Among materials defined as "relevant" by 29 C.F.R. § 2560.503-1(m)(8), are those "relied upon in making the benefit determination," as well as those "submitted, considered, or generated in the course of making the benefit determination, without regard to whether [they were] relied upon in making the benefit determination."

88. For the next 16 months, Plaintiffs repeatedly requested that the Defendants make available all documents and writings reflective of the claim denial. Documents in the administrative record, particularly documents regarding the Plan's review of the Plan with regard to whether Plaintiffs and other similarly situated who had been employed by Old Golden Eagle and were subsequently employed by Golden Eagle Corp. and/or Liberty Mutual were entitled to benefits under the Plan for years of employment at Old Golden Eagle, were not provided in a timely manner despite repeated demands. The failure to produce "relevant" information and documentation included but was not limited to the production of the following information or issues:

(A) Documentation reflecting the actual investigation into the Plaintiffs' claims, including the notes, memorandums, emails, and other written material generated, considered or generated by the claims administrator principally in control or in charge of the investigation of Plaintiffs' claim;

(B) Letters, notes, memoranda, briefs, summaries or written advise of the Plan's legal counsel as to the proper legal interpretation of the Plan under the facts and record submitted by Plaintiffs and the information reviewed by Defendant LMGI;

(C) Any and all actuarial data, analysis, reports, summaries or memoranda discussing the factual basis for LMGI'S claim that Plaintiffs' proposed interpretation of the Plan Documents threatened the actuarial soundness of the Plan.

89. Throughout the overly lengthy claims evaluation process, Defendant LMGI and the Defendants in general took an adversarial approach to the Plaintiffs by stonewalling Plaintiffs' attempts to obtain portions of the administrative record they were entitled to obtain. Under ERISA, the Plan's board members and representatives and agents are fiduciaries to the Plaintiffs and other participants of the Plan.

90. In particular, Plaintiffs requested documents involving Liberty Mutual's 2009 review of and revisions to the Summary Plan description which Plaintiffs are informed and

1  believe purports to modify the Plan to block Plaintiffs' interpretation of benefits as it relates to Old Eagle employees and to match the Defendants' incorrect interpretation - supporting its challenge to Plaintiffs' assertions and claims to date.

91. On or around October 23, 2009, Defendant LMGI, acting on behalf of itself and the other Defendants, denied each of the Plaintiffs' claims appeals. In denying these claims, LMGI and/or Liberty Mutual cited the supposedly applicable portions of the Plan that indicate that the Plaintiffs' years of service at Old Golden Eagle were limited only to whether these employees were vested and/or eligible for the Plan benefits. Moreover, another reason for denying Plaintiffs' claims was that Plaintiffs' understanding and interpretation of the benefits they were entitled to under the Plan would "threaten the actuarial soundness and assets of the Plan."

92. Plaintiffs are informed and believe that existing Liberty Mutual employees who were participants of the Plan did not make any contributions into the Plan at any time on or before October 1997, when Liberty Mutual purchased Old Golden Eagle and established Golden Eagle Corp.

93. Plaintiffs to date have not obtained the complete administrative record of the Plaintiffs' claims against the Plan as requested numerous times to date.

94. Defendant LMRBP Retirement Board and LMGI, and each of them, willfully violated their obligations under ERISA and federal regulations promulgated pursuant to ERISA by failing to provide Plaintiffs a complete copy of the administrative record to the Plaintiffs in violation of 29 C.F.R. 2560.503-1 (h)(2)(1).

95. Plaintiffs and the class members are entitled to recover a penalty of $ 100 per day per claimant for each day such information was not provided as set forth in 29 U.S.C. section 1132(c)(1), and are further entitled to an immediate order by this Court compelling Defendants to produce all such portions of the administrative record on Plaintiffs' claims which have not been produced as required by law.

# VII.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as follows:

1. A declaration of Plaintiffs' and the Class' right to benefits under the Plan as requested in Count One above;

2. For a determination of the existence of a violation of 29 C.F.R. 2560.503-1 (h)(2)(i), for a penalty of $ 100 per day per claimant for violations of 29 U.S.C section 1132(c )(1) and for an order compelling Defendants to produce all such portions of the administrative record on Plaintiffs' claims which have not been produced as required by law;

3. For an injunction to issue against Defendants;

4. For such other and further appropriate equitable relief to redress Defendants violations of ERISA and other federal and state laws, to enforce the terms of the Plan, as well as to make good any losses to the Plan;

5. For costs of suit;

6. For Plaintiffs to be awarded attorneys' fees and all litigation costs and expenses pursuant to 29 U.S.C § 1001 et seq.; and

7. For such other and further relief as the Court may deem just and proper.

# VIII.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury in this action.

Respectfully Submitted,

Dated: October 21, 2010　　　　　　　　　　**NICHOLAS & BUTLER, LLP**

By: *s/ Jeffrey Montez*
_____
Matthew B. Butler
Jeffrey D. Montez
Attorneys for Plaintiffs
Geoffrey Moyle, Pauline Arwood, Thomas Rollason and Jeannie Sanders

---

19

CLASS ACTION FIRST AMENDED COMPLAINT

N&B
ATTORNEYS AT LAW
SAN DIEGO