1

2

3

4

5

6

7

8  **UNITED STATES DISTRICT COURT**

9  **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  GEOFFREY MOYLE, et al.,                                    CASE NO. 10cv2179-DMS (MDD)

12                                    Plaintiffs,              ORDER ON JOINT MOTION
                                                              FOR DETERMINATION OF
        vs.                                                   DISCOVERY DISPUTE RE:
13                                                            EXECUTIVE DEPOSITIONS

14  LIBERTY MUTUAL RETIREMENT
    BENEFIT PLAN, et al.,                                      [ECF NO. 180]
15
                                   Defendants.
16

17        This case arises from Plaintiff Moyle's former employment with Golden Eagle

18  Insurance Company and later with Liberty Mutual Insurance, which acquired Golden

19  Eagle in 1997.  Plaintiff was employed by Golden Eagle in 1988 and was discharged

20  by Liberty Mutual in 2002.  In this lawsuit, among other things, Plaintiff asserts that

21  he was misled regarding the extent to which his service at Golden Eagle would be

22  attributed to Liberty Mutual and has sued for improperly withheld benefits.

23        Before the Court is a joint motion of the parties for the determination of a

24  discovery dispute.  The motion was filed on October 23, 2012.  (ECF No. 180).

25  Plaintiffs seek to depose four of Defendant's current and former executive officers:

26  David Long, the current Chief Executive Officer and President of Liberty Mutual;

27  Tim Sweeney, the current Executive Vice President of Liberty Mutual; Geoff Hunt a

28  former Executive Vice President of Liberty Mutual; and Ray Mundt, a former

1   member of the Liberty Mutual Board of Directors and member of that board's

2   Compensation Committee.  Plaintiffs have noticed the depositions of Long, Sweeney

3   and Hunt and have stated their intention to notice the deposition of Mundt.

4   Defendants claim the depositions are inappropriate because: (1) the executives

5   Plaintiffs want to depose are protected by the "apex doctrine;" and, (2) Plaintiff will

6   exceed the 10 deposition limit of Federal Rule of Civil Procedure 30(a)(2).

7                David Long

8        David Long is the current Chief Executive Officer and President of Liberty

9   Mutual Insurance.  In 1997, Mr. Long was a member of the Board of Directors of

10  Golden Eagle.  Golden Eagle then-CEO Fred Marziano, who gave deposition

11  testimony in this case, described Mr. Long as his "right-hand man."  Citing to other

12  deposition testimony, Plaintiff claims that Mr. Long "had discussions with other

13  executives at Liberty Mutual specifically about whether or not the transitioning

14  Golden Eagle employees would be credited with their prior years of service for the

15  purpose of benefit accrual under the retirement plan."  Plaintiff further claims that

16  "Mr. Long also knew that Golden Eagle employees were under (the apparently

17  mistaken) impression that they *would* receive credit for the purposes of accrual, yet

18  for reasons that Mr. Long can perhaps elaborate on, those misconceptions were never

19  clarified."

20       Defendant claims that Mr. Long's participation in the Golden Eagle

21  transaction is not relevant to the instant action, that Mr. Long lacks personal

22  knowledge relevant to the instant action, and that less burdensome means of

23  discovery have not been exhausted.

24               Tim Sweeney

25       Tim Sweeney is the current Executive Vice President of Liberty Mutual

26  Insurance and the President of Liberty Mutual's Personal Insurance division.  In

27  1997, Mr. Sweeney worked under Mr. Long and Mr. Marziano.

28       Plaintiffs, again relying upon deposition testimony obtained in this case,

1   contend that, like Mr. Long, Mr. Sweeney had discussions with his colleagues

2   relating to Golden Eagle employee benefits and "knew there was confusion about

3   what credits would be offered, yet failed to address it."  Plaintiff's claim that Mr.

4   Sweeney helped Mr. Marziano interpret and understand the terms of the 1997

5   Rehabilitation Agreement that Plaintiff's believe is a key document in the instant

6   action.  Plaintiff claims that Mr. Sweeney worked directly on documents analyzing

7   Golden Eagle's employee staffing and benefits.  Plaintiff also claims that Mr.

8   Sweeney was directly involved in an August 1997 meeting explaining how employee

9   benefits would be effected by the Liberty Mutual transaction.

10          Defendant claims that Plaintiff has not demonstrated that Mr. Sweeney had

11  any involvement related to pension benefits in the 1997 transaction, that even if he

12  had involvement such involvement is irrelevant, and that Plaintiff has not

13  demonstrated that Mr. Sweeney participated in any benefit meetings.

14          <u>Geoff Hunt</u>

15          Geoff Hunt is a former Executive Vice President of Liberty Mutual.  Mr. Hunt

16  was "the principal coordinator of mergers and acquisitions at Liberty Mutual,

17  including the Golden Eagle merger," and was one of the chief negotiator's in the

18  transaction.

19          Plaintiffs claim that Mr. Hunt was directly involved in the creation of

20  documents containing the benefit provisions at issue in this case.  Plaintiffs assert

21  that Mr. Hunt has personal knowledge of the issue of retirement benefits that were

22  negotiated in the transaction, the negotiations themselves and the handling of the

23  human resources impacts of the benefits.

24          Defendant claims that Mr. Hunt was not the author of the benefits provisions

25  Plaintiff wishes to discuss, and that other lower level employees are both available

26  for deposition and have more direct knowledge of the events in question.

27          <u>Ray Mundt</u>

28           Ray Mundt is a former member of the Liberty Mutual Board of Directors and

1  a member of that board's Compensation Committee.  Plaintiffs point to Liberty

2  Mutual's initial disclosures where Defendant states, regarding Mr. Mundt: "He is

3  expected to have information and knowledge regarding the intended scope and

4  limitations of the credit to be provided to said employees relating to their prior

5  service with [Golden Eagle]."

6          Defendant admits that Mr. Mundt may have relevant information.  However,

7  Defendant claims that any information Mr. Mundt might have is already in the

8  possession of Plaintiff.  Defendant claims that all relevant information about the

9  Compensation Committee, and its meeting approving the benefits plan for Golden

10  Eagle employees, is contained in the minutes of that meeting and Plaintiff has access

11  to those minutes.

12                                    Legal Standard

13          The Federal Rules of Civil Procedure generally allow for broad discovery,

14  authorizing parties to obtain discovery regarding "any nonprivileged matter that is

15  relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Also, "[f]or good

16  cause, the court may order discovery of any matter relevant to the subject matter

17  involved in the action."  *Id.*  Relevant information for discovery purposes includes any

18  information "reasonably calculated to lead to the discovery of admissible evidence,"

19  and need not be admissible at trial to be discoverable.  *Id.*  There is no requirement

20  that the information sought directly relate to a particular issue in the case. Rather,

21  relevance encompasses any matter that "bears on" or could reasonably lead to matter

22  that could bear on, any issue that is or may be presented in the case.  *Oppenheimer*

23  *Fund, Inc. v. Sanders*, 437 U.S. 340, 354 (1978).  District courts have broad discretion

24  to determine relevancy for discovery purposes.  *See Hallett v. Morgan*, 296 F.3d 732,

25  751 (9th Cir. 2002).  Similarly, district courts have broad discretion to limit discovery

26  where the discovery sought is "unreasonably cumulative or duplicative, or can be

27  obtained from some other source that is more convenient, less burdensome, or less

28  expensive." Fed. R. Civ. P. 26(b)(2)(C).  Limits also should be imposed where the

1   burden or expense outweighs the likely benefits.  *Id.*

2                                   Discussion

3            The Apex Doctrine

4            Courts consistently define apex employees as "high-level corporate executives."

5   *See Apple Inc. v. Samsung Electronics Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal. 2012)

6   ("the deposition of a high-level executive (a so-called apex deposition),"); *DR Sys., Inc.*

7   *v. Eastman Kodak Co.*, 2009 WL 2973008 at *2 (S.D. Cal. Sept. 14, 2009) ("an official

8   at the highest level or apex of a corporation"); *Bank of the Ozarks v. Capital Mortg.*

9   *Corp.*, 2012 WL 2930479 at *1 (E.D. Ark. July 18, 2012) ("The apex doctrine protects

10  high-level corporate officials . . .").

11           When a party seeks to take the deposition of an official at the highest level or

12  "apex" of a corporation a stricter standard applies to the party seeking discovery, and

13  the court may exercise its authority under the federal rules to limit discovery.

14  Fed.R.Civ.P. 26(b)(1). *See, e.g., Mulvey v. Chrysler Corp.,* 106 F.R.D. 364 (D.C.

15  R.I.1985) (Virtually every court that has addressed deposition notices directed at an

16  official at the highest level or "apex" of corporate management has observed that such

17  discovery creates a tremendous potential for abuse or harassment.). Even when

18  seeking the deposition of an apex official, "it is very unusual 'for a court to prohibit

19  the taking of a deposition altogether absent extraordinary circumstances.'" *Apple*,

20  282 F.R.D. at 263 (quoting *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 WL 1120567

21  at *2 (S.D. Cal. Apr. 6, 2007) ).  "When a witness has personal knowledge of facts

22  relevant to the lawsuit, even a corporate president or CEO is subject to deposition.  A

23  claimed lack of knowledge, by itself it is insufficient to preclude a deposition."  *Id.*

24           When determining whether to allow an apex deposition, courts often consider:

25  (1) whether or not the high-level deponent has unique first-hand, non-repetitive

26  knowledge of the facts at issue in the case and (2) whether the party seeking the

27  deposition has exhausted other less intrusive discovery methods, such as

28  interrogatories and depositions of lower level employees.  *See Salter v. Upjohn,* 593

1  F.2d 649, 651 (5th Cir.1979) (granting protective order for executive where plaintiff

2  had sought to depose the president of the company before deposing lower level

3  executives); *Baine v. General Motors Corp.,* 141 F.R.D. 332 (M.D.Ala.1991) (granting

4  protective order for Vice President of General Motors where plaintiff had failed first

5  to depose lower level employees).

6        Defendant contends that each potential deponent named in the joint motion is

7  an apex executive.  (ECF No. 180).  Plaintiff does not dispute that Mr. Long is an

8  apex executive, is silent on the issue regarding Mr. Sweeney, and claims that the

9  doctrine does not apply to former executives Messrs. Hunt and Mundt.  *Id.*  Former

10  executives, however, are within the scope of the apex doctrine.  *See Mulvey v.*

11  *Chrysler Corp.*, 106 F.R.D. 364, 365 (D.R.I. 1985) (holding that the magistrate erred

12  in allowing the deposition of Lee Iacocca, the former Chairman of Chrysler Corp.);

13  *Gauthier v. Union Pac. R. Co.*, 2008 WL 2467016 (E.D. Tex. June 18, 2008)

14  (unpublished) (quashing the deposition of a former executive).

15        Each potential deponent participated to some extent in the 1997 transaction

16  between Golden Eagle and Liberty Mutual.  The questions presented are (1) whether

17  the personal knowledge of each executive, attained during that period, is unique and

18  relevant to issues in this case; and (2) whether means less intrusive than deposition

19  remain available to Plaintiff's for acquiring such unique information.  *See Salter,* 593

20  F.2d at 651.

21        The 1997 transaction is at the heart of this case.  At the time of the transaction

22  Mr. Long was a member of the Board of Golden Eagle and is described by Mr.

23  Marziano as being his "right hand man" during the transaction.  (ECF No. 180 at 16;

24  ECF No. 180-16 at 8).  Mr. Sweeney worked for both Mr. Long and Mr. Marziano, and

25  it appears assisted with the interpretation of allegedly key documents.  (ECF No.

26  180-16 at 5).  Plaintiffs claim, and Defendant does not deny, that Mr. Hunt was a

27  chief negotiator of the transaction.  (ECF No. 180 at 7).  Mr. Mundt was a member of

28  Liberty's Mutual's Compensation Committee that approved the benefits plan at issue.

1    Each were in a position to have obtained unique personal relevant knowledge.

2          There is no evidence that Plaintiff's is seeking this discovery for the purpose of

3    harassment.  Plaintiff has demonstrated sufficiently that these individuals may have

4    personal, non-repetitive knowledge of relevant facts.  The Court does not believe that

5    there are less intrusive means of discovery available for these witnesses.

6    Accordingly, the apex doctrine does not bar their depositions.

7          The Ten Deposition Limit

8          Federal Rule of Civil Procedure 30(a)(2) requires leave of court when "parties

9    have not stipulated to [a] deposition," and "the deposition would result in more than

10   10 depositions" taken by a party.  The advisory committee notes accompanying Rule

11   30(a)(2) state: "A deposition under Rule 30(b)(6) should, for purposes of this limit, be

12   treated as a single deposition even though more than one person may be designated

13   to testify."  Fed. R. Civ. Proc. 30(a)(2)(A) Advisory Committee Notes (1993).

14         Defendant claims that Plaintiffs have already taken ten depositions and have

15   noticed seven others.  (ECF No. 180-13 at 2).  Defendant admits, in a footnote, that a

16   number of the depositions were taken pursuant to Rule 30(b)(6).  Properly counting

17   the 30(b)(6) depositions, Plaintiffs admit to having taken seven depositions.

18          Plaintiffs may depose three more people before requiring leave of court.  *See*

19   Fed. R. Civ. Proc. 30(a)(2)(A).  Plaintiffs have noticed the depositions of Messrs. Long,

20   Sweeney and Hunt.  Those depositions may proceed as noticed or Plaintiff may

21   choose to substitute Mr. Mundt for one of these other witnesses upon proper notice.

22   The Court is not authorizing any depositions beyond the allotted ten at this time.

23   //

24   //

25   //

26   //

27   //

28   //

<u>Conclusion</u>

The motion to quash the deposition notices of Messrs. Long, Sweeney and Hunt is **DENIED**. The motion for leave to take more than ten depositions is **DENIED without prejudice.**

**IT IS SO ORDERED**

DATED: October 30, 2012

Hon. Mitchell D. Dembin
U.S. Magistrate Judge

10cv2179 DMS (MDD)