1
2
3
4
5
6
7
8        **UNITED STATES DISTRICT COURT**
9        **SOUTHERN DISTRICT OF CALIFORNIA**

10  GEOFFREY MOYLE, an individual;          CASE NO.10cv2179-GPC(MDD)
    PAULINE ARWOOD, an individual;
11  THOMAS ROLLASON, an
    individual; and JEANNIE SANDERS,
12  an individual, on behalf of themselves,  **ORDER GRANTING**
                                             **DEFENDANTS' MOTION FOR**
13                            Plaintiff,     **SUMMARY JUDGMENT AND**
                                             **DENYING PLAINTIFFS' MOTION**
14      vs.                                  **FOR PARTIAL SUMMARY**
                                             **JUDGMENT**
15
16  LIBERTY MUTUAL RETIREMENT
    BENEFIT PLAN; LIBERTY             [Dkt. Nos. 212, 213.]
17  MUTUAL RETIREMENT PLAN
    RETIREMENT BOARD; LIBERTY
18  MUTUAL INSURANCE GROUP,
    INC., a Massachusetts company;
19  LIBERTY MUTUAL INSURANCE
    COMPANY, a Massachusetts
20  company,
21
                            Defendants.
22

23      Before the Court are the parties' cross-motions for summary judgment, their

24  oppositions and their replies.  On June 7, 2013, the Court held a hearing.  (Dkt. No.

25  247.)  Matthew Butler, Esq. and Andrew Myers, Esq. appeared on behalf of Plaintiffs

26  and Ashley Abel, Esq. and Jennifer Santa Maria, Esq. appeared on behalf of

27  Defendants.  Based on the parties' briefs, supporting documentation and applicable

28  law, the Court GRANTS Defendants' motion for summary judgment; and DENIES

Plaintiffs' motion for partial summary judgment.

## Procedural Background

Prior to the filing of the instant case, on March 14, 2005, Plaintiff Geoffrey Moyle ("Moyle") filed a complaint in this Court against Golden Eagle Insurance Corporation ("GEIC" or "New Eagle") and Liberty Mutual Insurance Company ("LMIC").[1] (Case No. 05cv507-DMS(WMC), Dkt. No. 1). On August 23, 2005, Moyle filed a first amended complaint adding Defendant Liberty Mutual Retirement Benefit Plan ("Plan"). On November 14, 2005, District Judge Dana Sabraw granted Defendants' motion to dismiss for failure to exhaust administrative remedies. (Id., Dkt. No. 32.) Plaintiff appealed and on August 23, 2007, the Ninth Circuit affirmed the district court's dismissal requiring Plaintiff to exhaust. Moyle v. Golden Eagle Ins. Corp., 239 Fed. Appx. 362 (9th Cir. 2007).

On January 26, 2008, Moyle filed a claim with Liberty Mutual. (Administrative Record ("AR") 783-86.) On July 18, 2008, Plaintiff Thomas Rollason filed a claim.

---

[1] Prior to the case filed in 2005, Plaintiff Moyle also filed two complaints in San Diego Superior Court that were removed to this Court.

On November 5, 2002, Plaintiff Moyle filed an action against GEIC, LMIC and John Davis in San Diego Superior Court alleging eleven causes of action related to employment and pension benefits due under the Plan. (Case No. 02cv2468-H(JAH).) On December 16, 2002, the case was removed to this Court. (Id., Dkt. No. 1.) On December 23, 2002, Defendants filed a motion for partial dismissal of Plaintiff's complaint arguing that the state law claims were preempted by ERISA as to the past service credit under the Plan. (Id., Dkt. Nos. 7, 10.) Subsequently, Plaintiff filed a notice of voluntary dismissal of action without prejudice. (Id., Dkt. No. 14.)

On February 13, 2003, Plaintiff Moyle filed an action against Defendant GEIC, LMIC and John Davis in San Diego Superior Court alleging ten causes of action related to employment and past service credit under the Plan. (Case No. 03cv509-IEG(JAH).) On March 13, 2003, Defendants removed the action to this Court. (Id., Dkt. No. 1.) On March 20, 2003, Golden Eagle and Liberty Mutual filed motions to dismiss the complaint. (Id., Dkt. Nos. 5, 8.) On April 3, 2003, Plaintiff filed a motion to remand. (Id., Dkt. No. 13.) On July 17, 2003, Judge Irma E. Gonzalez, United States District Judge, issued an order denying Plaintiff's motion to remand and granted in part Golden Eagle and Liberty Mutual's motions to dismiss. (Id., Dkt. No. 23.) The Court concluded that the claims relating to the question of past service credit under the Benefit Plan were preempted by ERISA. (Id.) Accordingly, the Court dismissed Plaintiff's state law claims without prejudice and granted leave to amend the complaint to allege claims under ERISA. (Id.) On August 5, 2003, the Court granted Plaintiff's ex parte application to remand remaining causes of action to state court. (Id., Dkt. No. 25.)

(AR 639-43.) On August 21, 2008, Plaintiff Pauline Arwood filed a claim. (AR 1016-20.) Lastly, on December 4, 2008, Plaintiff Jeannie Sanders filed her claim. (AR 1511-16.)

On April 23, 2008, Moyle's claim and subsequently Rollason, Arwood and Sanders' claims for benefits were initially denied by John R. St. Martin, Manager of Pension and Savings, Benefits at Liberty Mutual. (AR 712-718 ("Moyle"); 590-96 ("Rollason"); 991-97 ("Arwood"); 1497-1503 ("Sanders")).

On June 20, 2008, Plaintiffs sought review of the initial decision and all four claims were consolidated for purposes of the administrative appeal. (AR 426.) On October 23, 2009, Plaintiffs' appeals were denied by Helen Sayles, Senior Vice President of HR & Administration, on behalf of the Retirement Board. (AR 4365-4414.)

After having exhausted administrative remedies, on October 19, 2010, Plaintiffs Moyle, Arwood, Rollason, and Sanders filed the instant class action complaint against Defendants Liberty Mutual Retirement Benefit Plan ("Plan"); Liberty Mutual Retirement Benefit Plan Retirement Board ("Board"); Liberty Mutual Group, Inc. ("LMGI"); and Liberty Mutual Insurance Company ("LMIC"). (Dkt. No. 1.) On October 21, 2010, Plaintiffs filed a first amended complaint. (Dkt. No. 3.) On April 25, 2011, District Judge Dana Sabraw denied Defendants' motion to dismiss the second and third claims; granted in part motion to dismiss improperly named Defendants; denied Defendants' motion to dismiss the first claim as to Plaintiff Moyle and granted Defendants' motion to strike demand for trial by jury. (Dkt. No. 18.) On September 14, 2011, the Court granted Plaintiffs' motion for leave to file a second amended complaint. (Dkt. No. 41.) On September 20, 2011, Plaintiffs filed a second amended complaint. (Dkt. No. 47.)

After briefing by the parties on Plaintiffs' motion for class certification, on April 10, 2012, District Judge Sabraw certified the class as to the first, second, and fourth causes of action to be:

all former employees of Golden Eagle Insurance Company who are or were employed by Liberty Mutual Group Inc. and/or Liberty Mutual Insurance Company starting October 1, 1997, who participated or are participating in the Liberty Mutual Retirement Benefit Plan, and who were or will be denied credit for all years of service with Old Golden Eagle for the purposes of calculating all benefits owed to them under the Plan from October 1, 1997 to the present.

(Dkt. No. 113 at 19.)

On April 24, 2012, Defendants filed a petition for permission to appeal the Court's order granting class certification to the Ninth Circuit. (Dkt. No. 120.) In the meantime, the Court denied Defendants' motion for reconsideration and granted their motion for stay pending appeal. (Dkt. No. 126.) On July 11, 2012, the Ninth Circuit denied Defendants' petition for permission to appeal. (Dkt. No. 128.)

On October 12, 2012, the case was transferred to the undersigned judge. (Dkt. No. 174.) On October 17, 2012, Plaintiffs filed a third amended complaint against Defendants Liberty Mutual Retirement Benefit Plan ("Plan"); Liberty Mutual Retirement Benefit Plan Retirement Board ("Board"), the Plan administrator; Liberty Mutual Group, Inc. ("LMGI"), the Plan sponsor; and Liberty Mutual Insurance Company ("LMIC"), the entity that purchased OGE, and established GEIC and is a subsidiary of LMGI. (Dkt. No. 178.) The third amended complaint alleges four causes of action: payment of benefits under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B); equitable relief under 29 U.S.C. § 1132(a)(3); violation of 29 C.F.R. § 2560.503-1(h)(2)(i); and violation of 29 C.F.R. § 2520.102-3(l) and 29 C.F.R. § 2520.102-2(a).

On January 3, 2013, Defendants filed a motion for summary judgment on all four causes of action. (Dkt. No. 212.) On the same day, Plaintiffs filed a motion for partial summary judgment on the second and fourth causes of action and on certain of Defendants' affirmative defenses. (Dkt. No. 213.) On March 8, 2013, both parties filed their respective oppositions to the motions for summary judgment. (Dkt. Nos. 232, 233.) On April 5, 2013, replies by both parties were filed. (Dkt. Nos. 239, 241.)

**Factual Background**

Plaintiffs Geoffrey Moyle, Pauline Arwood, Thomas Rollason, and Jeannie

Sanders are four former employees of Golden Eagle Insurance Company ("Old Golden Eagle" or "OGE"). (Dkt. No. 233-2, Undisputed Fact No. 2.) On January 31, 1997, the Superior Court of San Diego County placed OGE into conservatorship proceedings under the supervision of the California Insurance Commissioner. (Id., Undisputed Fact No. 5.) The court approved the sale and transfer of certain OGE assets and liabilities to LMIC on May 30, 1997. (Id.) On October 1, 1997, pursuant to a Rehabilitation Agreement with the State-appointed conservator, LMIC purchased certain assets of OGE and formed and incorporated a new entity, Golden Eagle Insurance Corporation, ("New Golden Eagle" or "GEIC"), as a subsidiary of LMIC. (Id., Undisputed Fact No. 6.) Article 5.1(c) of the Rehabilitation Agreement states:

> As to the employees of [OGE] who become employees of New Eagle or another Subsidiary of LMIC by reason of the transactions contemplated by this Agreement . . . [s]uch employees shall be provided benefits which are at least comparable to those offered by [OGE] and shall be credited for all prior years of service with [OGE] . . . for purposes of eligibility, vesting and early retirement subsidies under the LMIC Retirement Benefit Plan . . . provided, that such period of service with [OGE] will not be credited for purposes of benefits accruals under the LMIC Thrift Incentive Plan and Retirement Benefit Plan . . . .

(Id., Undisputed Fact No. 7; AR 3035-36.) OGE did not offer a traditional defined benefit pension plan to its employees. (Id., Undisputed Fact No. 9.) As former employees of OGE, Plaintiffs had the opportunity to participate in a 401(k) Plan and profit-sharing plan. (Id., Undisputed Fact No. 10.) OGE did not offer any other retirement plans, such as a defined benefit pension plan funded by the employer with benefit accruals based on years of service. (Id., Undisputed Fact No. 11.) OGE did not contribute any assets to the Plan at issue in this case and Plaintiffs did not make any contributions to the Plan. (Id., Undisputed Fact No. 12.)

Plaintiffs claim Defendants sought to retain Old Golden Eagle employees and advised them that if they remained in their positions, they would be eligible to participate in the Plan with credit for their years of service with Old Golden Eagle in addition to their continued time of employment after the acquisition. While Defendants argue that they stated that Old Golden Eagle employees would receive prior service

credit for the years of service with Old Golden Eagle under the Plan for purposes of eligibility, participation, vesting, early retirement benefits and spouse's death benefits, they did not expressly state one way or another whether Old Golden Eagle employees would be credited for purposes of calculating pension benefit accrual under the Plan. Plaintiffs remained in their positions after the acquisition and later retired. Upon retirement, their pension benefits were calculated based only on their years of service after the acquisition in October 1997. It is undisputed that years of service with Old Golden Eagle were credited under the Plan for purposes of eligibility, participation, vesting, retirement benefits and spouse's death benefits. However, Plaintiffs and many other Old Golden Eagle employees expected to receive credit also for purposes of calculating their accrued retirement benefit. Therefore, Plaintiffs filed their lawsuit alleging violations of the provisions of ERISA.

**A.    Legal Standard for Motion for Summary Judgment**

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. Celotex Corp., 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. Id. at 322-23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the

nonmoving party's evidence. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Celotex</u>, 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. <u>Id.</u> at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." <u>Fontana v. Haskin</u>, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. <u>Anderson</u>, 477 U.S. at 255.

**B.    ERISA Standard of Review**

The United States Supreme Court has held that a denial of benefits is reviewed *de novo* when the plan does not confer discretion on the administrator "to determine eligibility for benefits or to construe the terms of the plan." <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989). If *de novo* review applies, no further preliminary analytical steps are required and the court proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits without regard to whether the administrator operated under a conflict of interest. <u>Abatie v. Alta Health & Life Ins. Co.</u>, 458 F.3d 955, 963 (9th Cir. 2006). If a plan confers discretionary authority as a matter of contractual agreement, then the standard of review shifts to an abuse of discretion. <u>Firestone Tire & Rubber Co.</u>, 489 U.S. at 115. The plan must unambiguously provide discretion to the administrator. <u>Id.</u>

Both parties do not dispute that the Plan grants the administrator discretion to interpret the Plan. Defendants argue that an "abuse of discretion" standard applies while Plaintiffs assert a "*de novo*" or a heightened deferential standard of review applies as there is a substantial conflict of interest.

In applying the abuse of discretion standard, the Court must reverse the determinations of the plan administrator if they are arbitrary and capricious after looking at the plain language of the plan. Canseco v. Constr. Laborers Pension Trust, 93 F.3d 600, 606 (9th Cir. 1996). "A plan administrator's decision to deny benefits must be upheld under the abuse of discretion standard if it is based upon a reasonable interpretation of the plan's terms and if it was made in good faith." McDaniel v. Chevron Corp., 203 F.3d 1099, 1113 (9th Cir. 2000). The question is not "whose interpretation of the plan documents is most persuasive, but whether the . . . interpretation is unreasonable." Canseco, 93 F.3d at 606 (citations and internal quotations omitted).

If a plan gives discretion to an administrator who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" Firestone Tire & Rubber Co., 489 U.S. at 115; see Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008) (a conflict of interest will be found where the "entity that administers the plan, such as an employer or an insurance company, both determines whether an employee is eligible and pays benefits out of its own pocket."); Conkright v. Frommert, 130 S. Ct. 1640, 1646 (2010) (When the terms of a plan grants discretionary authority to the plan administrator, a deferential standard of review remains appropriate even in the face of a conflict.)

In following the United States Supreme Court, the Ninth Circuit has held that the "[a]buse of discretion review applies to a discretion-granting plan even if the administrator has a conflict of interest." Abatie, 458 F.3d at 965. When there is a conflict of interest, such as when a plan administrator both administers the plan and funds it, the Ninth Circuit held that the standard of review is an abuse of discretion

[10cv2179-GPC(MDD)]

review "but a review informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." Id. at 967. "A district court, when faced with all the facts and circumstances, must decide in each case how much or how little to credit the plan administrator's reason for denying . . . coverage." Id. at 968. For instance, if a conflict of interest involves evidence of malice, self-dealing or parsimonious claims-granting history, the court may weigh a conflict more heavily than a conflict of interest without evidence of malice or self-dealing. Id. A court may weigh the conflict more heavily if there's evidence that the administrator has given "inconsistent reasons for denial . . . fails adequately to investigate a claim or ask the plaintiff for necessary evidence . . . fails to credit a claimant's reliable evidence . . . or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record." Id. at 968-69.

However, if an administrator "engages in wholesale and flagrant violation of the procedural requirements of ERISA and thus acts in utter disregard of the underlying purpose of the plan as well", the Court reviews *de novo* the administrator's decision to deny benefits. Abatie, 458 F.3d at 971; see also Gatti v. Reliance Standard Life Ins. Co., 415 F.3d 978, 985 (9th Cir. 2005) (*de novo* review applies where the administrator has a serious conflict of interest that the beneficiary can demonstrate with "material, probative evidence, beyond the mere fact of an apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary.")

Here, while Plaintiffs agree that the Plan[2] grants the administrator, Liberty

---

[2]The 2001 Plan provides:
Except as otherwise herein expressly provided, the Retirement Board will have the exclusive right and discretionary authority, to the fullest extent provided by law, to interpret the Plan, decide all questions of eligibility, determine the amount, time, and manner of payment of any Plan distribution; and decide any other matters arising hereunder in the administration and operation of the Plan, and any interpretations or decisions so made will be conclusive and binding on all persons having

Mutual Retirement Benefit Plan Retirement Board, discretion to interpret the Plan, they argue that there is a structural conflict of interest so a "*de novo*" or a heightened deferential standard of review applies.

In support of their argument that there was a structural conflict of interest such that a *de novo* review applies, Plaintiffs assert that John R. St. Martin, a Liberty employee who reported to Helen Sayles, denied the initial claim, and then Helen Sayles, Liberty's Director of Human Resources and a member of the Liberty Mutual Board of Directors reviewed St. Martin's denial and simply rubber stamped it. (Dkt. No. 233-4, Butler Decl., Ex. 40, Sayles Depo. at 10:11-11:25.) In support, Plaintiffs point to Sayles' deposition where she states that "Mr. St. Martin prepared a draft of the document for her review along with other documentation." (Dkt. No. 235-20, Butler Decl., Ex. 40, Sayles Depo. at 177:10-14.) This alone does not demonstrate Sayles rubber stamped the initial denial.

Plaintiffs also argue that there was a structural conflict of interest because both St. Martin and Sayles were witnesses to the underlying facts of Plaintiffs' claims. Both were involved with the 1997 Benefit Enrollment meetings and they drafted various Plan documents, including the Summary Plan Descriptions ("SPD") and the Facilitator Guide. Therefore, Plaintiffs argue that they were inherently biased when they reviewed their own communications with employees to determine if their employer should pay more money into the Plan. Defendants argue that Plaintiffs have not provided any evidence they any financial interest or motivation to deny the claims. The Court agrees. While Plaintiffs present general allegations that St. Martin and Sayles were biased because of their positions at Liberty Mutual and/or the Board, Plaintiffs have not provided any specific evidence to show that St. Martin and Sayles were influenced

---

an interest in the Plan; provided, however, that all such interpretations and decisions will be applied in a uniform and nondiscriminatory manner to all Employees.

(AR 2162.)

by their involvement in these meetings and/or drafting the various Plan documents.

Plaintiffs further contend that the investigation of their claims was one sided because Defendants rejected Plaintiffs' declaration, relying solely on declarations of then current Liberty employees who made the misleading presentations. They allege that every declaration obtained during the claim and appeal came solely from Human Resources ("HR") personnel working under St. Martin. Therefore, Defendants failed to obtain a balanced view of what happened at the meetings. Defendants assert that Sayles specifically addressed Plaintiffs' affidavits in each of the denial letters, clearly considering Plaintiffs' perspectives but concluding that they did not outweigh the overwhelming weight of contrary evidence. The denial decisions reveal that Sayles considered Plaintiffs' declarations. (AR 4371, 4381, 4391, 4411.) Plaintiffs' argument that the investigation was one-sided is without merit.

Plaintiffs have not demonstrated that a structural conflict of interest so serious existed to warrant *de novo* review. See Abatie, 458 F.3d at 971 (*de novo* review applies to a plan that gives discretion to an administrator when the administrator "engages in wholesale and flagrant violation of the procedural requirements of ERISA and thus acts in utter disregard of the underlying purpose of the plan as well.")

Plaintiffs also contend that there is a substantial conflict of interest because the Plan pays all benefits which is funded entirely by Liberty.[3] Plaintiffs cite generally to the funding provisions in the 1987 and 2001 Plans showing that the Plan is entirely funded by Liberty. (AR 2167-2173; 3562-3564.) Defendants argue that Sayles testified that benefit payments are paid from group annuity contracts, not the assets of Liberty Mutual. (Id., Sayles Depo. at 180:7-12.)

To determine whether there is a conflict of interest, the question is not where the benefit payments are paid out of but who funds the Plan. Based on the record before the Court, Liberty Mutual Insurance Company ("LMIC") funds the plan. (AR 2167-

---

[3] In support, Plaintiffs cite to the deposition testimony of Helen Sayles, the Board member who denied Plaintiffs their appeal, (Dkt. No. 233-2 at 154, AMF No. 154); however, those pages of the depositions were not provided by Plaintiffs in their motion.

[10cv2179-GPC(MDD)]

2173; 3562-3564; 1662.) Liberty Mutual Retirement Plan Retirement Board ("Board") is the administrator of the Plan. While the same entity does not fund and also determines ERISA benefits, it appears the employees of LMIC are also members of the Board. Since there is an overlap between the two entities, the Court concludes that a conflict of interest existed.

In sum, the Court concludes Plaintiffs have not shown that a structural conflict existed to warrant *de novo* review. However, the Court concludes there was a conflict of interest because of the close connection between the Board, who is the Plan administrator, and LMIC, who funds the Plan. See Metropolitan Life Ins. Co., 554 U.S. at 108. Accordingly, the Court reviews the administrative record for an abuse of discretion with the conflict of interest being weighed as a factor in determining whether the Board member abused her discretion. See Abatie, 458 F.3d at 965.

**C.     First Cause of Action - Determination of Terms of Plan and Clarification of Rights to Future Benefits under 29 U.S.C. § 1132(a)(1)(B)**

     **1.     Statute of Limitations**

Defendants argue that Plaintiffs' claim under 29 U.S.C. § 1132(a)(1)(B) is time-barred under the four year statute of limitations governing claims for benefits. They argue that Plaintiffs knew that they would not be receiving benefits for purposes of benefit accruals well before October 19, 2006 and the instant lawsuit was not filed until October 19, 2010. In opposition, Plaintiffs contend that their claims did not accrue until final denial on October 23, 2009. They also maintain that their claims are timely because courts toll any applicable statute of limitations while a participant exhausts a Plan's administrative process.

The Ninth Circuit has held that California's four-year statute of limitations for written contracts applies to ERISA claims for benefits under 29 U.S.C. § 1132(a)(1)(B). See Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program, 222 F.3d 643, 648 (9th Cir. 2000). An ERISA claim accrues "either at the time benefits are actually denied, or when the insured has reason to know that the claim

has been denied." <u>Wise v. Verizon Commc'ns, Inc.</u>, 600 F.3d 1180, 1188 (9th Cir. 2010) (quoting <u>Wetzel</u>, 222 F.3d at 649). An insured has "reason to know" when "the pension plan communicates 'a clear and continuing repudiation' of a claimant's rights under a plan, such that the claimant could not have reasonably believed but that his benefits had been 'finally denied.'" <u>Chuck v. Hewlett Packard Co.</u>, 455 F.3d 1026, 1031 (9th Cir. 2006) (citations omitted). "A participant need not file a formal application for benefits before having 'reason to know' that his claim has been finally denied." <u>Id.</u>

In <u>Withrow</u>, the plaintiff called the plan and subsequently wrote a letter to inquire about an alleged underpayment of long-term disability benefits in October 1990. <u>Withrow v. Halsey</u>, 655 F.3d 1032, 1034 (9th Cir. 2011). Plaintiff received monthly benefits reflecting the alleged miscalculated amount for nearly twelve years and did not pursue her claim until May 2002. <u>Id.</u> at 1036-37. Her administrative appeal was denied on January 14, 2004. <u>Id.</u> at 1036. The court of appeal held that Plaintiff's cause of action did not accrue earlier than the date her benefits were "actually denied" on January 14, 2004. <u>Id.</u> at 1037-38. The court explained that plaintiff called and then wrote two letters to the plan stating her concerns in 1990. (<u>Id.</u>) The only evidence of the plan's response was a handwritten notation by an employee on one of the letters stating that someone had called plaintiff back and left a message on her answering machine stating that the "original determination of salary stays the same." <u>Id.</u> at 1037. The court noted that it was unclear who made the call, what exactly was said and whether Plaintiff was provided guidance about how to submit her claim for review. <u>Id.</u> The court concluded that such a response did not constitute "clear and continuing repudiation" of Plaintiff's claim. <u>Id.</u> The court stated that "[i]f such a response was sufficient to constitute a 'clear and continuing repudiation,' then virtually any correspondence or communication with a plan concerning the calculation or awarding of benefits could be interpreted as such." <u>Id.</u>

In <u>Wise</u>, the plaintiff received four denial of claim notices as she proceeded

through the Administrator's internal review process.  Wise v. Verizon Comms., Inc., 600 F.3d 1180, 1188 (9th Cir. 2010).  The first three letters told plaintiff that she could seek further internal review of the adverse benefits determination and encouraged her to submit any supplemental medical documentation.  Id.  The last letter, dated March 14, 2002, notified plaintiff that "all decisions of the [Claims Review Committee] are final and did not indicate any further internal review was possible and notified her of the first time her right to bring a civil enforcement action under 29 U.S.C. § 1132(a) of ERISA, signaling the end of the internal review process."  Id.  The Ninth Circuit held that the plaintiff's claim accrued, at the earliest, on March 14, 2002 with the Claims Review Committee's final denial notification.  Id.

Here, Defendants assert that Plaintiffs "knew that they would never be receiving benefits for purposes of benefit accruals" well before October 19, 2006. (Dkt. No. 212-1 at 23.)  Specifically, they contend that Moyle's claims had been so clearly repudiated that he filed his first of three lawsuits seeking pension benefits on November 5, 2002 and alleges in the third amended complaint that Liberty Mutual told Moyle on May 23, 2002 that Defendants would not provide Moyle any credit for the years of employment and service with OGE.  (Dkt. No. 178, TAC ¶ 43.)  They also point to Moyle's testimony at his deposition he learned he would not be receiving credit for purposes of benefit accruals which prompted him to confirm with Liberty Mutual that he was not entitled to benefits in 2002. (Dkt. No. 212-24, Abel Decl., Ex. 10, Moyle Depo. 51:6-15.)

Plaintiffs argue nothing in the third amended complaint indicates he had been provided sufficient information indicating his benefits had been "finally denied." The Court agrees.  The allegation pointed to by Defendants does not sufficiently support a finding that Defendants had communicated "a clear and continuing repudiation" of Moyle's rights such that he "could not have reasonably believed but that his benefits had been finally denied."  See Chuck, 455 F.3d at 1031.

Plaintiff Moyle testified that he learned in 2002 when he received a benefits

statement that he would not be receiving credit for time worked at OGE. This prompted him to confirm with Liberty Mutual that he was not entitled to past service credit. (Dkt. No. 212-24, Abel Decl., Ex. 10, Moyle Depo. at 51:6-15.) As to the other three named Plaintiffs, Sanders states she learned employees would not be receiving credit for accrual purposes around 2000 or 2001 when one of her co-workers retired. (Dkt. No. 212-27, Abel Decl., Sanders Depo. at 67:8-68:8.) She also testified that she knew that she would not be receiving past service credit at the time she retired in late 2004 and received her first pension check in 2005. (Id. at 77:13-24.) She did not do anything about it because she "just thought it would be a useless battle." (Id. at 78:3-6.)

Arwood testified that she called the benefits department in November 2001 asking about getting credit for her time with Old Golden Eagle and was told that she would not be receiving such credit. (Dkt. No. 212-16, Abel Decl., Ex. 2, Arwood Depo. at 78:2-21.) After she learned she would not be receiving these benefits, she did not take any action. (Id. at 78:22-79:9.) Rollason testified he learned that he would not be receiving benefits for his time with Old Golden Eagle when Arwood retired in 2001. (Dkt. No. 212-25, Abel Decl., Rollason Depo. at 73:23-74:24.) He also spoke with Laura Bond in GEIC's human resources who informed him that Old Golden Eagle employees would not get past service credit for purposes of benefits accrual. (Id. at 91:8-93:10.) It is not clear from the deposition when Rollason talked with Laura Bond, whether in 2001 when Arwood retired, or 2007 when he retired. (Id. at 92:9-22.) He testified that in 2001 he was alerted to the fact that Liberty was not giving them a pension. (Id. at 92:19-22.)

While Defendants contend that these assertions demonstrate that Plaintiffs knew they would not be receiving benefits for purposes of benefit accruals before October 19, 2006, "knowing" they would not receive benefits is not the standard. Defendants must show a "clear and continuing repudiation" by Liberty such that Plaintiffs "could not have reasonably believed but that his benefits had been 'finally denied,'" See

[10cv2179-GPC(MDD)]

Chuck, 455 F.3d at 1031; <u>Withrow</u>, 655 F.3d at 1037.  The telephone calls to Liberty made by Arwood and Moyle, without any details as to who she talked to, and what was actually stated, are not examples of a "clear and continuing repudiation" by Liberty. <u>See</u> <u>Withrow</u>, 655 F.3d at 1037.  As to Sanders, she had no communications with Liberty about whether she would be receiving credit for accrual purposes.  As to Rollason, his deposition is not clear whether he spoke to Laura Bond in 2001 or 2007. These facts do not constitute "clear and continuing repudiation" by Liberty.  <u>See id.</u>

Accordingly, the Court concludes that the accrual did not occur until October 23, 2009 when their appeals were "actually denied."  Since Plaintiffs filed their complaint on October 19, 2010, their complaint is timely pursuant to 29 U.S.C. § 1132(a)(1)(B).[4]

**2.  Laches**

"Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that 'one who seeks the help of a court of equity must not sleep on his rights.'"  <u>Jarrow Formulas, Inc. v. Nutrition Now, Inc.</u>, 304 F.3d 829, 835 (9th Cir. 2002) (citing <u>Boone v. Mech. Specialities Co.</u>, 609 F.2d 956, 958 (9th Cir. 1979)). Laches is an equitable defense while statute of limitation is a creature of law.  <u>Id.</u> at 835.  While a distinct defense, "a laches determination is made with reference to the limitations period for the analogous action at law."  <u>Id.</u>  In the Ninth Circuit, when a plaintiff has filed a complaint within the statute of limitations period, there is a strong presumption that laches does not apply.  <u>Id.</u> at 835-36; <u>Tillamook County Smoker Inc. v. Tillamook County Creamery Ass.</u>, 465 F.3d 1102, 1108 (9th Cir. 2006).  The party asserting laches must show that it suffered prejudice due to plaintiff's unreasonable delay in filing suit.  <u>Id.</u> at 835.

"To prove laches, the 'defendant must prove both an unreasonable delay by the plaintiff and prejudice to itself.'"  <u>Evergreen Safety Council v. RSA Network, Inc.</u>, 697 F.3d 1221, 1226 (9th Cir. 2012). "When evaluating the reasonableness of a delay, the

---

[4]As the Court determines that the complaint is timely, the Court need not address whether tolling applies while a plaintiff exhausts administrative remedies.

evaluation period begins when the plaintiff knew (or should have known) of the [potential cause of action], and ends with the initiation of the lawsuit in which the defendant seeks to invoke the laches defense." Id.; Trustees of the S. Cal. Bakery Drivers Sec. Fund v. Middleton, 366 Fed. Appx. 810, 813 (9th Cir. 2010) (in ERISA case, stating that, for laches defense, defendant "must show (1) inexcusable delay in [plaintiff's] assertion of a known right; and (2) prejudice to [defendant]").

Defendants argue they will be prejudiced because since the relevant transaction occurred over fifteen years ago, many of the witnesses had difficulty recalling relevant facts. Also, John St. Martin, who denied Plaintiffs' initial claims, passed away during the litigation. Plaintiffs argue that the death of St. Martin is not prejudicial as he was deposed and has provided numerous written declarations. As to evidentiary prejudice, Defendants must "identify key witnesses or evidence whose 'absence has resulted in the [defendant's] inability to present a full and fair defense on the merits.'" Adidas America, Inc. v. Payless Shoesource, Inc., 529 F. Supp. 2d 1215, 1254 (D. Or. 2007) ("[c]onclusory statement that there are missing witnesses, that witnesses' memories have lessened . . . are not sufficient to establish evidentiary prejudice").

Here, Defendants have not shown that they have been prejudiced by the passage of time. Their general allegations that many witnesses had difficulty recalling facts is not sufficient. See Adidas America, Inc., 529 F. Supp. 2d at 1254. As to St. Martin, no prejudice will result as he was deposed and wrote numerous declarations. Accordingly, the Court concludes Defendants have not shown prejudice and the claim is not barred by the doctrine of laches.

### 3. 29 U.S.C. § 1132(a)(1)(B)

Plaintiffs' first cause of action arises under ERISA which authorizes participants and beneficiaries of a pension plan to bring suit to recover the benefits to which they are entitled to under the terms of that plan. 29 U.S.C. § 1132(a)(1)(B). The Court must review the decision made by the administrator. See Benson v. Long Term Disability Income Plan for Employees of Xerox, 108 F. Supp. 2d 1074, 1080 (9th Cir.

1993).

Ordinarily, summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. In ERISA actions, however, where the plaintiff is challenging the plan administrator's denial of benefits and the district has already determined that the abuse of discretion standard of review applies, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." Bendixen v. Standard Ins. Co., 185 F.3d 939, 942 (9th Cir.1999). In such cases, the district court must look to the plain language of the plan to determine whether the plan administrator's interpretation was arbitrary and capricious. See Canseco, 93 F.3d at 606. The administrators are found to have abused their discretion if they construed provisions of the plan in a way that clearly conflicts with the plain language of the plan. See id. (internal citations omitted). Under the abuse of discretion standard, the administrator's decision will be upheld as long as there is "substantial evidence to support the decision," i.e., "relevant evidence [that] reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." Snow v. Standard Ins. Co., 87 F.3d 327, 332 (9th Cir.1996), overruled on other grounds in Kearny v. Standard Ins. Co., 175 F.3d 1084 (9th Cir. 1999). In this case, the abuse of discretion standard will be viewed with the conflict of interest being weighed as a factor in determining whether the Board member abused her discretion. See Abatie, 458 F.3d at 965.

29 U.S.C. § 1132(a)(1)(B) provides that a plan participant may bring a civil action "to recover benefits due him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

In this case, Defendants argue that the Board reasonably interpreted the Plan terms defining accrued retirement benefits in denying Plaintiffs' claims for benefits.

Plaintiffs argue that Defendants' interpretation of the Plan was unreasonable. Defendants and Plaintiffs differ in their interpretation of the 2001 Plan language. A review of the Plan language reveals that Defendants' interpretation of the plan is not unreasonable.

Under the 2001 Plan, Article 1 provides DEFINITIONS of words and phrases used in the Plan. (AR 2089.) Article 2 concerns PARTICIPATION AND SERVICE and Article 3 concerns NORMAL RETIREMENT BENEFITS. (AR 2089, 2112, 2124.) "'Accrued Benefit' means, as any determination date, the Retirement Benefit determined under Article 3 payable in the Normal Form beginning at a Participant's Normal Retirement Date . . . ." (AR 2089.) According to Article 3, Retirement Benefits are based on "Years of Credited Service." (AR 2124, 2125.) "Years of Credited Service" is defined in Article 1.69(c) and means, "for Full Time Employees, the period of the Participant's service with the Employer following the Entry Date, as determined below: (i) For purposes of determining Accrued Benefits under the Final Average Pay formula set forth in Section 3.1(a), one Year of Credited Service shall be credited for each 12 full calendar months of service, whether or not consecutive, between his Entry Date and his Service Termination Date, except as provided below. . . Anything in the Plan to the contrary notwithstanding, the following periods of time shall not be included in determining Years of Credited Service . . . (B) any period of time during which an Employee is not an Eligible Employee." (AR 2110-11.)

Under Article 1.19, an Eligible Employee means an employee who "is employed by a Participating Employer . . ." (AR 2096.) A Participating Employer is the "Company and any other Affiliated Employer which adopts the Plan with the approval of the Company. Each Participating Employer which adopts the Plan agrees to its provisions." (AR 2104.) The Company means Liberty Mutual Insurance Company. (AR 2094.) An Affiliated Employer means "any corporation, trust, association, or enterprise (other than the Company) which is (a) required to be considered, together with the Company, as one employer pursuant to the provisions of Sections 414(b),

414(c), 414(m) or 414(o) of the Code; or (b) which is designated an Affiliated Employer by the Company. (AR 2090.)

In addition, Article 2.6(a) and (d) contain specific provisions for Golden Eagle which provide:

> (a) <u>General</u>. An individual's employment service with an employer prior to the date such employer becomes an Affiliated Employer shall not be considered employment service with the Employer under this Plan, unless otherwise provided by the Board of Directors, or unless otherwise required by Department of Labor or Treasury regulations. Similarly, an individual's employment service with an employer who is not an Affiliated Employer, or who ceases to be an Affiliated Employer, shall not be considered employment service with the Employer under this Plan, unless otherwise provided by the Board of Directors, or unless otherwise required by Department of Labor or Treasury regulations. Notwithstanding the foregoing:
>
> (d) <u>Golden Eagle</u>. The following special rule applies to former employees of Golden Eagle Insurance Company ("GEIC") who became employed by the Golden Eagle Insurance Corporation, a wholly owned subsidiary of the company, on October 1, 1997, as a result of the acquisition by the Company of the assets of GEIC. For purposes of applying the **eligibility and participation** provisions of Article 2 and the **vesting** provisions of Article 6, and for determining **eligibility for early retirement benefits** under Section 45.1 and **Spouse's death benefit** under Section 7.3, such employees' prior employment service with GEIC shall be considered employment service with the Employer under this Plan.

(<u>Id.</u> at 2120) (emphasis added).

The Administrator concluded that Old Eagle was never a Participating Employer under the Plan and Plaintiffs were not actively employed by any Participating Employer prior to October 1, 1997. (AR 4369; 4379; 4389; 4409.) She also found that Plaintiffs could not have been Eligible Employees prior to October 1, 1997, and could not have time before that date count toward Years of Credited Service under Plan Section 1.69(c). (AR 4369; 4379; 4389; 4409.) Lastly, Plaintiffs did not have a Year of Credited Service under the Plan prior to October 1, 1997, the year in which New Eagle became a Participating Employer, because they did not have any calendar month of service with a Participating Employer. (AR 4369; 4379; 4389; 4409.)

Defendants argue that no provision in the Plan grants Plaintiffs past service credit for purposes of benefit accruals for time worked at Old Golden Eagle.

Moreover, they assert that Article 2.6(d) concerning Golden Eagle employees does not reference Article 3 which concern benefits based on Years of Credited Service.

In opposition, Plaintiffs argue that Article 2.6(d), the provision that specifically applies to Golden Eagle, provides that the employees' time with OGE is considered time with Liberty for eligibility, participation and vesting under Article 2 and 6. They state that "participation credit" under 2.6(d) mandates past service credit with OGE counts for the purposes of benefit accrual.[5]

Plaintiffs' interpretation of the Plan is as follows: Plaintiffs contend that past service credit is provided under Articles 1 and 2. Accrued Benefits are based on Years of Credited Service in Article 1.69(c) which is to be determined by the Entry Date and Service Termination Date. (Dkt. No. 233 at 30.) Entry Date is established in "Participation Requirements" in Article 2.1(a). Article 2.1(a) provides that an employee becomes a Participant on the Entry Date following the latest of "i) the date on which he completes one Eligibility Year of Service; . . iii) the date on which he first performs an Hour of Service as an Eligible Employee." (AR 2112.) Article 1.20 states Eligibility Year of Service has the same meaning as Vesting Year of Service for full time employees, which includes, under Article 2.6, time worked with OGE. (AR 2096.) An Eligible Employee is any employee employed by a Participating Employer. According to Plaintiffs, they were Eligible Employees when working for OGE because under Article 2.6(d), their OGE service is treated as Liberty service for eligibility.

Moreover, Article 1.49 defines Participant as "each Eligible Employee who participates in the Plan in accordance with Article 2." (AR 2103.) Plaintiffs are Participants based on their OGE service under Article 2.6(d). Plaintiffs argue that they became Eligible Employees and performed an Hour of Service upon their OGE date of hire pursuant to Articles 2.1 and 2.6(d).

Plaintiffs asks the Court to expand the Plan's definitions and provisions relating

---

[5]The Court notes that contrary to Plaintiffs' interpretation, Article 2.6(d) does not state "participation credit" but only states "participation provisions of Article 2." (AR 2120.) The two appear to be distinct.

to accrued retirement benefits beyond their intended meaning. Plaintiffs argue that Eligibility in a Plan equates to an Eligible Employee. Article 2 concerns Participation and Service. As used in Article 2, Eligibility determines an "individual's eligibility to participate in the Plan." Eligibility to participate in the Plan does not equate to being an Eligible Employee for purposes of calculating accrued retirement benefits. Instead, Article 3 covers pension benefits and defines how they are determined and calculated. Article 2.6(d), upon which Plaintiffs rely, only addresses benefits under Article 2, 6, and 7 and does not apply to Article 3.

The Court's role is not to determine whose "interpretation of plan document is most persuasive but whether the plan administrator's interpretation is unreasonable." Martin v. Continental Cas. Co., 96 F. Supp. 2d 983, 989 (N.D. Cal. 2000) (citation omitted). Based on a review of the Plan and the parties arguments and weighing the conflict of interest, the Court concludes that the administrator's interpretation of the Plan was reasonable. Accordingly, the Court GRANTS Defendants' motion for summary judgment as to the first cause of action pursuant to 29 U.S.C. § 1132(a)(1)(B).[6]

**D.      Second Cause of Action-Equitable Relief under 29 U.S.C. § 1132(a)(3)**

Defendants argue that Plaintiffs' § 1132(a)(3) claim fails because relief is available to Plaintiffs under § 1132(a)(1)(B). Plaintiffs contend that § 1132(a)(3) claims are not precluded by § 1132(a)(1)(B).

29 U.S.C. § 1132(a)(3) authorizes a "participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the

---

[6]Plaintiffs also object because the administrator looked to extrinsic evidence to support her decision. In response, Defendants contend that Plaintiffs submitted claims based on what they were allegedly told at the time of the 1997 acquisition. Therefore, the Board looked to documents and information created in 1997 to determine whether there was any basis for Plaintiffs' claims. Despite the fact that the administrator looked to evidence outside the Plan to support her denial, the Court concludes her denial is based on a reasonable interpretation of the Plan.

plan[.]" 29 U.S.C. § 1132(a)(3).

The United States Supreme Court has characterized 29 U.S.C. § 1132(a)(3) as a "catchall provision" that acts "as a safety net, offering appropriate equitable relief for injuries caused by violations that [29 U.S.C. § 1132] does not elsewhere adequately remedy." Varity Corp. v. Howe, 516 U.S. 489, 512 (1996). The Ninth Circuit has applied this holding that "[e]quitable relief under § 1132(a)(3) is not "appropriate" because § 1132(a)(1) provides an adequate remedy." Forsyth v. Humana, Inc., 114 F.3d 1467, 1475 (9th Cir. 1997); see Ford v. MCI Commc'ns Corp. Health and Welfare Plan, 399 F.3d 1076, 1083 (9th Cir. 2005) (equitable relief not available as plaintiff asserted specific claims under §§ 1132(a)(1)(B) and 1132(a)(2)), overruled on other grounds by Cyr v. Reliance Standard Life Ins. Co., 642 F.3d 1202 (9th Cir. 2011); Rotondo v. Blue Cross of Idaho, 11cv493-EJL-CWD, 2012 WL 1664089, at *5 (D. Idaho Mar. 2, 2012) (citing Ford, 399 F.3d at 1083). This applies whether plaintiff is successful on his § 1132(a)(1)(B) claim or not. See Moss v. Unum Life Ins. Co., 495 Fed. Appx. 583, 589 (6th Cir. 2012).

Ninth Circuit authority also provides that "[i]n determining whether an action for equitable relief is properly brought under ERISA, we look to the substance of the remedy sought . . . rather than the label placed on that remedy." Watkins v. Westinghouse Hanford Co., 12 F.3d 1517, 1528 n. 5 (9th Cir.1993), cert. denied, 537 U.S. 1111 (2003) (citing Mertens v. Hewitt Ass., 508 U.S. 248, 254 (1993) ( "Although they often dance around the word, what petitioners in fact seek is nothing other than compensatory damages - monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties. Money damages are, of course, the classic form of legal relief.")

"Appropriate equitable relief" does not authorize suits for money damages for breach of fiduciary duty. Bast v. Prudential Ins. Co. of America, 150 F.3d 1003, 1010 (9th Cir. 1998) (citing Mertens v. Hewitt Assocs., 508 U.S. 248, 257-58 (1993)). In Bast, the court held that an ERISA claim for restitution was a legal, not equitable

remedy. The court affirmed the district court's decision that to grant restitution to plaintiffs would be equivalent to awarding them money damages. Bast, 150 F.3d at 1010; see Varity, 516 U.S. at 515 (plaintiff could not proceed under other subsections of ERISA and § 1132(a)(3) was the only provision to provide a remedy and equitable remedy was reinstatement, not money damages).

In addition, in Hoffman, a case in this district, the plaintiff brought a claim for life insurance benefits under § 1132(a)(1)(B) as well as claims for the same life insurance benefits on the theories of equitable estoppel and surcharge under § 1132(a)(3). The court held that the claims under §1132(a)(3) were barred by Varity and dismissed those causes of action. Hoffman v. American Soc. For Technion-Israel Inst. Of Tech., Inc., 09cv2482-BEN(KSC), 2012 WL 3647803, at *2 (S.D. Cal. Aug. 22, 2012). Hoffman sought life insurance benefits and also sought surcharge and equitable estoppel as relief under § 1132(a)(3) for the same life insurance benefits. (Case No. 09cv2482, Dkt. No. 55) (citing Biglands v. Raytheon Employee Savings and Inv. Plan, 801 F. Supp. 2d 781, 787 (N.D. Ind. 2011) ("Plaintiff cannot seek a 'legal' remedy and call it an 'equitable' one just by labeling it a 'surcharge,' 'constructive trust' and/or 'injunction.' The effect of any of these remedies would merely be to compel the Defendant to pay benefits due under the terms of the ERISA plan all of which is available under 1132(a)(1)(B)."). In response to Plaintiff's argument, even after Amara, the Court indicated that the holding in Varity remains and dismissed the claims under § 1132(a)(3). Id. at *2.

Plaintiffs argue that the United States Supreme Court case in Amara allows them to seek relief under § 1132(a)(1)(B) and §1132(a)(3). In Amara, the Supreme Court held that the ERISA provision authorizing recovery of amounts due under an ERISA plan did not give district court authority to reform the terms of a plan as a remedy under § 1132(a)(1)(B); however, it would be authorized to reform the terms of the pension plan under § 1132(a)(3). Cigna Corp. v. Amara, 131 S. Ct. 1866, 1878-80 (2011). In

_Amara_, plaintiffs did not have a remedy under § 1132(a)(1)(B).[7] It also did not address whether equitable relief is available under § 1132(a)(3) if § 1132(a)(1) provides an adequate remedy. Since _Amara_, the Ninth Circuit has not ruled on whether _Amara_ changed the nature of equitable remedies available under § 502(a)(3) in relation to relief under § 502(a)(1)(B). One district court stated that _Amara_ did not alter the ruling announced in _Varity_. _Roque v. Roofers' Unions Welfare Trust Fund_, No. 12C3788, 2013 WL 2242455, at *7 (N.D. Ill. May 21, 2013) (citing _Biglands v. Raytheon Employee Savings & Inv. Plan_, 801 F. Supp. 2d 781, 786 (N.D. Ind. 2011)). In _Roque_, the court dismissed the § 502(a)(3) claim because plaintiffs failed to show that relief was unavailable under § 502(a)(1)(B)). The court also noted that a great majority of circuits, including the Ninth Circuit, have interpreted _Varity_ to hold that a claimant whose injury creates a cause of action under § 1132(a)(1)(B) may not proceed with a claim under § 1132(a)(3). _Id._ (citing _Korotynska v. Metro. Life Ins. Co._, 474 F.3d 101, 106 (4th Cir. 2006)).

The Court also notes that in the prior case, 05cv507-DMS(WMC), District Judge Dana Sabraw dismissed Plaintiff's claim for breach of fiduciary duty under § 1132(a)(3) because he sought the same relief as the first cause of action for clarification of future benefits under § 1132(a)(1)(B). Moyle asserted a claim under § 1132(a)(1)(B) for claims under the Plan and a breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(3). (Case No. 05cv507-DMS(WMC), Dkt. No. 12, FAC.) While Plaintiff attempted to distinguish the two claims, Judge Sabraw concluded that the relief sought was the same: "an award of past service credits under his retirement plan for prior service with Golden Eagle." (_Id._, Dkt. No. 32 at 9.) The Court held that since Plaintiff had an adequate remedy under § 1132(a)(1)(B), he could not avail himself to

---

[7]On remand by the United States Supreme Court, the district court in _Amara_, in a footnote, noted that the concern regarding the holding in _Varity_ that relief is not available under § 502(a)(3) where the same relief is available under § 502(a)(1)(B), was "obviated when the Supreme Court held that . . . relief could not be ordered under 502(a)(1)(B). _See Amara III_, 131 S. Ct. at 1878." _Amara v. Cigna Corp._, –F. Supp. 2d–, 2012 WL 6649587, *4 n. 2 (D. Conn. Dec. 20, 2012).

[10cv2179-GPC(MDD)]

alternative remedies under § 1132(a)(3).  Id.  On appeal, the Ninth Circuit held that the district court did not err in dismissing the claim under § 1132(a)(3) as Moyle had an adequate relief under 29 U.S.C. § 1132(a)(1).  Moyle v. Golden Eagle Ins. Corp., 239 Fed. Appx. 362, 364 (9th Cir. 2007).

In the third amended complaint, Plaintiffs construe their claim under § 1132(a)(3) to allege equitable forms of relief.  It seeks to reform the plan in accordance with the representations made by Defendants.  The third amended complaint states Defendants should "provide complete credit for years they were employed by Old Golden Eagle for purposes of benefits under the Plan.  Once reformed, the Plan can be enforced via 29 U.S.C. § 1132(a)(1)(B)."  (Dkt. No. 178, TAC ¶ 83.)  They also seek surcharge[8] "in the amount equal to the unpaid benefits."  (Id.)  Plaintiffs also generally seek relief in the form of equitable estoppel and restitution.  (Id. ¶ 84.)  Although couched in terms of equitable relief, in essence, Plaintiffs seeks monetary relief for their denial of past service credit benefits under the Plan.  See Watkins, 12 F.3d at 1528 n. 5 (court is required to look at the substance of the remedy).  Accordingly, the Court GRANTS Defendants' motion for summary judgment and DENIES Plaintiffs' motion for summary judgment on the second cause of action pursuant to 29 U.S.C. § 1132(a)(3).[9]

**E.    Third Cause of Action - 29 C.F.R. § 2560.503-1(h)(2)(i)**

In the third cause of action,[10] Plaintiffs allege that they requested copies of all Plan documents and the administrative record for the claim, including all documents concerning Plaintiffs' contentions that they were to be provided credit for employment time at Old Golden Eagle for benefits determination under the Plan pursuant to 29

---

[8]Surcharge is an equitable remedy that seeks a monetary remedy against a trustee.  Amara, 131 S. Ct at 1880.

[9]The Court need not address Defendants' statute of limitations argument in light of the Court's ruling.

[10]Plaintiffs bring this claim on behalf of themselves as individuals and not as a class.  (Dkt. No. 178, TAC ¶ 86.)

C.F.R. § 2560.503-1(h)(2)(iii) and 29 C.F.R. § 2560.503-1(m)(8).  (TAC ¶¶ 51, 87.)

As a matter of law, Defendants contend that summary judgment should be granted on the third cause of action because statutory penalties are not available for violations of these regulations.  In opposition, Plaintiffs argue that penalties under 29 U.S.C. § 1132(c)(1) applies to the regulations.  The cases that Plaintiffs cite to support their argument are not persuasive as they concern cases under § 1132(c)(1) and not the implementing regulations.

29 U.S.C. § 1132(c)(1), provides:

> Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title, section 1021(e)(1) of this title or section 1021(f), or section 1025(a) of this title with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $ 100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1).  The maximum penalty has been increased to $110 per day. 29 C.F.R. § 2575.502c–1.

The full and fair review regulations, 29 C.F.R. § 2560.503-1(h)(2)(iii) provide:

> (h) Appeal of adverse benefit determinations--
> (1)  In general.  Every employee benefit plan shall establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan, and under which there will be a full and fair review of the claim and the adverse benefit determination.

> (2) Full and fair review.  Except as provided in paragraphs (h)(3) and (h)(4) of this section, the claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures--

> (iii) Provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.  Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this

section;

29 C.F.R. § 2560.503-1(h)(2)(iii). Paragraph (m)(8) provides:

> A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information
> (i) Was relied upon in making the benefit determination;
> (ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;
> (iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or . . . .

29 C.F.R. § 2560.503-1(m)(8).

In Sgro v. Danone Waters of N. Am., Inc., 532 F.3d 940, 944-46 (9th Cir. 2008), the Ninth Circuit, in dicta, noted that 29 C.F.R. § 2560.503-1(h)(2)(iii) "gives Sgro a cause of action to sue a plan 'administrator' who doesn't comply with a 'request for . . . information.' 29 U.S.C. § 1132(c)(1)." Id. at 945. The Court did not apply the statute since the complaint did not state which defendant was asked for the record. Id. Sgro also held that only the plan administrator is subject to the provisions of section 1132(c)(1). Id. at 945. Here, Plaintiffs allege this claim against the Retirement Board and the Plan. The Board, as administrator, is the only Defendant subject to this provision. Thus, the Court GRANTS Defendants' motion for summary judgment as to the third cause of action as to the Plan.

In Bielenberg, the district court held that ERISA civil penalties section, 29 U.S.C. § 1132(c)(1), was not applicable to violations of regulations pertaining to violations of 29 U.S.C. § 1133. Bielenberg v. ODS Health Plan, Inc., 744 F. Supp. 2d 1130, 1143 (D. Or. 2010). The court explained that the penalty provision imposes penalty against a plan administrator who "fails to meet the requirements of [29 USC § 1166(1) or (4), 1021(e)(1), 1021(f), or 1025(a)] with respect to a participant or beneficiary" or "fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or

beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator)." 29 U.S.C. § 1132(c)(1). § 1132(c)(1) does not specifically list 29 C.F.R. § 2560.503-1(h)(2)(iii) as a provision subject to penalty. It also stated that it was persuaded by the reasoning by three other circuits that have held that § 1132(c) may not be used to impose civil liability for a violation of 29 U.S.C. § 1133(c) and implementing regulations, including 29 C.F.R. § 2560.503-1(h)(2)(iii). Id. at 1144-45. The Bielenberg court stated,

> the Third, Sixth, Seventh, and Eighth Circuits have held that 29 USC § 1132(c) may not be used to impose civil liability for the violation of 29 USC § 1133 or regulations implemented pursuant thereto. Brown v. J.B. Hunt Transport Servs., Inc., 586 F.3d 1079, 1089 (8th Cir. 2009) ("[W]e agree with our sister circuits that a plan administrator may not be penalized under § 1132(c) for a violation of the regulations to § 1133") (citing cases); Wilczynski v. Lumbermens Mut. Cas. Co., 93 F.3d 397, 405–06 (7th Cir. 1996). These cases reason that the underlying regulation (29 CFR § 2560.503–1(h)) speaks only to the obligations of benefit plans (as opposed to plan administrators) and is based on a statute (29 USC § 1133) which pertains only to claims for benefits. As with the regulation at issue in Brown, the statutory authority for 29 CFR § 2560.503–1(h)(2)(iii) is 29 USC § 1133 which pertains to "claims for benefits." Similarly, as did the regulations at issue in Wilczynski, the regulation at issue here "speaks only to the obligations of benefit plans" and, therefore, "section 1132(c) cannot be used to impose civil liability for the violation of section 1133 alleged." Wilczynski, 93 F.3d at 406.

Id. at 1143-44. While the Bielenberg court acknowledged Sgro, it concluded that the issue was never reached and found the other circuits' reasoning persuasive. See also Konty v. Liberty Life Assur. Co. of Boston, 12cv467-KI, 2012 WL 5363545, at *4 (D. Or. Oct. 30, 2012) (after considering the cases, the court determined that violation of 29 C.F.R. § 2560.503-1(j) cannot trigger penalties under section 1132 because the documents called for in the regulation do not fall within the list of documents listed by § 1132).

The Court finds the reasoning and analysis in Bielenberg persuasive. Plaintiffs may not seek 29 U.S.C. § 1132 penalties for violations of 29 C.F.R. § 2560.503-1(h)(2)(iii). Accordingly, as a matter of law, the Court GRANTS Defendants' motion

for summary judgment as to the third cause of action under 29 C.F.R. § 2560.503-1(h)(2)(iii).

**F.  Fourth Cause of Action - Violation of 29 C.F.R. § 2520.102-3(l) and 29 C.F.R. § 2520.102-2(a) against all Defendants**

Plaintiffs allege violations of the ERISA regulations, 29 C.F.R. §§ 2520.102-3(l) and 2520.102-2(a), against all Defendants[11] on the theory that the summary plan descriptions ("SPDs") did not appropriately disclose the fact that although prior years of service with Old Golden Eagle would be included for purposes of eligibility, vesting, early retirement and spousal benefits, they would not be included in the calculation of the pension benefit.[12]  They also argue that the SPDs were required to provide examples of benefit calculations specifically for participants who were former employees of Old Golden Eagle.  Lastly, they maintain that the SPDs should have explained that no transitioning employee would accrue retirement benefits for any work

_____

[11]The Plan administrator is responsible for publishing and distributing the SPDs. 29 U.S.C. § 1024(b)(1).  Defendants LMGI, LMIC and the Plan move for summary judgment arguing they are improper defendants.  Plaintiffs do not oppose.  LMGI, LMIC and the Plan are not the plan administrators.  Therefore, the Court GRANTS Defendants LMGI, LMIC and the Plan's motion for summary judgment as not being the proper Defendants under this cause of action.

[12]The Court notes that the fourth cause of action alleges only a violation of the implementing regulations concerning SPDs.  Then, in their moving brief, Plaintiffs' heading on the fourth cause of action states "Plaintiffs are Entitled to Equitable Relief under 502(a)(3) Because Defendants Breached Their Fiduciary Duty by Failing to Provide Compliant SPDs." (Dkt. No 213-1 at 34.)  The fourth cause of action in the third amended complaint does not allege breach of fiduciary duty or a cause of action under § 502(a)(3).  It does seek equitable relief in the form of reformation and surcharge.  Furthermore, the discussion that follows in Plaintiffs' brief on the fourth cause of action is based on violation of the statute, 29 U.S.C. § 1022, not the standard for breach of fiduciary duty. (Id. at 34-42.)  It is not clear what legal theory Plaintiffs seek relief.

If a claim is not properly alleged in the complaint, it is not properly before the Court. Pickern v. Pier 1 Imports, Inc., 457 F.3d 963, 968-69 (9th Cir. 2006) (affirming district court's ruling that complaint failed to comply with notice pleading requirements of Rule 8 because plaintiff raised issues in response to a motion for summary judgment that went beyond the allegations in the complaint); see also Wasco Prods., Inc. v. Southwall Techs., Inc., 435 F.3d 989, 992 (9th Cir. 2005) (plaintiff could not raise claim for the first time in opposition to a summary judgment motion if it was not alleged in the complaint).  Despite the shortcomings in the third amended complaint, Defendants do not object to these allegations.  Therefore, the Court will address the merits of Plaintiffs' allegations.

done prior to the date the takeover was consummated: October 1, 1997. Defendants argue that the SPDs were compliant.

The purpose of the SPDs is to provide a brief restatement of the plan. <u>Stahl v. Tony's Bldg. Materials, Inc.</u>, 875 F.2d 1404, 1409 (9th Cir. 1989). 29 U.S.C. § 1022(a) provides that the "summary plan description . . . shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). It also states that the SPDs must contain "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b).

The implementing regulation, 29 C.F.R. § 2520.102-3(1), also requires that SPDs contain a "statement clearly identifying circumstances which may result in disqualification, ineligibility, or denial, loss, forfeiture, suspension, offset, reduction, or recovery." 29 C.F.R. § 2520.102-3(l). 29 C.F.R. § 2520.102-2(a) further provides the "summary plan description shall be written in a manner calculated to be understood by the average plan participant and shall be sufficiently comprehensive to apprise the plan's participants and beneficiaries of their rights and obligations under the plan." 29 C.F.R. § 2520.102-2(a).

29 U.S.C. § 1022(b) has been interpreted to mean that the SPD "must be specific enough to enable the ordinary employee to sense when there is a danger that benefits could be lost or diminished." <u>Stahl</u>, 875 F.2d at 1408. An ERISA fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, even when a beneficiary has not specifically asked for the information. <u>Bins v. Exxon Co. U.S.A.</u>, 189 F.3d 929, 939 (9th Cir. 1999).

The 1998 and 2000 versions of the SPDs concerning vesting, calculation of benefits and years of credited service restated similar provisions from the Plan with no reference to Golden Eagle. It contained provisions concerning "eligibility," "vesting," "years of credited service," and how to calculate pension benefits. (AR 2351, 2352,

2354, 2356.) Under "years of credited service," the SPD stated that full time employees do not receive credit during any period "you were not an eligible employee." (AR 2356.) Moreover, the SPD stated that the "amount of the benefit depends on your years of service with the Company, and your pay." (AR 2351.)

In 2001, Defendant amended and restated the Liberty Mutual Retirement Benefit Plan. In 2001, the SPD stated,

> Past service credit with certain employers who either became part of the Liberty Mutual Group and adopted the Retirement Plan, or from whom you are directly hired into the Liberty Mutual Group, is credited for eligibility, vesting, early retirement and spouse's benefits purposes as defined below, subject to the Plan's break in service rules, for: . . . Golden Eagle Insurance Corporation employees who were employed as of October 1, 1997 for service with Golden Eagle Insurance Co.

(AR 2412.) The SPD also addressed pension benefits for acquired corporations with pe-existing pension plans and explained the circumstances where former employees of these latter acquired corporations may receive credit for service with prior employers for purposes of benefit accrual. (AR 2417-23.) In 2009, the word "solely" was added to the SPD and stated "[p]ast service credit . . .is credited *solely* for eligibility, vesting, early retirement and spouse's benefit purposes below . . . ." (AR 3150) (emphasis added).

The annual SPDs were mailed to Plan participants. The 2001 - 2008 SPDs state that past service credit with Old Golden Eagle "is credited for eligibility, vesting, early retirement, and spouse's benefits purposes." (AR 2412, 2444, 2476, 2510, 2545, 2582, 2619, 2658.) Defendants provided SPDs in 1998 and 2000-2008. (AR 2350-69 (1998); AR 2370-91 (2000); AR 2392-2420 (2001); AR 2425-55 (2002); AR 2456-88 (2003); AR 2489-2522 (2004); AR 2423-57 (2005); AR 2558-94 (2006); (AR 2595-2631 (2007); AR 2632-75 (2008).)

Defendants argue that they did not violate the disclosure statute because Plaintiffs could not be disqualified or ineligible for benefits they were never qualified or eligible for. Plaintiffs allege that the SPDs violate ERISA and its regulations by omitting that past service credit will not be credited for benefit accrual. Specifically,

they contend that the failure to state and omitting past service credit is considered a circumstance concerning disqualification and ineligibility and Defendants materially misled employees regarding past service credit by omitting that OGE employees were ineligible or disqualified for past service credit for pension benefit accrual.

Here, the Plan and the SPD provide similar language concerning eligibility and participation in the Plan. Both also do not affirmatively state that prior years of service at OGE do not count for benefit accrual purposes. No discrepancy or conflict exist between the Plan and the SPD.

Plaintiffs have not provided any legal authority that failure to include language that past service credit with a prior employer does not count towards benefit accrual purposes, when such benefits were not offered by the prior employer, constitutes disqualification or ineligibility and a violation of § 1022(a). The employees at OGE did not participate in a defined benefit pension plan. (AR 3066.) It was only when they began working at GEIC, on October 1, 1997, that they began receiving this added benefit to participate in a defined benefit pension plan. Therefore, the fact that they were not informed that their past service credit with OGE would not count towards benefit accrual under the defined benefit pension plan cannot constitute disqualification or ineligibility as contemplated under the statute. Accordingly, Plaintiffs have not demonstrated a violation of 29 U.S.C. § 1022(a) and 29 C.F.R. § 2520.102-3(l).

Plaintiffs cite to cases that are not supportive to the facts of their case. For example, Plaintiffs cite to Vasquez where the factual background is similar to the instant case but the legal issue is different. Vazquez v. Cargill, Inc., 509 F. Supp. 2d 903 (C.D. Cal. 2007). Vazquez concerned a discrepancy between the Plan document and the SPD. Id. In that case, the plaintiffs worked at the same oil facility for many years. Hunt-Wesson owned the factory for years until it was acquired by Cargill, Incorporated. Id. at 905. The plaintiffs contend that when Cargill acquired the facility and employed them, it promised they would receive pension benefits for their years of service for both Hunt-Wesson and Cargill. They also argued that the SPD stated that

they would receive pension benefits for their years of service at Hunt-Wesson. Id. Defendants argued that Plaintiffs were not entitled to past years of service at Hunt-Wesson because the Plan document expressly excluded prior years of service. Id. In looking at the discrepancy between the Plan document and the SPD, the court held that the SPD controlled and concluded that Plaintiffs were entitled to receive pension benefits for their years of service at Hunt-Wesson. Id. Unlike Vazquez, a conflict does not exist between the Plan and the SPD. In fact, the Plan and SPD both do not state that past service credit at OGE will not be credited for purposes of benefit accrual. Vazquez does not hold that such an omission is a violation of ERISA.

In Wilkins, it was common for plaintiff's employer to underreport his earning to the pension fund and the plaintiff alleged that he did not receive all the retirement benefits he was entitled to. Wilkins v. Mason Tenders Dist. Council Pension Fund, 445 F.3d 572, 584 (2d Cir. 2006) (administrator violated SPD disclosure requirement by omitting the policy to require participants to show some proof of covered employment as a condition to receiving benefits.). While ERISA does not prevent the Pension Fund from requiring Plaintiff to produce some proof that he performed work for which he did not receive credit before it awards him additional benefit, the court concluded that notice should have been included in the Fund's SPD. Id. The court held that "we hold that where it is the policy of a fund to require participants to produce records of covered employment in the event of employer underreporting, particularly where the fund has a demonstrated history of underreporting, the fund's failure to mention that policy in its SPD is a violation of 29 U.S.C. § 1022(b) and its regulations." Id. at 585. In Wilkins, the plaintiff was harmed by failing to be informed that he needed to provide proof of his employment, such as keeping his pay stubs.

Unlike Vazquez or Wilkins, Plaintiffs have not demonstrated they have been harmed by Defendants' failure to state they would not get past service credit for their time worked at OGE. Even if the SPD were faulty and the proper language was provided in the SPDs that limited their pension benefit accrual to when they started

work on October 1, 1997, Plaintiffs would still be in the same position as they are now. Under the current SPD, Plaintiffs did not receive pension benefits based on their years of service while at OGE. Even with a corrected SPD, Plaintiffs still would not receive pension benefits based on their years of service. They have not been denied benefits or been harmed based on the alleged faulty SPD.[13]

Plaintiffs also assert that Defendants violated 29 U.S.C. § 1024(b)(1)[14] by failing to provide participants with a Summary of Material Modifications ("SMM") or an amended SPD to notify plan participants of material changes or modifications within 210 days of the end of the plan year. Defendants do not dispute this fact and admit that no SMM, and within 210 days of the acquisition, no SPD were prepared for the addition of about 1,166 OGE employees added to the already existing 18,000 employees in the plan because it was not deemed material. (Dkt. No. 212-3, Connolly Decl. ¶¶ 36, 37; Dkt. No. 212-23, Abel Decl., Ex. 9, MacWilliams Depo. at 57:2-58:5.)

29 U.S.C. § 1024(b)(1) and 29 C.F.R. § 2520.104b-3 require that a material modification be furnished to each participant within 210 days after the close of the plan year in which the modification or change was adopted. The Ninth Circuit and many

---

[13]While the Ninth Circuit has not definitively held whether a plaintiff must demonstrate reliance on the SPD to his or her detriment, other courts have. See Grosz-Salomon v. Paul Revere Life Ins. Co., 237 F.3d 1154, 1162 (9th Cir. 2001); see also Senkier v. Hartford Life & Acc. Ins. Co., 948 F.2d 1050, 1051 (7th Cir. 1991) (must demonstrate reliance on SPD concerning conflict between SPD and Plan); Ruotolo v. Sherwin-William Co., 622 F.Supp. 546, 550 (D.C. Conn. 1985) (plaintiff is entitled to recover only if he can establish that he lost disability benefits as a result of his reliance on deficiencies in summary plan description); Govoni v. Bricklayers, Masons & Plasterers Int'l Union, 732 F.2d 250, 252-53 (1st Cir. 1984) (to procure relief under § 1022, the participant must "show some significant reliance upon, or possible prejudice flowing from, the faulty plan description.").

Defendants argue that Plaintiffs have not shown that they relied on the SPDs. Plaintiffs argue that reliance can be presumed or inferred based on the facts. Plaintiffs Rollason and Arwood stated that they did not rely on an SPD or Plan document. (Dkt. No. 212-25, Abel Decl., Ex. 11, Rollason Depo. at 100:21-24; Dkt. No. 212-16, Abel Decl., Ex. 2, Arwood Depo. at 66:23-67:3.) Arwood testified that her basis for believing she would get past service credit was based on the one employee meeting she attended on 54th Street. (Dkt. No. 212-16, Arwood Depo. at 66:23-67:3.) Based on the record, it does not appear that Plaintiffs have alleged or shown they relied on the alleged faulty SPD.

[14]The Court notes that this allegation was not alleged in the third amended complaint. (Dkt. No. 178.)

other circuits have not addressed what constitutes a "material modification" to justify the issuance of an SMM or amended SPD.

Here, Plaintiffs received the SPDs in 1998 and 2000 but the SPDs were based on the preexisting 1987 Plan. The 1987 and 2001 Plans have similar provisions concerning Definitions, Participation and Service, and Normal Retirement Benefits. (AR 3490, 2079.) In 2001, Article 2.6(d) was added to address the addition of OGE employees. (AR 2120.) It is not clear whether the requirements of 29 U.S.C. § 1024(b)(1) and 29 C.F.R. § 2520.104b-3 apply to the instant case. As to the existing Plan participants of Liberty Mutual, the addition of OGE to the Plan was probably not a material modification from the prior plan since it did not affect their benefits. As to the new participants, the OGE employees, it is not clear whether being added as a new participant is considered a "material modification" as contemplated under the statute. Accordingly, Plaintiffs' contention is not persuasive.

Plaintiffs also allege that the SPDs failed to provide examples of benefit calculations for participants who were former employees of OGE and cite to Layaou v. Xerox Corp., 238 F.3d 205 (2d Cir. 2001) where the Second Circuit held the SPD was inadequate because it failed to include that future benefits would be offset by appreciated value of their prior distributions and did not give any examples of calculating their benefits. Id. at 213. Defendants contend that Plaintiffs have overreached their interpretation of Layaou and cite to another Second Circuit case of McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 197 (2d Cir. 2007). In that case, the court stated we "do not consider the *dicta* in the Layaou opinion to signify that ERISA imposes a blanket requirement under which a Summary Plan Description invariably must describe the method of calculating an actuarial reduction or must use a clarifying example to illustrate how a benefit is actuarially reduced when a participant who has vested rights to receive a particular plan benefit chooses to receive payments before reaching normal retirement age." Id. at 197. Layaou concerned a situation where calculating benefit was important because the benefits were reduced based on

the work history of the employee. Here, there are no issues as to the different methods of calculating benefits. There was no reduction in pension benefits that needed to be calculated to provide employees with notice. In fact, Plaintiffs were provided with added pension benefits which began on the date of the changeover on October 1, 1997. Therefore, Plaintiffs' argument that the SPD must describe the method of benefit calculation is without merit.

Third, Plaintiffs assert the SPDs "should have explained that no transitioning employee would accrue retirement benefits for any work done prior to the date the takeover was consummated: October 1, 1997." (Dkt. No. 213 at 34.) Defendants maintain that such information would decrease clarity and simplicity because October 1, 1997 was not the beginning date for every transitioning OGE employee. For example, Moyle worked at Liberty Mutual prior to working at OGE. (Dkt. No. 232-27, Abel Decl., Ex. 20, Moyle Depo. at 22:14-23:1.) Therefore, the"break in service" rules applied to Moyle. (AR 2352-53.)

The date of October 1, 1997 and the mention of OGE first appeared in the 2001 SPD. There, it specifically stated that employees employed as of October 1, 1997 would receive past service credit for "eligibility, vesting, early retirement and spouse's benefits purposes." (AR 2412.) This provision provides similar language as the Plan and provides sufficient notice that past service credit would be limited to certain circumstances.

As to the fourth cause of action, the Court GRANTS Defendants' motion for summary judgment and DENIES Plaintiffs' motion for summary judgment.

**G.     Plaintiffs' Motion for Summary Adjudication on Defendants' Affirmative Defense**

In their motion for partial summary judgment, Plaintiffs move for summary judgment on Defendants' Third Affirmative Defense regarding reliance; Seventeenth and Forty Third Affirmative Defenses arguing that Plaintiffs cannot obtain equitable relief of surcharge, restitution and reformation. Since the Court GRANTS Defendants'

motion for summary judgment and DENIES Plaintiffs' motion for summary judgment on the second and fourth cause of action, the Court denies as MOOT Plaintiffs' motion for summary judgment on Defendants' third, seventeenth and forty third affirmative defenses.

## H.    Evidentiary Objections

Plaintiffs filed objections to Defendants' evidence in opposition to Plaintiffs' motion for summary judgment. (Dkt. No 239-1.) Plaintiffs also filed objections to Defendants' evidence in support of Plaintiffs' opposition to Defendants' motion for summary judgment. (Dkt. No. 233-1.)  The Court notes Plaintiffs' objections. To the extent that the evidence is proper under the Federal Rules of Evidence, the Court considered the evidence.  To the extent that the evidence is not proper, the Court did not consider them.

## I.    Request for Judicial Notice

Plaintiffs filed a request for judicial notice as to three documents: Ex. 71, Reporter's Transcript of Proceedings, Insurance Commissioner of the State of California vs. Golden Eagle Insurance Company, et al. (CON004711-4889). Ex. 72, Reporter's Transcript of Proceedings, Geoff Moyle v. Golden Eagle Ins. Corp., et al. (Case No. 05CV0507-DMS) dated Friday, November 4, 2005; Ex. 74, Order Approving Sale of Golden Eagle To Liberty Mutual Insurance Company After Evidentiary Hearing and Waiver of Insurance Code Sec. 1012 Hearing Rights, Insurance Commissioner of the State of California vs. Golden Eagle Insurance Company, et al. (CON003741-3743). (Dkt. NO. 233-3.) No opposition has been filed. The Court finds these documents appropriate for judicial notice and GRANTS Plaintiffs' request for judicial notice.

/ / / /

/ / / /

/ / / /

/ / / /

**Conclusion**

Based on the above, the Court GRANTS Defendants' motion for summary judgment on all causes of action in the third amended complaint; and DENIES Plaintiffs' motion for summary judgment as to the second and fourth causes of action.

IT IS SO ORDERED.


DATED: July 1, 2013

HON. GONZALO P. CURIEL
United States District Judge