1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

GEOFFREY MOYLE, an individual;
PAULINE ARWOOD, an individual;
THOMAS ROLLASON, an
individual; and JEANNIE SANDERS,
an individual, on behalf of themselves,

CASE NO.10cv2179-GPC(MDD)

11
12

**NOTICE OF TENTATIVE RULING
ON DEFENDANT'S
SUPPLEMENTAL MOTION FOR
SUMMARY JUDGMENT**

13

Plaintiff,

14

vs.

15
16
17
18
19
20

LIBERTY MUTUAL RETIREMENT
BENEFIT PLAN; LIBERTY
MUTUAL RETIREMENT PLAN
RETIREMENT BOARD; LIBERTY
MUTUAL INSURANCE GROUP,
INC., a Massachusetts company;
LIBERTY MUTUAL INSURANCE
COMPANY, a Massachusetts
company,

21

Defendants.

22
23
24
25
26
27

Before the Court is Defendant's supplemental motion for summary judgment. (Dkt. No. 296.)  The motion is fully briefed and a hearing is set on calendar for December 16, 2016.  After a review of the briefs, supporting documentation and the applicable law, the Court issues the following tentative ruling and outstanding issues in advance of Friday's hearing.

**Procedural Background**

28

Prior to the filing of the instant case, on March 14, 2005, Plaintiff Geoffrey

Moyle ("Moyle") filed a complaint in this Court against Golden Eagle Insurance Corporation ("Golden Eagle") and Liberty Mutual Insurance Company ("Liberty Mutual").[1] (Case No. 05cv507-DMS(WMC), Dkt. No. 1). On August 23, 2005, Moyle filed a first amended complaint adding Defendant Liberty Mutual Retirement Benefit Plan ("Plan"). (Id., Dkt. No. 12.)  The first amended complaint sought causes of action for determination of his future rights to benefits under the plan pursuant to 29 U.S.C. § 1132(a)(1)(B), and breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(3). (Id.) On November 14, 2005, District Judge Dana Sabraw granted Defendants' motion to dismiss for failure to exhaust administrative remedies.   (Id., Dkt. No. 32.)  Plaintiff appealed and on August 23, 2007, the Ninth Circuit affirmed the district court's dismissal requiring Plaintiff to exhaust.  Moyle v. Golden Eagle Ins. Corp., 239 Fed. App'x 362 (9th Cir. 2007).

On January 26, 2008, Moyle filed a claim with Liberty Mutual.  (Administrative Record ("AR") 783-86.)  On July 18, 2008, Plaintiff Thomas Rollason ("Rollason")

---

[1] Prior to the case filed in 2005, Plaintiff Moyle also filed two complaints in San Diego Superior Court that were removed to this Court.

On November 5, 2002, Plaintiff Moyle filed an action against GEIC, LMIC and John Davis in San Diego Superior Court alleging eleven causes of action related to employment and pension benefits due under the Plan. (Case No. 02cv2468-H(JAH).) On December 16, 2002, the case was removed to this Court. (Id., Dkt. No. 1.) On December 23, 2002, Defendants filed a motion for partial dismissal of Plaintiff's complaint arguing that the state law claims were preempted by ERISA as to the past service credit under the Plan. (Id., Dkt. Nos. 7, 10.) Subsequently, Plaintiff filed a notice of voluntary dismissal of action without prejudice. (Id., Dkt. No. 14.)

On February 13, 2003, Plaintiff Moyle filed an action against Defendants GEIC, LMIC and John Davis in San Diego Superior Court alleging ten causes of action related to employment and past service credit under the Plan. (Case No. 03cv509-IEG(JAH).)  On March 13, 2003, Defendants removed the action to this Court. (Id., Dkt. No. 1.)  On March 20, 2003, Golden Eagle and Liberty Mutual filed motions to dismiss the complaint. (Id., Dkt. Nos. 5, 8.)  On April 3, 2003, Plaintiff filed a motion to remand. (Id., Dkt. No. 13.)  On July 17, 2003, Judge Irma E. Gonzalez, United States District Judge, issued an order denying Plaintiff's motion to remand and granted in part Golden Eagle and Liberty Mutual's motions to dismiss. (Id., Dkt. No. 23.) The Court concluded that the claims relating to the question of past service credit under the Benefit Plan were preempted by ERISA. (Id.)  Accordingly, the Court dismissed Plaintiff's state law claims without prejudice and granted leave to amend the complaint to allege claims under ERISA. (Id.)  On August 5, 2003, the Court granted Plaintiff's ex parte application to remand remaining causes of action to state court. (Id., Dkt. No. 25.)

filed a claim. (AR 639-43.) On August 21, 2008, Plaintiff Pauline Arwood ("Arwood") filed a claim. (AR 1016-20.) Lastly, on December 4, 2008, Plaintiff Jeannie Sanders ("Sanders") filed her claim. (AR 1511-16.)

On April 23, 2008, Moyle's claim and subsequently Rollason, Arwood and Sanders' claims for benefits were initially denied by John R. St. Martin, Manager of Pension and Savings, Benefits at Liberty Mutual. (AR 712-718 ("Moyle"); 590-96 ("Rollason"); 991-97 ("Arwood"); 1497-1503 ("Sanders").)

On June 20, 2008, Plaintiffs sought review of the initial decision and all four claims were consolidated for purposes of the administrative appeal. (AR 426.) On October 23, 2009, Plaintiffs' appeals were denied by Helen Sayles, Senior Vice President of Human Resources & Administration, on behalf of the Retirement Board. (AR 4365-4414.)

After having exhausted administrative remedies, on October 19, 2010, Plaintiffs Moyle, Arwood, Rollason, and Sanders filed the instant class action complaint against Defendants Liberty Mutual Retirement Benefit Plan ("Plan"); Liberty Mutual Retirement Benefit Plan Retirement Board ("Board"); Liberty Mutual Insurance Group, Inc. ("LMGI"); and Liberty Mutual Insurance Company ("Liberty Mutual"). (Dkt. No. 1.) On October 21, 2010, Plaintiffs filed a first amended complaint. (Dkt. No. 3.) On April 25, 2011, District Judge Dana Sabraw denied Defendants' motion to dismiss the second and third claims; granted in part motion to dismiss improperly named Defendants; denied Defendants' motion to dismiss the first claim as to Plaintiff Moyle and granted Defendants' motion to strike demand for trial by jury. (Dkt. No. 18.) On September 14, 2011, the Court granted Plaintiffs' motion for leave to file a second amended complaint. (Dkt. No. 41.) On September 20, 2011, Plaintiffs filed a second amended complaint. (Dkt. No. 47.)

After briefing by the parties on Plaintiffs' motion for class certification, on April 10, 2012, District Judge Sabraw certified the class as to the first, second, and fourth causes of action. (Dkt. No. 113 at 19.)

On April 24, 2012, Defendants filed a petition for permission to appeal the Court's order granting class certification to the Ninth Circuit. (Dkt. No. 120.) In the meantime, the Court denied Defendants' motion for reconsideration and granted their motion for stay pending appeal. (Dkt. No. 126.) On July 11, 2012, the Ninth Circuit denied Defendants' petition for permission to appeal. (Dkt. No. 128.)

On October 12, 2012, the case was transferred to the undersigned judge. (Dkt. No. 174.) On October 17, 2012, Plaintiffs filed a third amended complaint against Defendants Liberty Mutual Retirement Benefit Plan ("Plan"); Liberty Mutual Retirement Benefit Plan Retirement Board ("Board"), the Plan administrator; Liberty Mutual Insurance Group, Inc. ("LMGI"), the Plan sponsor; and Liberty Mutual Insurance Company ("Liberty Mutual"), the entity that purchased Old Golden Eagle, and established Golden Eagle, a subsidiary of LMGI. (Dkt. No. 178.) The third amended complaint alleges four causes of action: payment of benefits under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B); equitable relief under 29 U.S.C. § 1132(a)(3); violation of 29 C.F.R. § 2560.503-1(h)(2)(i); and violation of 29 C.F.R. § 2520.102-3(l) and 29 C.F.R. § 2520.102-2(a).     On January 3, 2013, Defendants filed a motion for summary judgment on all four causes of action while Plaintiffs filed a motion for partial summary judgment on the second and fourth causes of action and on certain of Defendants' affirmative defenses. (Dkt. Nos. 212, 213.) On July 1, 2013, the Court granted Defendants' motion for summary judgment on all four causes of action in the third amended complaint, and denied Plaintiffs' motion for summary judgment. (Dkt. No. 252.) Plaintiffs appealed the Court's ruling on the first, second and fourth causes of action while Defendants cross-appealed that the suit was time-barred and that class certification was not proper. Moyle v. Liberty Mutual Retirement Benefit Plan, 823 F.3d 948, 952 (9th Cir. 2016). On May 20, 2016, the Ninth Circuit affirmed the district court's ruling on summary judgment on the first and fourth causes of action and reversed the district court's ruling on the second cause of action for equitable relief under 29 U.S.C. § 1132(a)(3). Id. The Ninth Circuit also found that class certification

was proper.  Id.  The court concluded there was a factual dispute whether "Liberty Mutual breached its fiduciary duty by failing to inform Golden Eagle employees that past service credit for the purpose of benefit accrual did not include the period prior to October 1, 1997, when they were first employed by Golden Eagle."  Id. at 962.  The Ninth Circuit remanded "for determinations of fact and equitable relief in the form of reformation and surcharge."  Id. at 965.  The Ninth Circuit also declined to consider "Liberty Mutual's argument that the statute of repose in 29 U.S.C. § 1113 acts to bar some of Appellants' claims under 29 U.S.C. § 1132(a)(3).  The district court may consider such arguments on remand."  Id. at 959 n. 5.

## Factual Background

The Court recites the facts from its prior order on summary judgment and from the Ninth Circuit's opinion.  Plaintiffs Moyle, Arwood, Rollason, and Sanders are four former employees of Golden Eagle Insurance Company ("Old Golden Eagle" or "OGE").  On January 31, 1997, the Superior Court of San Diego County placed OGE into conservatorship proceedings under the supervision of the California Insurance Commissioner.  Liberty Mutual took an interest in acquiring OGE and was in a bidding war with American International Group, Inc. ("AIG") for the acquisition of OGE.  In order to increase its chances to win the bidding war, Liberty Mutual submitted an enhanced bid which included improved employee benefits such as a retirement plan, which was not offered by OGE.  The increased employee benefits were used to retain OGE employees and to increase the likelihood of court approval of its bid.

On May 29, 1997, the Conservation Court held an evidentiary hearing to evaluate Liberty Mutual's and AIG's competing bids.  One of Liberty Mutual's exhibit expressly stated that the value that it added was to "increase employee benefits (credit for prior year's of service and participation in the benefits plan)."  Liberty Mutual also told the Conservation Court that OGE employees would have the rights that Liberty Mutual employees had with "X years of service."  This representation was later repeatedly made to OGE employees.

On May 30, 1997, the Conservation Court approved the sale and transfer of certain OGE assets and liabilities to Liberty Mutual. The approval was memorialized in a Rehabilitation Agreement drafted by Liberty Mutual on June 18, 1997. (AR 3013.) Article 5.1(c) of the Rehabilitation Agreement states:

> As to the employees of [OGE] who become employees of New Eagle or another Subsidiary of LMIC by reason of the transactions contemplated by this Agreement . . . [s]uch employees shall be provided benefits which are at least comparable to those offered by [OGE] and shall be credited for all prior years of service with [OGE] . . . for purposes of eligibility, vesting and early retirement subsidies under the LMIC Retirement Benefit Plan . . . provided, that such period of service with [OGE] will not be credited for purposes of benefits accruals under the LMIC Thrift Incentive Plan and Retirement Benefit Plan . . . .

The Rehabilitation Agreement was never provided to OGE employees and the Conservator was not required to send notification of the agreement to OGE employees. The Rehabilitation Agreement is the only document that expressly states that past service credit with OGE would not be credited for purposes of benefits accrual. This language does not appear elsewhere during the transition period or in any communications with OGE employees.

As former employees of OGE, Plaintiffs had the opportunity to participate in a 401(k) Plan and profit-sharing plan. OGE did not offer a traditional defined benefit pension plan to its employees. OGE did not contribute any assets to the Plan at issue in this case and Plaintiffs did not make any contributions to the Plan.

During August 1997, Liberty Mutual hosted a series of benefits enrollment meetings so that OGE employees could obtain information about the transition. The presenters used a "Facilitator Guide" developed by Liberty Mutual as a script to convey the terms and conditions of employee benefits. The Facilitator Guide did not mention that past service credit with OGE would not be credited for benefits accrual. OGE employees, including plaintiffs, testified that after attending the meetings, it was their understanding that past service credit with OGE would apply to the retirement plan and that is why everybody stayed with the company. When specifically asked about prior years service at these meetings, they were told past years of service with OGE would

count.  During the enrollment period, the operative 1987 Plan and Summary Plan Descriptions ("SPD") were available to OGE employees; but the 1987 Plan and the 1996 SPD did not address past service credit.

On October 1, 1997, pursuant to the Rehabilitation Agreement with the State-appointed conservator, Liberty Mutual purchased certain assets of OGE and formed and incorporated a new entity, Golden Eagle Insurance Corporation, ("Golden Eagle"), as a subsidiary of Liberty Mutual.

The Plan or the SPD was not amended to address past service credit until 2001 where the Plan and the 2002 SPD specifically addressed OGE employees and that past service credit for OGE employees would be "credited for eligibility, vesting, early retirement, and spouse's benefits . . . ."  In 2009, the word "solely" was added.

From 2002 and 2006, Liberty Mutual Retirement Benefit Plan Retirement Board, the Retirement Plan's administrator, denied the claims of a dozen former OGE employees who sought past service credit, including the named plaintiffs in this case. Liberty Mutual explained that it had "informed former Golden Eagle employees about when past service credit applied and therefore, former Golden Eagle employees should have known when past service credit did not apply."  Moyle, 823 F.3d at 955.

On October 19, 2010, Plaintiffs filed the class action complaint in this Court. (Dkt. No. 1.)  Defendants move for summary judgment arguing that the remaining cause of action for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) is barred by the statue of repose and statute of limitations under 29 U.S.C. § 1113.  They also argue that the equitable relief of reformation and surcharge under 29 U.S.C. § 1132(a)(3) are not available as remedies to Plaintiffs.

**Discussion**

**A.    Statute of Repose and Statute of Limitations under 29 U.S.C. § 1113**

Defendants argue that the claim for breach of fiduciary duty is barred by the statute of repose and the statute of limitations under 29 U.S.C. § 1113.  Plaintiffs respond that their claim is not governed by the statute of repose because their claim

falls under the "fraud or concealment" exception that applies to both the statute of

limitations and statue of repose under 29 U.S.C. § 1113, and is therefore, timely.

ERISA's statute of repose and statute of limitations provide:

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.  29 U.S.C. § 1113(1) is considered the statute of repose while 29

U.S.C. § 1113(2) is considered the statute of limitations.  See Landwehr v. DuPree, 72

F.3d 726, 733 (9th Cir. 1995) (distinguishing between three year statute of limitations

with six year statue of repose); Bruno v. Time Warner Pension Plan, 534 F. App'x 654,

655 (9th Cir. 2013) (noting repose period to be provided in § 1113(1).)  While statutes

of limitations and statutes of repose both limit the "temporal extent or duration of

liability for tortious acts" and can bar a plaintiff's case, the "time periods are measured

from different points, and the statutes seek to attain different purposes and objectives."

CTS Corp. v. Waldburger, 134 S. Ct. 2175, 2182 (2014).  Ordinarily, a statute of

limitations creates "a time limit for suing in a civil case, based on the date when the

claim accrued" while a statute of repose "puts an outer limit on the right to bring a civil

action. That limit is measured not from the date on which the claim accrues but instead

from the date of the last culpable act or omission of the defendant." Id.  "The statute

of repose limit is 'not related to the accrual of any cause of action; the injury need not

have occurred, much less have been discovered.'" Id. (citation omitted).  This reflects

a legislative decision that there should be a specific time where a defendant should be

free from liability. Id. at 2183.  Therefore, a statute of repose is not subject to equitable

1  tolling.  Id.

2  **B.      Fraud or Concealment Exception**

3          Defendants contend that the breach of fiduciary claim is barred by the six year

4  statute of repose under § 1113(1) and three year statute of limitations under § 1113(2)

5  and further argue that the "fraud or concealment" exception of § 1113 does not apply

6  because the facts in the case do not support an allegation of "fraud or concealment."

7  Plaintiffs respond first by arguing that the "fraud or concealment" tolling exception

8  applies to their claim, and alternatively, even if the "fraud or concealment" exception

9  does not apply, their claims are timely because the breach was not completed until

10  Liberty Mutual issued its final denial in 2009, the latest date Liberty Mutual could have

11  cure the violation or breach.[2]

12          Ziegler presented a two step analysis in analyzing the statute of limitation under

13  § 1113.  The two step analysis asks 1) "when did the alleged 'breach or violation'

14  occur" and then "when did [the defendant] have 'actual knowledge' of the breach or

15  violation?"  Ziegler v.  Connecticut Gen. Life Ins. Co., 916 F.2d 548, 550 (1990).  On

16  the first step, to determine when the alleged breach or violation occurred, "we must

17  first isolate and define the underlying violation upon which . . . [plaintiff's] claim is

18  founded."  Id. at 550-51.  On this first step, the court need not consider when the

19  plaintiffs suffered actual harm except it may shed light on the second question of when

20  a plaintiff gains "actual knowledge" injured.  Id.  at 551-52.  In Ziegler, the beach

21  occurred upon the contract's creation, not at the time of termination or at the time of

22  injury.  Id. at 551.

23          Defendants argue that the "last action which constituted a part of the breach or

24  violation" was when Plaintiffs accepted employment with New Golden Eagle on

25

26          [2]Plaintiffs analyze, in some depth, whether the § 1113 is a statute of repose and/or statute of limitations.  (Dkt. No. 298 at 6-8.)  Based on their statutory construction analysis, Plaintiffs contend that § 1113 is not a statute of repose and that

27  the fraud or concealment exception applies to both § 1113(1) and § 1113(2).  Despite their analysis, Defendants do not dispute that the "fraud or concealment exception"

28  applies to the statute of limitations under § 1113(2) and tolls the limitations period until after Plaintiffs' discovery of the breach or violation.

October 1, 1997 which was when they could have avoided the detriment of giving up the opportunity to seek other employment. Plaintiffs do not address this argument. Therefore, it appears that Plaintiffs concede that October 1, 1997 is the date of the alleged breach.

The "fraud or concealment" exception of 29 U.S.C. § 1113 tolls the statute of limitations only "until the plaintiff in the exercise of reasonable diligence discovered or should have discovered the alleged fraud or concealment." DeFazio v. Hollister, Inc., 854 F. Supp. 2d 770, 783 (E.D. Cal. 2012). "Plaintiffs bear the burden of proving 'fraud or concealment' under 29 U.S.C. § 1113." Id. at 782 (quoting Harris v. Koenig, 815 F. Supp. 2d 12, 20 (D.D.C. 2011)).

Under 29 U.S.C. § 1113, the "fraud or concealment" exception applies when an ERISA fiduciary either "made knowingly false misrepresentations with the intent to defraud the plaintiffs" or took "affirmative steps . . . to conceal any alleged fiduciary breaches." Barker v. American Mobil Power Corp., 64 F.3d 1397, 1401 (9th Cir. 1995). In Barker, the fact that funds were transferred from the Plan to the parent company, replaced with promissory notes executed by the parent company and never repaid do not establish fraud or false misrepresentations with the intent to defraud the plaintiffs. Id. at 1401. The court explained there was no specific evidence that the defendants "made knowingly false misrepresentations with the intent to defraud" or evidence that defendants took affirmative steps to conceal any alleged fiduciary breaches. Id. Passive concealment is not sufficient to toll the statute of limitations unless the defendant has a fiduciary duty to disclose material information. Thorman v. Am. Seafoods Co., 421 F.3d 1090, 1096 (9th Cir. 2005).

Under § 1113, "'[f]raud' involves false statements or misrepresentations, made with knowledge of their falsity and with the intent to wrongfully deprive the plaintiff." Zelhofer v. Metro. Life Ins. Co., No. 16cv991 TLN AC, 2016 WL 4126724, at *4 (E.D. Cal. Aug. 3, 2016) (citing Barker v. American Mobil Power Corp., 64 F.3d 1397, 1401 (9th Cir. 1995). "'Concealment' requires active steps to prevent plaintiff from

discovering the violation." Id.; see Kurz v. Philadelphia Elec. Co., 96 F.3d 1544, 1552 (3d Cir. 1996) ("The relevant question is . . . not whether the complaint 'sounds in concealment,' but rather whether there is evidence that the defendant took affirmative steps to hide its breach of fiduciary duty.").

Defendants argue that Plaintiffs' claim is based on the failure of Defendants to provide complete information that they would not get benefit accrual credit for OGE years of employment which constitutes passive concealment and does not rise to the level of "fraud or concealment" as defined under § 1113.   Plaintiffs dispute Defendant's characterization of their claims; instead they claim that Defendants misrepresented the significance of facts and concealed its "intent not to give [past service credit] for accrual, burying specific exculpatory language in transactional documents while omitting it in employee communications." (Dkt. No. 233 at 42[3].)

After the approval of Liberty Mutual's bid with the Conservation Court, the Rehabilitation Agreement, dated June 18, 1997, is the only document explicitly stating past service credit would count for purposes of eligibility, vesting, and early retirement subsidies but past service credit with OGE would not be credited for the purpose of benefit accrual. Moyle, 823 F.3d at 954. A copy of the Rehabilitation Agreement was never provided to Golden Eagle employees and the statement, concerning PSC for benefit accrual, was not communicated with Golden Eagle employees or appear anywhere else during the transition. Id. It was in June 1997 that Liberty Mutual expressly indicated its intention to not provide past service credit for benefit accrual to OGE employee.   However, that intention was never communicated to OGE employees.

In August 1997, Liberty Mutual hosted a series of benefit enrollment meetings so OGE employees could obtain information about the transition to Liberty Mutual. (Dkt. No. 232-1, Ds' Response to Ps' SSUF No. 99.) The purpose of the meetings was to welcome the employees and provide participants with all the important benefit

_____

[3]Page numbers are based on the CM/ECF pagination.

information related to the Plan in a strong, positive attitude.  (<u>Id.</u>, No. 100.)  The meetings were to provide all the "necessary data available" to employees to "make the decisions they need as employees of Liberty."  (<u>Id.</u>, No. 104.)  Liberty prepared a "Facilitator Guide" which the presenters used, as a script, to control the manner and content of the information provided.  (<u>Id.</u>, Nos. 105, 106.)  The Facilitator Guide provided a consistent and accurate message about the terms and conditions of the benefits available under the Plan.  (<u>Id.</u>, No. 107.)  Retirement benefits were a small portion of the benefit enrollment meetings and the Facilitator Guide did not define "benefit accrual."  (<u>Id.</u>, No. 113.)  From these meetings, OGE employees had the understanding that they would receive past service credit with OGE for all purposes.

George Kaerth was the Senior Vice President of Underwriting for Old Golden Eagle from 1991-1997 and during the transition, he was Executive Vice President of Underwriting and Marketing.  (Dkt. No. 214-18, Butler Decl., Ex. 39, Kearth Depo. at 16:5-25; 17:14-22.)  During the bidding process, Kaerth interacted with two members of the due diligence team from Liberty Mutual, David Long, who is now Liberty's CEO, and Timothy Sweeney, and on several occasions, around February - June 1997, Kaerth asked them whether years of service credit would be credited for purposes of benefit accrual and they responded that the issue was under consideration and still being negotiated.  (Dkt. No. 214-27, Butler Decl. Ex. 48, Kaerth Decl. ¶ 3; Dkt. No. 214-18, Butler Decl., Ex. 39, Kaerth Depo. at 25:6-19.)

Later in July 1997, Kaerth was informed the Rehabilitation Agreement was finalized but he never got a copy of it and was informed that employees would not be receiving a copy.  (Dkt. No. 214-27, Butler Decl. Ex. 48, Kaerth Decl. ¶ 4.)  During the transition period to Liberty Mutual, from July - September 1997, Kaerth asked Long and Sweeney again whether years of service would be credited for purposes of benefit accrual under the retirement plan and was again told it was under consideration and still being negotiated.  (<u>Id.</u> ¶ 5.)  During the same time, he was asked on a dozen occasions by former OGE employees whether their years of service with OGE would

count under the retirement plan. (Id.) The OGE employees informed Kaerth that they, as well as other OGE employees, understood past years of service would be credited. (Id.) Kaerth told Long and Sweeney that former OGE employees told him that they believed that years of service would be credited for all purposes and told Long and Sweeney that they needed to promptly clarify with employees whether years of service would be applied for all purposes including the calculation of accrued benefits. (Id.) Long and Sweeney told Kaerth that the issue was being negotiated and still under consideration. (Id.) Liberty Mutual also indicated they would address these questions and clarify whether years of service with OGE would be credited for all purposes. (Id.) But Kaerth was not aware of any meetings, actions taken or written communications that clarified this issue. (Id. ¶ 6.) Kaerth does not recall attending the meetings in August or September 1997 but he had discussions with employees who attended and they believed all benefits would be calculated based on their date of hire with OGE. (Id. ¶ 7.)

In October 1997, Kaerth was informed by Liberty Mutual that the transition period had ended and was informed at this time that his years of service with OGE would not be credited for purposes of benefit accrual under the plan. (Id. ¶ 8.) As a result, he left employment in February 1998 because he did not receive credit for his past years of service. (Id.) Between October 1997 and February 1998, about a dozen former OGE employees asked him about whether their years of service would apply under the plan, and after these discussions, Kaerth promptly informed Liberty Mutual that former OGE employee had informed him that they believed their years of service would be credited for all purposes. (Id. ¶ 9.) He informed Long and Sweeney that they needed to immediately tell former OGE employees that years of service would not be credited for the purpose of benefit accrual under the plan and they told him that they would address the problem. (Id.) However, he is unaware of Liberty Mutual responding to these question or clarifying the issue. (Id.)

Helen Sayles, the Senior Vice President of Human Resources & Administration,

[10cv2179-GPC(MDD)]

1    on behalf of the Retirement Board, was involved in preparing the SPDs before they

2    were finalized and testified that Liberty did not identify items that the employees were

3    not entitled to in the plan documents.  (Dkt. No. 214-19, Ex. 40, Sayles Depo. at

4    197:19-24; 200:18-22.)  Golden Eagle was not referenced in an SPD until 2001.  (Dkt.

5    No. 214-14, Butler Decl., Ex. 35, Connolly Depo. at 223:19-224:1.)  Defendants did

6    not update the SPD to include Golden Eagle until the transition of all the acquisitions

7    were complete in 2000, although they could have included Golden Eagle in 1998 after

8    it was purchased.  (Dkt. No. 214-19, Ex. 40, Sayles Depo. at 198:4-199:1.)

9          The 2001 SPD referenced Golden Eagle for the first time and stated that "[p]ast

10   service credit with certain employers who either became part of the Liberty Mutual

11   Group and adopted the Retirement Plan, or from whom you are directly hired into the

12   Liberty Mutual Group, is credited for eligibility, vesting, early retirement and spouse's

13   benefits purposes as defined below . . . ." (Dkt. No. 213-10, Butler Decl., Ex. 7 at 22.)

14   Then in 2009, the SPD language concerning past service credit changed to add the

15   word "solely" and stated "[p]ast service credit with certain employers who either

16   became Participating Employers, or from whom you are directly hired by or into a

17   Participating Employer, is credited solely for eligibility, vesting, early retirement and

18   spouse's benefits purposes as defined below . . . ." (Dkt. No. 213-18, Buter Decl., Ex.

19   15 at 28.)

20         Here, the Court concludes that Plaintiffs have presented facts that Liberty Mutual

21   engaged in acts to hinder the discovery of the breach of fiduciary duty or breached its

22   duty by making a knowing misrepresentation concerning past service credit and

23   intentionally took steps to conceal information about whether past service credit with

24   OGE would count towards benefits accrual.

25         In Evanson, the district court held that the alleged concealment of the Watson

26   Wyatt letters  is evidence that Defendants "took affirmative steps to hide [their] breach

27   of fiduciary duty" and satisfied Rule 12(b)(6).  Evanson v. Price, No. 06cv795-GEB-

28   KJM, 2006 WL 2829789, at *5 (E.D. Cal. Sept. 29, 2006).  In the case, the defendants

adopted a new compensation plan for executives designed by a third party plan administrator obtained. Id. at *1. Defendants then retained an independent trustee, Watson Wyatt, to evaluate the fairness of this plan due to their conflict of interest. Id. at *2. In letters, Watson Wyatt recommended that Defendants reconsider adopting the new compensation plan concluding that the plan exceeded market compensation rates by about thirty to fifty percent. Id. Defendants concealed the letters by placing them in a file in an office that was inaccessible to others and by keeping secret the existence and contents of the letters. Id. Plaintiff learned of the letters ten years letter when he discovered them among one of the defendant's files. Id. The court noted that the alleged concealment of the letters is evidence that the defendants took affirmative steps to hide their breach of fiduciary duty. Id. at *5.

Similarly, in this case, at least as of June 18, 1997, when the Rehabilitation Agreement was finalized, it was clear that Liberty Mutual would not be providing past service credit to employees of OGE for purposes of benefits accrual. The Conservator was not mandated to provide copies of the Rehabilitation Agreement to OGE employees and Liberty Mutual did not provide the Agreement to OGE employees. Defendants were on notice that OGE employees were questioning whether past service credit would apply to benefits accrual when Kaerth questioned Long and Sweeney about the issue and informed them that OGE employees believed their years of service would be credited for purposes of benefit accrual. Despite this knowledge and their response that they would address and clarify the issue, Defendants failed to do so and kept that information secret during the transition process and after. Moreover, Long and Sweeney, falsely represented, after the Rehabilitation Agreement was approved, that the issue of past service credit was still under consideration and being negotiated, when in fact it was not. The Rehabilitation Agreement is the sole document evidencing Defendants' intent and decision not to provide past service credit during the transition period. The facts presented by Plaintiff demonstrate an affirmative misrepresentation and affirmative concealment by Liberty Mutual to hide its policy on past service credit

despite numerous inquiries made by OGE employees.  Thus, the Court concludes that Plaintiffs have sufficiently provided evidence that the "fraud or concealment" tolling exception applies to this case.

### 1.    Discovery of Breach or Violation

The "fraud or concealment" exception to the statute of limitations begins to runs "no later than six years after the date of discovery of such breach or violation."  29 U.S.C. § 1113(2).  The analysis to determine the "date of discovery" is the same as "actual knowledge."  See Ziegler v. Connecticut Gen. Life Ins. Co., 916 F.2d 548, 552 n.2 (9th Cir. 1990) (noting that tolling provision in cases of fraud or concealment complements the requirement "to ascertain when an ERISA plaintiff gained actual knowledge of a breach of violation"); Spragg v. Pacific Telesis Grp., 1999 WL 51489, at *4 n. 1 (9th Cir. 1999) (unpublished) (even if plaintiff had alleged fraud or concealment, statute of limitations would still have run after he obtained actual knowledge of the alleged breaches of duty).  Actual knowledge is a factual inquiry. Ziegler, 916 F.2d at 552.

"We stress that an ERISA plaintiff's cause of action cannot accrue and the statute of limitations cannot begin to run until the plaintiff has actual knowledge of the breach regardless of when the breach actually occurred."  Ziegler v. Connecticut Gen. Life Ins., Co., 916 F.2d 548, 552 (9th Cir. 1990).  In Ziegler, analyzing "actual knowledge" based on the three year statute of limitations, the Ninth Circuit held that the plaintiffs had "actual knowledge" of the alleged ERISA violation at least as of July 1984 when the defendant informed the plaintiffs, when they inquired of the defendant of its desire to terminate its investment agreement, that the "market value" option, as provided in the investment agreement, would result in its retention of a substantial portion of his investment account, and not when the plaintiffs decided to terminate and liquidate the account in March 1985.  Id. at 549-550.  According to the Ninth Circuit, the statute of limitations began to run when the defendant specifically told the plaintiffs the consequences of the "market value" option on the account which gave them "actual

knowledge" of the breach.  Id. at 552.

"The Ninth Circuit has recognized that 'actual knowledge of the breach or violation' is not satisfied by knowledge that the fiduciary acted but, rather, requires knowledge of the breach of duty." Spragg, 1999 WL 51489, at *3 (quoting Waller v. Blue Cross of California, 32 F.3d 1337, 1341 (9th Cir. 1994)). "[O]nce an individual has actual knowledge of the act that constitutes the breach and knows the harmful effect of the act, a cause of action for breach of fiduciary duty accrues." Id. (citing Ziegler, 916 F.2d at 552).

In Spragg, the Ninth Circuit affirmed the district court's dismissal of the complaint on a Rule 12(b)(6) motion as time barred.  Id. at 4.  The plaintiff was informed he would be hired as an independent contractor with AT&T in 1983.  Id. at 2.  In June 1988, the plaintiff alleged in the complaint that he was informed by his former employer that his retirement assets had been transferred to AT&T and his retirement could not be bridged because AT&T deemed him an employee and not an independent contractor.  Id. at 3.  In 1996, AT&T told him directly for the first that it was refusing his request to reclassify his 1983 status.  Id. at 2.  The court explained that

> in June 1988, Spragg had actual knowledge of the allegedly wrongful acts that underlie his instant claim against AT & T for breach of its fiduciary duty. Likewise, in June 1988, Spragg had actual knowledge of the effect the allegedly wrongful acts would have on his pension benefits.

Id. at 3.  In Spragg, the Ninth Circuit concluded that the plaintiff had actual knowledge of the breach or violation when he learned of the underlying acts to support his claim and the negative consequences of these acts.

In Waller, the defendant decided to terminate its retirement plan by using $62 million of the Plan's assets to purchase annuities from select annuity providers to cover plan liabilities and subsequently obtained a reversion of the residual assets of about $32 million.  Waller, 32 F.3d at 1338. Plaintiffs alleged that the defendant breached its fiduciary duty by imprudently choosing annuity providers to cover plan liabilities as part of terminating plaintiffs' plan.  Id.  Plaintiffs did not challenge the decision to

terminate the retirement Plan but the "gravamen of plaintiffs' action is that defendants breached their fiduciary duties by unlawfully employing an infirm bidding process geared solely toward selecting those annuity providers who would enable defendants to obtain the maximum reversion possible." Id. at 1339.

The Ninth Circuit explained that the complaint was filed more than four years after the defendant purchased the annuities; however, the court rejected the defendant's argument that the statute of limitation began to run when Plaintiffs learned that it had purchased the annuities and stated "[w]e decline to equate knowledge of the purchase of annuities in this case with actual knowledge of the alleged breach of fiduciary duty." Id. at 1341. The court held that under the Rule 12(b)(6) standard, "actual knowledge" was sufficiently alleged in the complaint when it asserted that the action was filed within three years of actual knowledge, and plaintiffs "did not have actual knowledge . . . until the publicized account of ELIC's [one of the annuity providers] financial difficulties and its ultimate insolvency and the subsequent investigation by counsel for plaintiffs and the Class." Id. In Waller, plaintiffs did not dispute the termination of the plan and therefore knowledge of the annuity purchase did not put them on actual notice that the choice of annuity providers were improper. It was not until after the plaintiffs had knowledge of the effects of the selection of annuity providers that actual knowledge was properly alleged. In Waller, the Ninth Circuit held that actual knowledge requires knowledge of facts to support the claim and the consequences of these acts.

Ninth Circuit cases defining "actual knowledge" require that Plaintiffs must have actual knowledge of the underlying facts giving rise to the alleged violation, not knowledge that the underlying facts violates ERISA, and knowledge of the consequences or effects of the alleged breach of fiduciary duty. See also Meagher v. Int'l Ass'n of Machinist and Aerospace Workers Pension Plan, 856 F.2d 1418, 1422-23 (9th Cir. 1988) (reversing the district court's ruling of summary judgment in favor of the defendants on the basis of the statute of limitations, holding that the date of accrual

was when the plaintiff was harmed by the "wrongful application of the amendment" which was when his accrued benefits decreased which was whenever he received checks with reduced benefits and not when he learned the amendment, which resulted in decreased benefits, passed); Blanton v. Anzalone, 760 F.2d 989, 992 (9th Cir. 1985) ("The statute of limitations is triggered by the defendants' knowledge of the transaction that constituted the alleged violation, not by their knowledge of the law." ).

Other circuits have acknowledged the Ninth Circuit's standard of "actual knowledge" to not require knowledge that the underlying facts give rise to a cause of action under ERISA. See Wright v. Heyne, 349 F.3d 321, 322 (6th Cir. 2003); Browning v. Tigers Eye Benefits Consulting, 313 Fed. Appx. 656, 660 (4th Cir. 2009) (unpublished decision). In Wright, the plaintiffs alleged that the defendants breached certain fiduciary duties in making investment decisions and engaged in conduct prohibited under ERISA with regard to the receipt of commissions. Wright, 349 F.3d at 322. The Sixth Circuit affirmed the district court granted defendants' summary judgment based on the three year statute of limitations bar under § 1113. Id. at 321.

The court in Wright examined the different approaches circuits have taken to define "actual knowledge" noting that the Seventh, Ninth, and Eleventh Circuits, on the one hand, require knowledge of all the relevant facts and not facts to establish a "cognizable legal claim", while the Third and Fifth Circuits' view that "'actual knowledge' requires a showing that plaintiffs actually knew not only of the events that occurred which constitute the breach or violation but also that those events supported a claim for breach of fiduciary duty or violation under ERISA." Id. at 327-28. The court also noted a "hybrid view" adopted by the Second Circuit adopting both the Third and Fifth Circuits' view along with the Seventh, Ninth and Eleventh Circuits view. Id. at 328. In conclusion, the Sixth Circuit, joining the Seventh, Ninth and Eleventh Circuits held that "the relevant knowledge required to trigger the statute of limitations under 29 U.S.C. § 1113(2) is knowledge of the facts or transaction that constituted the alleged violation; it is not necessary that the plaintiff also have actual knowledge that

[10cv2179-GPC(MDD)]

the facts establish a cognizable legal claim under ERISA in order to trigger the running of the statute." Id. at 330.

Recently, a district court rejected the plaintiff's argument concerning "actual knowledge" as it relied on Second, Third and Fifth Circuit cases which apply a different standard than the Ninth Circuit. In re Northrop Grumman Corp. ERISA Litigation, Case No. CV 06-06213 MMM(JCx), 2015 WL 10433713, at *19 (C.D. Cal. Nov. 24, 2015). In applying the Ninth Circuit standard of "actual knowledge", the court explained that the plaintiffs must have "knowledge of the facts or transaction that constituted the alleged violation; it is not necessary that the plaintiff also have actual knowledge that the facts establish a cognizable legal claim under ERISA in order to trigger the running of the statute" id. at 18 (citations omitted), and the court held that the plaintiffs' claim were time barred under the three year statute of limitations. Id. at 22.

Defendants argue that as to either of the statute's provision, Plaintiffs actually knew all the facts that constituted the breach of fiduciary duty no later than 2002 when Plaintiffs testified that is when they learned past service credit would not apply to benefits accrual, and thus, the claims are barred as a matter of law since the lawsuit was not filed until 2010. In response, Plaintiffs assert that the statute of limitation began when Moyle had actual knowledge of the facts establishing the cause of action which was when Liberty Mutual denied his claim in 2009. They also argue that the statute of limitations is also met if you consider other points in time to establish actual knowledge such as when Liberty revised its SPD in 2009 to clarify and inserted the word "solely", when Liberty produced the Rehabilitation Agreement in the administrative record in August 2008 - June 2009, and when Liberty attached the Rehabilitation Agreement to the motion to dismiss in 2005. It was at these points Plaintiffs were on notice as to the facts establishing the cause of action.

Similar to the plaintiffs in In re Northrop Grumman, in this case, Plaintiffs improperly cite to the standard of "actual knowledge" applied in the Second and Third

Circuits, a standard distinct from the Ninth Circuit, to support their argument that the statue of limitations accrues at the time Plaintiffs learned the facts to support a cause of action for breach of fiduciary duty. (Dkt. No. 233 at 43.) However, even if the Court applied Plaintiffs' argument that they did not have actual knowledge to support their cause of action for breach of fiduciary until 2009, when their claims were denied as well as early as September 12, 2005, when the Rehabilitation Agreement was attached to Liberty Mutual's motion to dismiss, Plaintiffs' arguments are belied by the record.

On March 14, 2005, Moyle filed a complaint seeking a determination of his future rights to benefits under 29 U.S.C. § 1132(a)(1)(B) and breach of fiduciary duty under 29 U.S.C. § 1132(a)(3). On that date, and most likely sometime prior to March 14, 2005 when Moyle consulted with counsel, he had actual knowledge of the facts to establish a cognizable legal claim under ERISA. According to Plaintiffs' interpretation of actual knowledge requiring knowledge of facts to assert an ERISA claim, Moyle had actual knowledge in 2005. Therefore, Plaintiffs' argument that Moyle did not have actual knowledge until the earliest date of September 12, 2005 when Defendants' attached the Rehabilitation Agreement to their motion to dismiss, has no merit since Moyle had actual knowledge when he filed his complaint on March 14, 2005 or some earlier date. (Dkt. No. 05cv507, Dkt. No. 24 at 79.)

In applying the Ninth Circuit's interpretation of "actual knowledge", defined as knowledge of the facts underlying the alleged violation, not actual knowledge to establish a cognizable ERISA claim, and knowledge of the negative consequences of these facts, Defendants argue that the named Plaintiffs had actual knowledge as early as 2002 when they were informed that they would not be receiving past service credit for purposes of pension benefits accrual.

Moyle testified that, in 2002, he called Liberty Mutual after he received his personal data statement and was informed at that time, he was not entitled to retirement. (Dkt. No. 212-24, Abel Decl., Ex. 10, Moyle Depo. at 51:6-15.) Once he

1   learned about that, he spoke with his attorney.  (Id. at 12-13.)

2       In 2002, Moyle learned he would not be receiving past service credit for his prior

3   years at OGE, even though he believed that Liberty Mutual represented that it would

4   be providing past service credit, and Moyle had actual knowledge that this information

5   would have detrimental effect on his pension benefits.  In fact, Moyle contacted an

6   attorney at this time and even filed state court complaints that were removed to this

7   Court in November 2002 and February 2003 that address facts underlying the breach

8   of fiduciary duty but not the legal cause of action.  Therefore, based on Ninth Circuit

9   authority, Moyle had actual knowledge of the alleged breach in 2002.[4]

10      Similarly, Arwood testified that when she called Liberty Mutual around

11  November 2001 to discuss her retirement the following year, she was told she would

12  not be getting credit for her prior years with OGE. (Dkt. No. 212-16, Abel Decl., Ex.

13  2, Arwood Depo. at 66:12-22; 78:2-24.)  Rollason first learned that he would not be

14  getting past service credit from Arwood when he retired in 2001. (Dkt. No. 212-25,

15  Abel Decl., Ex. 11, Rollason Depo. at 73:23-74:25.) Shortly thereafter, maybe in 2002,

16  he spoke to Laura Bond of the human resource department and she confirmed what he

17  heard from Arwood. (Id. at 99:3-100:7.)  Since the complaint in this case was filed on

18  October 19, 2010, Moyle, Rollason and Arwood's claims for breach of fiduciary duty

19  are barred by the six year statute of limitations under the "fraud or concealment" tolling

20  provision in 29 U.S.C. § 1113(2).

21      Lastly, Sanders testified that around 2000 or 2001, she learned from other

22  employees at work, in the break room, that they would not get past service credit

23  because a former employee who was expecting her full retirement did not get it. (Dkt.

24  No. 212-27, Abel Decl., Ex. 13, Sanders Depo. at 67:8-68:25.)  However, it was not

25  until the end of 2004 and beginning of 2005, when Sanders retired on November 19,

26

27      [4] The Court notes that Moyle timely filed a complaint in 2005 for breach of
    fiduciary duty; however, it was dismissed with prejudice on November 14, 2005 based
28  on the ruling in Varity Corp v. Howe, 516 U.S. 489 (1996) which held that a plaintiff
    cannot bring suit under other subsections of § 1132 if he or she has an adequate remedy
    under  § 1132(a)(1)(B), .  (05cv507-DMS-WMC, Dkt. No. 32 at 9.)

2004, that she became aware that her specific benefit would not include past service credit when she received her first pension check. (Id. at 75:20-21; 77:13-24.)

Defendants acknowledge that Sanders was not aware of her specific benefits until the end of 2004 and the beginning of 2005 but argue that she learned that she might not be getting past service credit in 2000 or 2001. However, Sanders testified that what she heard in the break room about not receiving past service credit from other employees was "conjecture." (Dkt. No. 212-27, Abel Decl., Ex. 13, Sanders Depo. at 77:4-12.) Sanders testified that she did not learn she would not be receiving past service credit for her years at OGE until she received her first pension paycheck shortly after she retired on November 19, 2004. (Id. at 77:13-17.) Since the complaint was filed on October 19, 2010, the claim as to Sanders is timely.

At the motion hearing, the Court would like the parties to address what effect Sanders' timely claim has on the case and on the Class. Moreover, the Court would like the parties to address equitable tolling. While Plaintiffs raise state equitable tolling for the first time in their supplemental opposition, their argument is presented only two paragraphs without any legal authority to support their argument that state equitable tolling applies to § 1113. Moreover, if equitable tolling applies, it would only apply to Moyle and not the other named Plaintiffs and the Class; this issue should be addressed by the parties.

## C. Last Opportunity to Cure

Alternatively, Plaintiffs argue that even if the fraud or concealment exception does not apply, the case is timely based on Liberty Mutual's last opportunity to cure which is the date of final denial in 2009. Since Plaintiffs' claims are premised on an omission of material fact, a six year statute of limitations from the latest date on which the fiduciary could have cured the breach or violation applies. Defendants argue that the last opportunity to cure in an omissions case is on the last date the defendant could have averted Plaintiffs' detrimental reliance on the omitted information which was when Plaintiffs accepted employment with New Golden Eagle on October 1, 1997.

1

The last opportunity to cure provision provides,

2

No action may be commenced under this subchapter with respect to a fiduciary's
breach of any responsibility, duty, or obligation under this part, or with respect

3

to a violation of this part, after the earlier of--

4

(1) six years after (A) the date of the last action which constituted a part of the
breach or violation, or (B) in the case of an omission the latest date on which the

5

fiduciary could have cured the breach or violation, . . .

6

29 U.S.C. § 1113(1). Not many cases have addressed this issue and the cases that have

7

looked at this issue have held that the "last opportunity to cure" an omission is the "last

8

date on which Defendant could have averted Plaintiff's detrimental reliance on the

9

incomplete information." Fischer v. Carpenters Pension and Annuity Fund of

10

Philadelphia and Vicinity, No. 10-3048, 2012 WL 602170, at *5 (E.D. Pa. Feb. 24,

11

2012) (citing Librizzi v. Children's Mem'l Med. Ctr., 134 F.3d 1302, 1307 (7th Cir.

12

1998)).

13

The Seventh Circuit warned about confusing the two meanings of the term

14

"cure" in the sense of "to fix" with "to find a remedy." Olivo v. Elky, 646 F. Supp. 2d

15

95, 102 (D.C.C 2009) (quoting Librizzi, 134 F.3d at 1307). Defining "cure" in the

16

sense "to find a remedy" would extend a fiduciary's liability indefinitely as it is always

17

possible to remedy a breach. Id. In Olivo, the plaintiffs claimed that defendants

18

breached their fiduciary duty by failing to notify them of their eligibility to enroll in the

19

Plan in 1994, 1999 and 2000. Id. The plaintiffs suffered the injury, the inability to

20

make income contributions and receive matching employer contributions, in the year

21

they should have been notified of their eligibility. Id. In Olivo, the court noted that the

22

last opportunity to cure was the time when plaintiff first suffered the injury complained

23

of. Id.

24

Here, Plaintiffs misconstrue Defendants' last opportunity to cure to be the date

25

of remedying the breach.[5] See Aull v. Cavalcade Pension Plan, 988 F. Supp. 1360,

26

27

28

---

[5]In their opposition to Defendants' motion for summary judgment, in arguing
that Plaintiffs met the statute of limitations from the latest date Defendants could cure
they state, "Here, Defendants could still cure the ERISA violations." (Dkt. No. 233,

1364 (D. Colo. 1997) (rejecting plaintiffs' argument that defendant could still cure the breach today and therefore the statue of limitations has not yet run).  The last opportunity to cure regarding notification that past service credit for time employed with OGE would not count for accrued benefits would have been October 1, 1997 when Plaintiffs accepted employment with New Golden Eagle.  October 1, 1997 was the date Plaintiffs decided to forego looking for other employment opportunities and stayed with New Golden Eagle and became a beneficiary under the Plan.  Since the complaint was not filed until 2010, Plaintiffs' claim is not timely under § 1113(1)(B).

## Conclusion

Counsel are advised that the Court's rulings are tentative and the Court will entertain additional arguments at the hearing on **December 16, 2016 at 1:30 p.m.** in Courtroom 2D.

IT IS SO ORDERED.

DATED:  December 15, 2016

HON. GONZALO P. CURIEL
United States District Judge

---

Ps' Opp. at 46.)