GEOFFREY MOYLE, an individual; PAULINE ARWOOD, an individual; THOMAS ROLLASON, an individual; and JEANNIE SANDERS, an individual, on behalf of themselves,

Plaintiff,

vs.

LIBERTY MUTUAL RETIREMENT BENEFIT PLAN; LIBERTY MUTUAL RETIREMENT PLAN RETIREMENT BOARD; LIBERTY MUTUAL INSURANCE GROUP, INC., a Massachusetts company; LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts company,

Defendants.

CASE NO.10cv2179-GPC(MDD)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**

[Dkt. No. 296.]

On October 28, 2016, Defendants filed a supplemental brief in support of their motion for summary judgment following remand. (Dkt. No. 296.) On November 10, 2016, Plaintiffs filed a supplemental brief in opposition to Defendants' motion for summary judgment following remand. (Dkt. No. 298.) On November 18, 2016, Defendants filed a reply brief. (Dkt. No. 299.) A hearing was held on December 16, 2016. (Dkt. No. 301.) At the hearing, the Court noted additional briefing was needed

on certain issues, and on December 19, 2016, the Court issued an order directing the parties to address three issues that were not fully briefed in their supplemental briefs.[1] (Dkt. No. 302.) On January 6, 2017, Defendants filed a supplemental brief in response to the Court's order. (Dkt. No. 304.) Plaintiffs filed a response and Defendants filed a reply. (Dkt. Nos. 305, 307.) After a review of all the briefs, supporting documentation, hearing oral argument, and the applicable law, the Court GRANTS in part and DENIES in part Defendants' supplemental motion for summary judgment following remand.

## Procedural Background

Prior to the filing of the instant case, on March 14, 2005, Plaintiff Geoffrey Moyle ("Moyle") filed a complaint in this Court against Golden Eagle Insurance Corporation ("Golden Eagle") and Liberty Mutual Insurance Company ("Liberty Mutual").[2] (Case No. 05cv507-DMS(WMC), Dkt. No. 1). On August 23, 2005, Moyle

---

[1]The Court sought additional briefing on:

1. whether equitable tolling applies to 29 U.S.C. § 1113 as to Moyle
2. whether "date of discovery of such breach or violation" under the "fraud or concealment" exception differs from the "actual knowledge of the breach or violation"
3. whether Defendants have waived the affirmative defense of statute of limitations.

(Dkt. No. 302.)

[2] Prior to the case filed in 2005, Plaintiff Moyle also filed two complaints in San Diego Superior Court that were removed to this Court.

On November 5, 2002, Plaintiff Moyle filed an action against Golden Eagle, Liberty Mutual and John Davis in San Diego Superior Court alleging eleven causes of action related to employment and pension benefits due under the Plan. (Case No. 02cv2468-H(JAH).) On December 16, 2002, the case was removed to this Court. (Id., Dkt. No. 1.) On December 23, 2002, Defendants filed a motion for partial dismissal of Plaintiff's complaint arguing that the state law claims were preempted by ERISA as to the past service credit under the Plan. (Id., Dkt. Nos. 7, 10.) Subsequently, Plaintiff filed a notice of voluntary dismissal of action without prejudice. (Id., Dkt. No. 14.)

On February 13, 2003, Plaintiff Moyle filed an action against Defendants Golden Eagle, Liberty Mutual, and John Davis in San Diego Superior Court alleging ten causes of action related to employment and past service credit under the Plan. (Case No. 03cv509-IEG(JAH).) On March 13, 2003, Defendants removed the action to this

- 2 -

[10cv2179-GPC(MDD)]

filed a first amended complaint adding Defendant Liberty Mutual Retirement Benefit Plan ("Plan"). (Id., Dkt. No. 12.) The first amended complaint sought causes of action for determination of his future rights to benefits under the plan pursuant to 29 U.S.C. § 1132(a)(1)(B), and breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(3). (Id.) On November 14, 2005, District Judge Dana Sabraw granted Defendants' motion to dismiss for failure to exhaust administrative remedies. (Id., Dkt. No. 32.) The court also dismissed with prejudice the § 1132(a)(3) claim pursuant to Varity Corp. v. Howe, 516 U.S. 489 (1996), stating that "§ 1132(a)(3) is a 'catchall provision' that authorizes lawsuits for equitable relief for breach of fiduciary duty and other injuries for "violation that [1132] does not elsewhere adequately remedy." (Id. at 9.) Plaintiff appealed and on August 23, 2007, the Ninth Circuit affirmed the district court's dismissal requiring Plaintiff to exhaust and the dismissal of § 1132(a)(3) claim based on the rule in Varity concluding that Moyle "has no claim under 29 U.S.C. § 1132(a)(3) because he has adequate relief under 29 U.S.C. § 1132(a)(1). Moyle v. Golden Eagle Ins. Corp., 239 Fed. App'x 362 (9th Cir. 2007).

On January 26, 2008, Moyle filed a claim with Liberty Mutual. (Administrative Record ("AR") 783-86.) On July 18, 2008, Plaintiff Thomas Rollason ("Rollason") filed a claim. (AR 639-43.) On August 21, 2008, Plaintiff Pauline Arwood ("Arwood") filed a claim. (AR 1016-20.) Lastly, on December 4, 2008, Plaintiff Jeannie Sanders ("Sanders") filed her claim. (AR 1511-16.)

On April 23, 2008, Moyle's claim and subsequently Rollason, Arwood and Sanders' claims for benefits were initially denied by John R. St. Martin, Manager of

---

Court. (Id., Dkt. No. 1.) On March 20, 2003, Golden Eagle and Liberty Mutual filed motions to dismiss the complaint. (Id., Dkt. Nos. 5, 8.) On April 3, 2003, Plaintiff filed a motion to remand. (Id., Dkt. No. 13.) On July 17, 2003, District Judge Irma E. Gonzalez issued an order denying Plaintiff's motion to remand and granted in part Golden Eagle and Liberty Mutual's motions to dismiss. (Id., Dkt. No. 23.) The Court concluded that the claims relating to the question of past service credit under the Benefit Plan were preempted by ERISA. (Id.) Accordingly, the Court dismissed Plaintiff's state law claims without prejudice and granted leave to amend the complaint to allege claims under ERISA. (Id.) On August 5, 2003, the Court granted Plaintiff's *ex parte* application to remand remaining causes of action to state court. (Id., Dkt. No. 25.)

Pension and Savings, Benefits at Liberty Mutual. (AR 712-718 ("Moyle"); 590-96 ("Rollason"); 991-97 ("Arwood"); 1497-1503 ("Sanders").)

On June 20, 2008, Plaintiffs sought review of the initial decision and all four claims were consolidated for purposes of the administrative appeal. (AR 426.) On October 23, 2009, Plaintiffs' appeals were denied by Helen Sayles, Senior Vice President of Human Resources & Administration, on behalf of the Retirement Board. (AR 4365-4414.)

After having exhausted administrative remedies, on October 19, 2010, Plaintiffs Moyle, Arwood, Rollason, and Sanders filed the instant class action complaint against Defendants Liberty Mutual Retirement Benefit Plan ("Plan"); Liberty Mutual Retirement Benefit Plan Retirement Board ("Board"); Liberty Mutual Insurance Group, Inc. ("LMGI"); and Liberty Mutual Insurance Company ("Liberty Mutual"). (Dkt. No. 1.) On October 21, 2010, Plaintiffs filed a first amended complaint alleging causes of action for determination of his future rights to benefits under the plan pursuant to 29 U.S.C. § 1132(a)(1)(B), promissory estoppel, and denial of claim rights afforded under 29 C.F.R. § 2560.503-1(h)(2)(i). (Dkt. No. 3.) On April 25, 2011, District Judge Dana Sabraw denied Defendants' motion to dismiss the second and third claims; granted in part motion to dismiss improperly named Defendants; denied Defendants' motion to dismiss the first claim as to Plaintiff Moyle and granted Defendants' motion to strike demand for trial by jury. (Dkt. No. 18.) On September 14, 2011, the Court granted Plaintiffs' motion for leave to file a second amended complaint. (Dkt. No. 41.) On September 20, 2011, Plaintiffs filed a second amended complaint which added a claim for equitable relief under 29 U.S.C. § 1132(a)(3). (Dkt. No. 47.)

After briefing by the parties on Plaintiffs' motion for class certification, on April 10, 2012, District Judge Sabraw certified the class as to the first, second, and fourth causes of action. (Dkt. No. 113 at 19.) On April 24, 2012, Defendants filed a petition for permission to appeal the Court's order granting class certification to the Ninth Circuit. (Dkt. No. 120.) In the meantime, the Court denied Defendants' motion for

reconsideration and granted their motion for stay pending appeal. (Dkt. No. 126.) On July 11, 2012, the Ninth Circuit denied Defendants' petition for permission to appeal. (Dkt. No. 128.)

On October 12, 2012, the case was transferred to the undersigned judge. (Dkt. No. 174.) On October 17, 2012, Plaintiffs filed a third amended complaint against Defendants Liberty Mutual Retirement Benefit Plan ("Plan"); Liberty Mutual Retirement Benefit Plan Retirement Board ("Board"), the Plan administrator; Liberty Mutual Insurance Group, Inc. ("LMGI"), the Plan sponsor; and Liberty Mutual Insurance Company ("Liberty Mutual"), the entity that purchased Old Golden Eagle, and established Golden Eagle, a subsidiary of LMGI. (Dkt. No. 178.) The operative third amended complaint alleges four causes of action: payment of benefits under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B); equitable relief under 29 U.S.C. § 1132(a)(3); violation of 29 C.F.R. § 2560.503-1(h)(2)(i); and violation of 29 C.F.R. § 2520.102-3(l) and 29 C.F.R. § 2520.102-2(a).

On January 3, 2013, Defendants filed a motion for summary judgment on all four causes of action while Plaintiffs filed a motion for partial summary judgment on the second and fourth causes of action and on certain of Defendants' affirmative defenses. (Dkt. Nos. 212, 213.) On July 1, 2013, the Court granted Defendants' motion for summary judgment on all four causes of action in the third amended complaint, and denied Plaintiffs' motion for summary judgment. (Dkt. No. 252.) Plaintiffs appealed the Court's ruling on the first, second and fourth causes of action while Defendants cross-appealed that the suit was time-barred and that class certification was not proper. Moyle v. Liberty Mutual Retirement Benefit Plan, 823 F.3d 948, 952 (9th Cir. 2016). On May 20, 2016, the Ninth Circuit affirmed the district court's ruling on summary judgment on the first and fourth causes of action and reversed the district court's ruling on the second cause of action for equitable relief under 29 U.S.C. § 1132(a)(3). Id. The Ninth Circuit also found that class certification was proper. Id. The court concluded there was a factual dispute whether "Liberty Mutual breached its fiduciary

duty by failing to inform Golden Eagle employees that past service credit for the purpose of benefit accrual did not include the period prior to October 1, 1997, when they were first employed by Golden Eagle." Id. at 962. The Ninth Circuit remanded "for determinations of fact and equitable relief in the form of reformation and surcharge." Id. at 965. The Ninth Circuit also declined to consider "Liberty Mutual's argument that the statute of repose in 29 U.S.C. § 1113 acts to bar some of Appellants' claims under 29 U.S.C. § 1132(a)(3). The district court may consider such arguments on remand." Id. at 959 n. 5.

### Factual Background

The Court recites the facts from its prior order on summary judgment and from the Ninth Circuit's opinion. Plaintiffs Moyle, Arwood, Rollason, and Sanders are four former employees of Golden Eagle Insurance Company ("Old Golden Eagle" or "OGE"). On January 31, 1997, the Superior Court of San Diego County placed OGE into conservatorship proceedings under the supervision of the California Insurance Commissioner. Liberty Mutual took an interest in acquiring OGE and was in a bidding war with American International Group, Inc. ("AIG") for the acquisition of OGE. In order to increase its chances to win the bidding war, Liberty Mutual submitted an enhanced bid which included improved employee benefits such as a retirement plan, which had not been offered by OGE. The increased employee benefits were used to retain OGE employees and to increase the likelihood of court approval of its bid.

On May 29, 1997, the Conservation Court held an evidentiary hearing to evaluate Liberty Mutual's and AIG's competing bids. One of Liberty Mutual's exhibit expressly stated that the value that it added was to "increase employee benefits (credit for prior year's of service and participation in the benefits plan)." Liberty Mutual also told the Conservation Court that OGE employees would have the rights that Liberty Mutual employees had with "X years of service." This representation was later repeatedly made to OGE employees.

On May 30, 1997, the Conservation Court approved the sale and transfer of

certain OGE assets and liabilities to Liberty Mutual. The approval was memorialized in a Rehabilitation Agreement drafted by Liberty Mutual on June 18, 1997. (AR 3013.) Article 5.1(c) of the Rehabilitation Agreement states:

> As to the employees of [OGE] who become employees of New Eagle or another Subsidiary of LMIC by reason of the transactions contemplated by this Agreement . . . [s]uch employees shall be provided benefits which are at least comparable to those offered by [OGE] and shall be credited for all prior years of service with [OGE] . . . for purposes of eligibility, vesting and early retirement subsidies under the LMIC Retirement Benefit Plan . . . provided, that such period of service with [OGE] will not be credited for purposes of benefits accruals under the LMIC Thrift Incentive Plan and Retirement Benefit Plan . . . .

The Rehabilitation Agreement was never provided to OGE employees and the Conservator was not required to send notification of the agreement to OGE employees. The Rehabilitation Agreement is the only document that expressly states that past service credit with OGE would not be credited for purposes of benefits accrual. This language does not appear elsewhere during the transition period or in any communications with OGE employees.

As former employees of OGE, Plaintiffs had the opportunity to participate in a 401(k) Plan and profit-sharing plan. OGE did not offer a traditional defined benefit pension plan to its employees. OGE did not contribute any assets to the Plan at issue in this case and Plaintiffs did not make any contributions to the Plan.

During August 1997, Liberty Mutual hosted a series of benefits enrollment meetings so that OGE employees could obtain information about the transition. The presenters used a "Facilitator Guide" developed by Liberty Mutual as a script to convey the terms and conditions of employee benefits. The Facilitator Guide did not mention that past service credit with OGE would not be credited for benefits accrual. OGE employees, including Plaintiffs, testified that after attending the meetings, it was their understanding that past service credit with OGE would apply to the retirement plan and that is why everybody stayed with the company. When specifically asked about prior years of service at these meetings, Plaintiffs were told past years of service with OGE would count. During the enrollment period, the operative 1987 Plan and 1996

Summary Plan Descriptions ("SPD") were available to OGE employees, but the 1987 Plan and the 1996 SPD did not address past service credit.

On October 1, 1997, pursuant to the Rehabilitation Agreement, Liberty Mutual purchased certain assets of OGE and formed and incorporated a new entity, Golden Eagle Insurance Corporation, ("Golden Eagle"), as a subsidiary of Liberty Mutual.

The Plan and the SPD were not amended to address past service credit until 2001 when the Plan and the 2002 SPD specifically addressed OGE employees stating that past service credit for OGE employees would be "credited for eligibility, vesting, early retirement, and spouse's benefits . . . ." In 2009, the word "solely" was added.

Subsequently, Liberty Mutual Retirement Benefit Plan Retirement Board, the Retirement Plan's administrator, denied the claims of a dozen former OGE employees who sought past service credit, including the named plaintiffs in this case. Liberty Mutual explained that it had "informed former Golden Eagle employees about when past service credit applied and therefore, former Golden Eagle employees should have known when past service credit did not apply." Moyle, 823 F.3d at 955.

On October 19, 2010, Plaintiffs filed the class action complaint in this Court. (Dkt. No. 1.) Upon remand by the Ninth Circuit, Defendants move for summary judgment arguing that the remaining cause of action for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) is barred by the statute of repose and statute of limitations under 29 U.S.C. § 1113. They also argue that the equitable relief of reformation and surcharge under 29 U.S.C. § 1132(a)(3) are not available as remedies to Plaintiffs. Plaintiffs oppose arguing that Defendants waived the statute of limitation defense, that the breach of fiduciary claim is timely under the fraud or concealment exception under 29 U.S.C. § 1113, and as to Moyle, he is entitled to equitable tolling. They further argue that they have provided sufficient facts to entitle them to equitable relief in the form of reformation and surcharge.

/ / / /

/ / / /

**Discussion**

**A.     Legal Standard on Motion for Summary Judgment**

3     Federal Rule of Civil Procedure ("Rule") 56 empowers the Court to enter

4   summary judgment on factually unsupported claims or defenses, and thereby "secure

5   the just, speedy and inexpensive determination of every action."  Celotex Corp. v.

6   Catrett, 477 U.S. 317, 325, 327 (1986).  Summary judgment is appropriate if the

7   "pleadings, depositions, answers to interrogatories, and admissions on file, together

8   with the affidavits, if any, show that there is no genuine issue as to any material fact

9   and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.

10  56(c).  A fact is material when it affects the outcome of the case.  Anderson v. Liberty

11  Lobby, Inc., 477 U.S. 242, 248 (1986).

12    The moving party bears the initial burden of demonstrating the absence of any

13  genuine issues of material fact.  Celotex Corp., 477 U.S. at 323.  The moving party can

14  satisfy this burden by demonstrating that the nonmoving party failed to make a

15  showing sufficient to establish an element of his or her claim on which that party will

16  bear the burden of proof at trial.  Id. at 322-23.  If the moving party fails to bear the

17  initial burden, summary judgment must be denied and the court need not consider the

18  nonmoving party's evidence.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60

19  (1970).

20    Once the moving party has satisfied this burden, the nonmoving party cannot rest

21  on the mere allegations or denials of his pleading, but must "go beyond the pleadings

22  and by her own affidavits, or by the 'depositions, answers to interrogatories, and

23  admissions on file' designate 'specific facts showing that there is a genuine issue for

24  trial.'"  Celotex, 477 U.S. at 324.  If the non-moving party fails to make a sufficient

25  showing of an element of its case, the moving party is entitled to judgment as a matter

26  of law.  Id. at 325.  "Where the record taken as a whole could not lead a rational trier

27  of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

28  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The

court must view all inferences from the evidence in favor of the nonmoving party. Id.; Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001) ("the court must "view[] the evidence in the light most favorable to the nonmoving party.")  The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. Anderson, 477 U.S. at 255.

**B.    Waiver of Statute of Limitations Affirmative Defense**

In their original opposition to Defendants' motion for summary judgment, and in their recent supplemental opposition in response to the Court's order, Plaintiffs argue that Defendants waived their 29 U.S.C. § 1113 statute of limitations affirmative defense by failing to raise it until the motion for summary judgment. (Dkt. No. 233 at 40; Dkt. No. 305 at 14.)  Defendants argue that they did not waive the affirmative defense of statute of limitations because it was raised as to the contractual claim underlying breach of fiduciary duty.

Despite Rule 8(c)'s[3] requirement that an affirmative defense be raised in the answer, the Ninth Circuit has liberalized its requirement such that a defendant may raise an affirmative defense for the first time in a motion for summary judgment as long as the plaintiff is not prejudiced. Rivera v. Anaya, 726 F.2d 564, 566 (9th Cir. 1984) (defendant did not waive defense of statute of limitations by failing to include it in his initial pleading because plaintiff had not claimed any prejudice); see also Camarillo v. McCarthy, 998 F.2d 638, (9th Cir. 1993) (defense of qualified immunity not waived even though it was not raised in the answer, and plaintiff had not claimed prejudice).

The first two counts in the first amended complaint, filed on October 21, 2010, alleged causes of action for determination of terms of plan and clarification of rights to future benefits under 29 U.S.C. § 1132(a)(1)(B) and promissory estoppel. (Dkt. No. 3, FAC.)  The promissory estoppel claim was based on promises by Defendants that if

---

[3]Rule 8(c) provides, "In responding to a pleading, a party must affirmatively state any . . . affirmative defense, including: . . . statute of limitations . . . ." Fed. R. Civ. P. 8(c).

[10cv2179-GPC(MDD)]

Plaintiffs accepted employment with Defendants, Plaintiffs would be credited for time employed at OGE for purposes of benefits under the Plan. (Id., FAC ¶¶ 78-82.) In their answer, Defendants' fifteenth affirmative defense alleged, "Plaintiffs' claims for benefits under 29 U.S.C. § 1132(a)(1)(B) and/or estoppel are barred by the statute of limitations and the doctrine of laches." (Dkt. No. 11 at 11.) Over a year later, on September 20, 2011, Plaintiffs obtained leave of court and filed a second amended complaint ("SAC"). (Dkt. No. 47.) The first count remained the same as in the FAC but the second count now alleged a cause of action under 29 U.S.C. § 1132(a)(3) instead of promissory estoppel. (Id., SAC ¶¶ 77-84.) Defendants' answer to the SAC asserted the same fifteenth affirmative defense of statute of limitations as they asserted in their answer to the FAC. (Dkt. No. 59 at 13.)

On October 17, 2012, a third amended complaint was filed due to clerical errors. (Dkt. No. 178.) Based on a joint stipulation to correct clerical errors within the second amended complaint, Plaintiffs filed a third amended complaint and Defendants' answer to the second amended complaint was deemed to be the answer to the third amended complaint. (Dkt. No. 170.)

The issue is whether Plaintiffs are prejudiced by Defendants assertion of the statute of limitation's defense in their motion for summary judgment. Plaintiffs appear to argue that they were prejudiced because they did not receive any statute of limitations discovery from Defendants during discovery and they believed that Defendants would assert the one year statute of limitations asserted in the Plan as asserted in prior litigation and in the administrative process. Plaintiffs' arguments are not persuasive.

When Plaintiffs filed a second amended complaint alleging the breach of fiduciary duty under 29 U.S.C. § 1132(a)(3), they merely altered the legal cause of action from promissory estoppel to equitable relief. (Dkt. No. 47.) However, the underlying facts generally remained the same. (Compare Dkt. No. 3, FAC ¶¶ 78-82 with Dkt. No. 47, SAC ¶¶ 77-84.) In fact, paragraphs 78, 80 and part of 81 of the FAC

are nearly identical to paragraphs 78, 81, 82 of the SAC. The promissory estoppel and breach of fiduciary causes of action are based on Defendants' representations/promises that if Plaintiffs accepted employment with Liberty Mutual, their time of employment with Old Golden Eagle would be credited for purposes of benefits under the Plan. Plaintiffs relied on Defendants' representations/promises by accepting employment but Defendants refused to grant credit to Plaintiffs for their time employed at Old Golden Eagle. While the label of the cause of action changed, the underlying facts did not and Plaintiffs had notice that Defendants would be asserting the affirmative defense of statute of limitations. Thus, Plaintiffs were not prejudiced. The Court concludes that the statute of limitations affirmative defense was not waived by Defendants.

**C.    29 U.S.C. § 1113**

Defendants argue that the claim for breach of fiduciary duty is barred by the statute of repose and the statute of limitations under 29 U.S.C. § 1113. Plaintiffs respond that their claim is not governed by the statute of repose because their claim falls under the "fraud or concealment" exception that applies to both the statute of limitations and statue of repose under 29 U.S.C. § 1113, and is therefore, timely.

ERISA's statute of repose and statute of limitations provide:

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113. 29 U.S.C. § 1113(1) is considered the statute of repose while 29 U.S.C. § 1113(2) is considered the statute of limitations. See Landwehr v. DuPree, 72 F.3d 726, 733 (9th Cir. 1995) (distinguishing between three year statute of limitations

with six year "interest in repose"); <u>Bruno v. Time Warner Pension Plan</u>, 534 F. App'x 654, 655 (9th Cir. 2013) (noting repose period to be provided in § 1113(1).) While statutes of limitations and statutes of repose both limit the "temporal extent or duration of liability for tortious acts" and can bar a plaintiff's case, the "time periods are measured from different points, and the statutes seek to attain different purposes and objectives." <u>CTS Corp. v. Waldburger</u>, 134 S. Ct. 2175, 2182 (2014). Ordinarily, a statute of limitations creates "a time limit for suing in a civil case, based on the date when the claim accrued" while a statute of repose "puts an outer limit on the right to bring a civil action. That limit is measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant." <u>Id.</u> "The statute of repose limit is 'not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered.'" <u>Id.</u> (citation omitted). This reflects a legislative decision that there should be a specific time when a defendant should be free from liability. <u>Id.</u> at 2183. Therefore, a statute of repose is not subject to equitable tolling. <u>Id.</u>

### 1. Fraud or Concealment Exception

Defendants contend that the breach of fiduciary claim is barred by the six year statute of repose under § 1113(1), three year statute of limitations under § 1113(2) and that the "fraud or concealment" exception of § 1113 does not apply because the facts in the case do not support an allegation of "fraud or concealment." Plaintiffs respond first by arguing that the "fraud or concealment" tolling exception applies to their claim, and alternatively, even if the "fraud or concealment" exception does not apply, their claims are timely because the breach was not completed until Liberty Mutual issued its final denial in 2009, the latest date Liberty Mutual could have cured the violation or breach.[4]

---

[4]Plaintiffs analyze, in some depth, whether the § 1113 is a statute of repose and/or statute of limitations. (Dkt. No. 298 at 6-8.) Based on their statutory construction analysis, Plaintiffs contend that § 1113 is not a statute of repose and that the fraud or concealment exception applies to both § 1113(1) and § 1113(2). Despite

1    <u>Ziegler</u> presented a two step analysis in analyzing the statute of limitation under

2    29 U.S.C. § 1113.  The two step analysis asks 1) "when did the alleged 'breach or

3    violation' occur" and then "when did [the defendant] have 'actual knowledge' of the

4    breach or violation?"  <u>Ziegler v.  Connecticut Gen. Life Ins. Co.</u>, 916 F.2d 548, 550

5    (1990) (analyzing the three year statute of limitations under § 1113(2)).  On the first

6    step, to determine when the alleged breach or violation occurred, "we must  first isolate

7    and define the underlying violation upon which . . . [plaintiff's] claim is founded." <u>Id.</u>

8    at 550-51.  On this first step, the court need not consider when the plaintiffs suffered

9    actual harm except it may shed light on the second question of when a plaintiff gains

10   "actual knowledge" injured. <u>Id.</u>  at 551-52.  In <u>Ziegler</u>, the breach occurred upon the

11   contract's creation, not at the time of termination or at the time of injury. <u>Id.</u> at 551.

12       Defendants argue that the "last action which constituted a part of the breach or

13   violation" was when Plaintiffs accepted employment with New Golden Eagle on

14   October 1, 1997 which was when they could have avoided the detriment of giving up

15   the opportunity to seek other employment.  Plaintiffs do not address this argument.

16   Therefore, it appears that Plaintiffs concede that October 1, 1997 is the date of the

17   alleged breach.

18       The "fraud or concealment" exception of 29 U.S.C. § 1113 tolls the statute of

19   limitations only "until the plaintiff in the exercise of reasonable diligence discovered

20   or should have discovered the alleged fraud or concealment." <u>DeFazio v. Hollister,</u>

21   <u>Inc.</u>, 854 F. Supp. 2d 770, 783 (E.D. Cal. 2012).  "Plaintiffs bear the burden of proving

22   'fraud or concealment' under 29 U.S.C. § 1113." <u>Id.</u> at 782 (quoting <u>Harris v. Koenig</u>,

23   815 F. Supp. 2d 12, 20 (D.D.C. 2011)).

24       Under 29 U.S.C. § 1113, the "fraud or concealment" exception applies when an

25   ERISA fiduciary either "made knowingly false misrepresentations with the intent to

26   defraud the plaintiffs" or took "affirmative steps . . . to conceal any alleged fiduciary

27

28   their analysis, Defendants do not dispute that the "fraud or concealment exception"
     applies to the statute of limitations under § 1113(2) and tolls the limitations period until
     after Plaintiffs' discovery of the breach or violation.

breaches." <u>Barker v. American Mobil Power Corp.</u>, 64 F.3d 1397, 1401 (9th Cir. 1995). In <u>Barker</u>, the fact that funds were transferred from the Plan to the parent company, replaced with promissory notes executed by the parent company and never repaid do not establish fraud or false misrepresentations with the intent to defraud the plaintiffs. <u>Id.</u> at 1401. The court explained there was no specific evidence that the defendants "made knowingly false misrepresentations with the intent to defraud" or evidence that defendants took affirmative steps to conceal any alleged fiduciary breaches. <u>Id.</u> Passive concealment is not sufficient to toll the statute of limitations unless the defendant has a fiduciary duty to disclose material information. <u>Thorman v. Am. Seafoods Co.</u>, 421 F.3d 1090, 1096 (9th Cir. 2005).

Under § 1113, "'[f]raud' involves false statements or misrepresentations, made with knowledge of their falsity and with the intent to wrongfully deprive the plaintiff." <u>Zelhofer v. Metro. Life Ins. Co.</u>, No. 16cv991 TLN AC, 2016 WL 4126724, at *4 (E.D. Cal. Aug. 3, 2016) (citing <u>Barker v. American Mobil Power Corp.</u>, 64 F.3d 1397, 1401 (9th Cir. 1995)). "'Concealment' requires active steps to prevent plaintiff from discovering the violation." <u>Id.</u>; <u>see</u> <u>Kurz v. Philadelphia Elec. Co.</u>, 96 F.3d 1544, 1552 (3d Cir. 1996) ("The relevant question is . . . not whether the complaint 'sounds in concealment,' but rather whether there is evidence that the defendant took affirmative steps to hide its breach of fiduciary duty.").

Defendants argue that Plaintiffs' claim is based on the failure of Defendants to provide complete information that they would not get benefit accrual credit for OGE years of employment which constitutes passive concealment and does not rise to the level of "fraud or concealment" as defined under § 1113. Plaintiffs dispute Defendant's characterization of their claims; instead they claim that Defendants misrepresented the significance of facts and concealed its "intent not to give [past service credit] for accrual, burying specific exculpatory language in transactional

documents while omitting it in employee communications." (Dkt. No. 233 at 42[5].)

After the approval of Liberty Mutual's bid with the Conservation Court, the Rehabilitation Agreement, dated June 18, 1997, is the only document explicitly stating past service credit would count for purposes of eligibility, vesting, and early retirement subsidies but past service credit with OGE would not be credited for the purpose of benefit accrual. Moyle, 823 F.3d at 954. A copy of the Rehabilitation Agreement was never provided to Golden Eagle employees and the statement, concerning PSC for benefit accrual, was not communicated to Golden Eagle employees or appear anywhere else during the transition. Id. It was in June 1997 that Liberty Mutual expressly indicated its intention to not provide past service credit for benefit accrual to OGE employee. However, that intention was never communicated to OGE employees.

In August 1997, Liberty Mutual hosted a series of benefits enrollment meetings so OGE employees could obtain information about their benefits during the transition to Liberty Mutual. (Dkt. No. 232-1, Ds' Response to Ps' SSUF No. 99.) The purpose of the meetings was to welcome the employees and provide participants with all the important benefit information related to the Plan in a strong, positive attitude. (Id., No. 100.) The meetings were to provide all the "necessary data available" to employees to "make the decisions they need as employees of Liberty." (Id., No. 104.) Liberty prepared a "Facilitator Guide" which the presenters used, as a script, to control the manner and content of the information provided. (Id., Nos. 105, 106.) The Facilitator Guide provided a consistent and accurate message about the terms and conditions of the benefits available under the Plan. (Id., No. 107.) Retirement benefits were a small portion of the benefit enrollment meetings and the Facilitator Guide did not define "benefit accrual." (Id., No. 113.) From these meetings, OGE employees had the understanding that they would receive past service credit with OGE for all purposes.

George Kaerth was the Senior Vice President of Underwriting for Old Golden Eagle from 1991-1997 and during the transition, he was Executive Vice President of

---

[5]Page numbers are based on the CM/ECF pagination.

Underwriting and Marketing. (Dkt. No. 214-18, Butler Decl., Ex. 39, Kearth Depo. at 16:5-25; 17:14-22.) During the bidding process, Kaerth interacted with two members of the due diligence team from Liberty Mutual, David Long, who is now Liberty's CEO, and Timothy Sweeney, and on several occasions, between February-June 1997, Kaerth asked them whether years of service credit would be credited for purposes of benefit accrual and they responded that the issue was still under consideration and being negotiated. (Dkt. No. 214-27, Butler Decl. Ex. 48, Kearth Decl. ¶ 3; Dkt. No. 214-18, Butler Decl., Ex. 39, Kearth Depo. at 25:6-19.)

Later in July 1997, Kaerth was informed the Rehabilitation Agreement was finalized but he never got a copy of it and was informed that employees would not be receiving a copy. (Dkt. No. 214-27, Butler Decl. Ex. 48, Kearth Decl. ¶ 4.) During the transition period to Liberty Mutual, from July-September 1997, Kaerth asked Long and Sweeney again whether years of service would be credited for purposes of benefit accrual under the retirement plan and was again told it was under consideration and still being negotiated. (Id. ¶ 5.) During the same time, he was asked on a dozen occasions by former OGE employees whether their years of service with OGE would count under the retirement plan. (Id.) The OGE employees informed Kaerth that they, as well as other OGE employees, understood past years of service would be credited. (Id.) Kaerth told Long and Sweeney that former OGE employees told him that they believed that years of service would be credited for all purposes and told Long and Sweeney that they needed to promptly clarify with employees whether years of service would be applied for all purposes including the calculation of accrued benefits. (Id.) Long and Sweeney told Kaerth that the issue was being negotiated and still under consideration. (Id.) Liberty Mutual also indicated it would address these questions and clarify whether years of service with OGE would be credited for all purposes. (Id.) But Kaerth was not aware of any meetings, actions taken or any written communications that clarified this issue. (Id. ¶ 6.) Kaerth does not recall attending the meetings in August or September 1997 but he had discussions with employees who

attended and they believed all benefits would be calculated based on their date of hire with OGE. (Id. ¶ 7.)

In October 1997, Kaerth was informed by Liberty Mutual that the transition period had ended and was informed at this time that his years of service with OGE would not be credited for purposes of benefit accrual under the plan. (Id. ¶ 8.) As a result, he left employment in February 1998 because he did not receive credit for his past years of service. (Id.) Between October 1997 and February 1998, about a dozen former OGE employees asked him whether their years of service would apply under the plan, and after these discussions, Kaerth promptly informed Liberty Mutual that former OGE employee had informed him that they believed their years of service would be credited for all purposes. (Id. ¶ 9.) He informed Long and Sweeney that they needed to immediately tell former OGE employees that years of service would not be credited for the purpose of benefit accrual under the plan and they told him that they would address the problem. (Id.) However, he is unaware of Liberty Mutual responding to these question or clarifying the issue. (Id.)

Helen Sayles, the Senior Vice President of Human Resources & Administration, on behalf of the Retirement Board, was involved in preparing the SPDs before they were finalized and testified that Liberty did not identify items that the employees were not entitled to in the plan documents. (Dkt. No. 214-19, Ex. 40, Sayles Depo. at 197:19-24; 200:18-22.) Golden Eagle was not referenced in an SPD until 2001. (Dkt. No. 214-14, Butler Decl., Ex. 35, Connolly Depo. at 223:19-224:1.) Defendants did not update the SPD to include Golden Eagle until the transition of all the acquisitions were complete in 2000, although they could have included Golden Eagle in 1998 after it was purchased. (Dkt. No. 214-19, Ex. 40, Sayles Depo. at 198:4-199:1.)

The 2001 SPD referenced Golden Eagle for the first time and stated that "[p]ast service credit with certain employers who either became part of the Liberty Mutual Group and adopted the Retirement Plan, or from whom you are directly hired into the Liberty Mutual Group, is credited for eligibility, vesting, early retirement and spouse's

benefits purposes as defined below . . . ." (Dkt. No. 213-10, Butler Decl., Ex. 7 at 22.) Then in 2009, the SPD language concerning past service credit changed to add the word "solely" and stated "[p]ast service credit with certain employers who either became Participating Employers, or from whom you are directly hired by or into a Participating Employer, is credited solely for eligibility, vesting, early retirement and spouse's benefits purposes as defined below . . . ." (Dkt. No. 213-18, Buter Decl., Ex. 15 at 28.)

Here, the Court concludes that Plaintiffs have presented facts that Liberty Mutual engaged in acts to hinder the discovery of the breach of fiduciary duty or breached its duty by making a knowing misrepresentation concerning past service credit and intentionally took steps to conceal information about whether past service credit with OGE would count towards benefits accrual.

In Evanson, the district court held that the alleged concealment of an independent trustee's letters questioning the fairness of a new compensation plan was evidence that the defendants "took affirmative steps to hide [their] breach of fiduciary duty" and satisfied Rule 12(b)(6). Evanson v. Price, No. 06cv795-GEB-KJM, 2006 WL 2829789, at *5 (E.D. Cal. Sept. 29, 2006). In the case, the defendants adopted a new compensation plan for executives designed by a third party plan administrator. Id. at *1. The defendants then retained an independent trustee, Watson Wyatt, to evaluate the fairness of this plan due to their conflict of interest. Id. at *2. In letters, Watson Wyatt recommended that the defendants reconsider adopting the new compensation plan concluding that the plan exceeded market compensation rates by about thirty to fifty percent. Id. The defendants concealed the letters by placing them in a file in an office that was inaccessible to others and by keeping secret the existence and contents of the letters. Id. The plaintiff learned of the letters ten years later when he discovered them among one of the defendant's files. Id. The court found that the alleged concealment of the letters was evidence that the defendants took affirmative steps to hide their breach of fiduciary duty and that the alleged breach fell within the fraud or

concealment exception of the statute of limitations.  Id. at *5.

Similarly, in this case, at least as of June 18, 1997, when the Rehabilitation Agreement was finalized, Liberty Mutual had decided that it would not be providing past service credit to employees of OGE for purposes of benefits accrual.  The Conservator was not mandated to provide copies of the Rehabilitation Agreement to OGE employees and Liberty Mutual did not provide the Agreement to OGE employees. Defendants were on notice that OGE employees were questioning whether past service credit would apply to benefits accrual when Kaerth questioned Long and Sweeney about the issue and informed them that OGE employees believed their years of service would be credited for purposes of benefit accrual.  Despite this knowledge and their response that they would address and clarify the issue, Defendants failed to do so and kept that information secret during the transition process and after.  Moreover, Long and Sweeney, falsely represented, after the Rehabilitation Agreement was approved, that the issue of past service credit was still under consideration and being negotiated, when in fact it was not.  The Rehabilitation Agreement is the sole document evidencing Defendants' intent and decision not to provide past service credit during the transition period.  The facts presented by Plaintiffs demonstrate an affirmative misrepresentation and affirmative concealment by Liberty Mutual to hide its policy on past service credit despite numerous inquiries made by OGE employees.  Thus, the Court concludes that Plaintiffs have provided sufficient proof that the "fraud or concealment" tolling exception applies to this case.

**2.      Discovery of Breach or Violation**

The "fraud or concealment" exception to the statute of limitations begins to runs "no later than six years after the date of discovery of such breach or violation."  29 U.S.C. § 1113(2).  In their supplemental briefs, both parties, and the Court agree that the federal common law discovery rule applies to the "date of discovery" under § 1113(2).  See Merck & Co., Inc. v. Reynolds, 559 U.S. 633, 644 (2010) ("in the statute of limitations context, the word 'discovery' is often used as a term of art in connection

with the 'discovery rule,' a doctrine that delays accrual of a cause of action until the plaintiff has 'discovered it.'"); DeFazio v. Hollister, 854 F. Supp. 2d 770, 783 (E.D. Cal. 2012) ("The Court's holding applies equally to § 1113, especially because the Court's analysis in Merck is centered around concepts embodied in the general 'discovery rule.'").

In Merck the United States Supreme Court held that under the "discovery rule" used in fraud cases under § 10(b) of the Securities Exchange Act of 1934, "where a defendant's deceptive conduct may prevent a plaintiff from even *knowing* he or she has been defrauded," . . . [the rule] "encompasses not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff would have known." Id. at 644, 648 ("the limitations period in § 1658(b)(1) begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have 'discover[ed] the facts constituting the violation' - whichever comes first."). The Supreme Court noted that "inquiry notice" or "storm warnings" do not trigger the running of the statute of limitations but "may be useful to the extent that they identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating." Id. at 653. In Merck, the Court held that the discovery rule does not require that the actual plaintiff undertake a reasonably diligent investigation but a court may look to when a "reasonably diligent plaintiff would have discovered the necessary facts." Id. at 652-53; see also DeFazio, 854 F. Supp. 2d at 783 ("Therefore, assuming plaintiffs in this case were not reasonably diligent, they would be precluded from relying on the 'fraud or concealment' exception only if a reasonably diligent plaintiff would have discovered the misconduct). "[W]hat [a plaintiff] knew and when [he] knew it are questions of fact." Simmons v. United States, 805 F.2d 1363, 1368 (9th Cir. 1986); O'Connor Spear v. Fenkell, No. 13-2391, 2016 WL 5661720, at *19 (E.D. Pa. Sept. 30, 2016) (when a party should have discovered or did discover the alleged fiduciary violations is a genuinely disputed fact question).

The Ninth Circuit has not yet applied the discovery rule to the fraud or

concealment exception pursuant to 29 U.S.C. § 1113 although it has applied the discovery rule to other causes of actions.  See O'Connor v. Boeing North American, Inc., 311 F.3d 1139, 1147 (9th Cir. 2002) (CERCLA case holding that under the federal common law discovery rule, a "plaintiff knows or reasonably should know of a claim when he or she knows 'both the existence and the cause of his injury.'"); United States v. Kubrick, 444 U.S. 111, 113, 122 (1979) (applying discovery rule to FTCA statute of limitations to be brought "within two years after such claim accrues"); Bibeau v. Pacific N.W. Research Fdn. Inc., 188 F.3d at 1105, 1108 (9th Cir 1999) amended by 208 F.3d 831 (9th Cir. 2000) (applying discovery rule to state law personal injury statute of limitation under § 1983 where the statute begins to run "once a plaintiff has knowledge of the 'critical facts' of his injury, which are 'that he has been hurt and who has inflicted the injury.'").  In these cases, the statute of limitations under the discovery rule runs "once a plaintiff has knowledge of the 'critical facts' of his injury, which are 'that he has been hurt and who has inflicted the injury.'"  Bibeau, 188 F.3d at 1108.

In the context of 29 U.S.C. § 1113, other circuits have applied the discovery rule to the "fraud or concealment" exception holding that the "statute of limitations is tolled until the plaintiff in the exercise of reasonable diligence discovered or should have discovered the alleged fraud or concealment." Kurz v. Philadelphia Elec. Co., 96 F.3d 1544, 1552 (3d Cir. 1996); J. Geils Band Emp. Ben. Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1253 (1st Cir. 1996) ("By its very language, then, Section 1113 explicitly incorporates the federal common law "discovery rule," which postpones the beginning of the limitation period from the date when the plaintiff is injured to the date the injury is discovered.").

Defendants argue Plaintiffs had actual knowledge and discovered the facts that constituted the breach of fiduciary duty no later than 2002 based on their deposition testimony.  In response to the Court's tentative ruling[6] that Sanders did not have actual

---

[6]Prior to the hearing on Defendants' supplemental motion for summary judgment, the Court issued a tentative ruling.  (Dkt. No. 300.)

knowledge that she would not be receiving past service credit based on her years at OGE until she received her first retirement statement shortly after November 2004, Defendants argue that the clock began ticking for Sanders in 2000 or 2001 when she had a "storm warning" that something was amiss and she admitted she did not inquire further because she believed it was futile. Thus, they argue all Plaintiffs' claims are barred as a matter of law since the lawsuit was not filed until 2010. In response, Plaintiffs argue that the discovery rule applies when Plaintiffs knew or should have known the facts to support each element of the breach of fiduciary duty which is only after "clear repudiation" by Liberty Mutual denying their administrative appeal in 2009. They claim that they did not know of the resulting harm, an element of a breach of fiduciary duty claim, until their administrative appeal was denied by Liberty Mutual in 2009.[7] According to Plaintiffs, the complaint filed in 2010 is timely.

   The Court disagrees with Plaintiffs' position that under the discovery rule, the statute of limitations only begins to run after the Plaintiffs are on notice of the facts supporting each element of the cause of action, including the resulting harm. In Merck, the applicable statute of limitations provided that a § 10(b) fraud action may be brought "2 years after the discovery of the *facts constituting the violation*." Merck, 559 U.S. at 638 (quoting 29 U.S.C. § 1658(b) (emphasis added)). The Court observed that "scienter" is assuredly a "fact." Id. at 648. More importantly, the "fact" of scienter constitutes an important element of a § 10(b) violation for which Congress enacted special heightened pleading requirements. Id.; see 15 U.S.C. § 78u-4(b)(2). Given the prominence of scienter in a § 10(b) fraud suit, it would frustrate the very purpose of the

_____

   [7]In their response to Defendants' supplemental motion for summary judgment, Plaintiffs argued that the statute of limitations is also met if you consider other points in time to establish actual knowledge such as when Liberty revised its SPD in 2009 to clarify and inserted the word "solely", when Liberty produced the Rehabilitation Agreement in the administrative record in August 2008 - June 2009, and when Liberty attached the Rehabilitation Agreement to the motion to dismiss in 2005. (Dkt. No. 298.) However, since Defendants' argument at the time was based on "actual knowledge", not the discovery rule as discussed in their most recent brief, the Court need not consider these other points in time to determine when Plaintiffs discovered the facts concerning the breach or violation.

discovery rule, which specifically applies only in fraud cases, to allow the limitations period to run regardless of whether a plaintiff had discovered any facts suggesting scienter. Merck, 559 U.S. at 649. Therefore, the Court held that a claim accrues when the plaintiff has actually discovered the facts constituting the defendant's scienter or when a reasonably diligent plaintiff would have discovered such facts. Id. at 653. The Merck court did not address whether this rule extended to the element of loss or harm. However, it observed that the United States in its *Amicus Curiae* brief suggested that it did not because facts concerning plaintiff's reliance, loss, and loss causation are not among those that constitute the violation and need not be discovered for a claim to accrue. Id. at 649.

Applying the analysis in Merck to the instant case, the element of harm in a § 1113 action does not possess the same significance as the element of scienter in a fraud case. Unlike scienter, there are no heightened pleading requirements for the element of harm and it is not tethered in any way to the discovery rule. Consequently, the Court disagrees with Plaintiffs' assertion that they are charged with discovery only when they know or should know facts to support each element of breach of fiduciary duty, including harm. See Martin v. Consultants & Administrators, Inc., 966 F.2d 1078, 1098 (7th Cir. 1992) (court looked to determine when plaintiff had actually discovered or should have discovered the kickback scheme or unlawful scheme, not discussing discovery of the facts to support the legal elements of the scheme); Diduck v. Kasyzycki & Sons Contractors, Inc., 874 F.2d 912, 919 (2d Cir. 1989) (fraud or concealment six years applied from when he discovered the wrongdoing).

Furthermore, without providing binding or persuasive legal authority, Plaintiffs ask the Court to extend the "clear repudiation" requirement that applies to determine the beginning of the statute of limitations under § 1132(a)(1)(B) for a claim to recover benefits due under the terms of the plan to a breach of fiduciary claim under §

1132(a)(3) because both provisions use the language "knows or has reason to know."[8]
Plaintiffs argue that because § 1132(a)(1)(B) requires a clear repudiation, this legal
standard should also apply to § 1132(a)(3). Plaintiffs provide no legal authority to
support their assertion and the Court declines to extend the "clear repudiation" rule to
a breach of fiduciary claim.

Moyle was employed by Liberty Mutual until approximately March 15, 2002.
(Dkt. No. 75-4, Moyle Decl. ¶ 3.) As of April 2001, Moyle's Personal Data Sheet led
him to believe that he had a total employment period of "18 years and 4 months" for
purposes of his benefits. (Dkt. No. 75-17, Moyle Decl. at 3; Dkt. No. 212-14 at 52.)
Moyle testified that shortly after his employment ended he discovered that he was not
going to get the extent of the retirement that he expected. (Dkt. No. 304-2, Abel Decl.,
Ex. A, Moyle Depo. at 3.) Moyle testified that at least as of March 2002, shortly after
his termination, he learned he would not be receiving credit for benefit accrual for his
past years of service with OGE even though he believed that Liberty Mutual
represented that it would be providing past service credit. (Dkt. No. 304-2, Abel Decl.,
Ex. A, Moyle Depo. at 94:21-95:3.) Shortly after his retirement, he called Liberty
Mutual after he received his personal data statement[9] and was informed at that time, he
was not entitled to retirement. (Dkt. No. 212-24, Abel Decl., Ex. 10, Moyle Depo. at
51:6-15.) Meanwhile, Moyle's state court complaint filed in 2002, avers that, on May
23, 2002, he was advised by Liberty Mutual that he would not be receiving credit for
his past years of service with OGE.[10]

---

[8]An ERISA § 1132(a)(2)(B) claim accrues "either at the time benefits are
actually denied, or when the insured has reason to know that the claim has been
denied." Wise v. Verizon Commc'ns, Inc., 600 F.3d 1180, 1188 (9th Cir. 2010).

[9]The April 30, 2002 Retirement Benefit Plan Calculation Statement gave Moyle
4.41667 years of credited service. (Dkt. No. 212-15 at 24.)

[10]The Court notes that the state court complaint filed in 2002 and removed to
federal court asserts that he received his "Liberty Mutual Retirement Benefit Plan
Calculations Statement" around April 30, 2002 shortly after he was terminated
reflecting that his credited service years was only 4.416670 years which was in contrast
to his April 30, 2001 statement reflecting 18 years and 4 months less his Liberty past

After learning the facts concerning an alleged violation or breach, Moyle diligently contacted an attorney and even filed state court complaints, on November 5, 2002 and February 13, 2003 that addressed certain facts underlying the breach of fiduciary duty but not the legal cause of action. (Case No. 02cv2468-H(JAH), Dkt. No. 1 at 23-26; Case No. 03cv509-IEG(JAH), Dkt. No. 1 at 29-30.[11]) Therefore, the Court concludes that Moyle discovered the alleged breach at some point between March 15 and May 23, 2002.[12]

Similarly, Arwood testified that when she called Liberty Mutual around November 2001 to discuss her retirement the following year, she was told she would not be getting credit for her prior years of service with OGE. (Dkt. No. 212-16, Abel Decl., Ex. 2, Arwood Depo. at 66:12-22; 78:2-24.) She said it was her understanding that when Liberty Mutual took over, it would be providing credit for years of service with OGE and it applied to all benefits. (Id. at 31:10-13; 60:22-25; 63:1-9.)

Rollason first learned that he would not be getting past service credit from Arwood when she went in to apply for retirement in November 2001 and came back and said she would not be receiving retirement benefits for her time at OGE. (Dkt. No. 212-25, Abel Decl., Ex. 11, Rollason Depo. at 73:23-74:25.) He was shocked and irritated since it was clear at the meetings that they would get retirement benefits for their years of service at OGE. (Id. at 74:18-25; 91:1-5.) When Arwood alerted Rollason about this issue, he investigated by making calls because he was thinking about retiring early. (Id. at 92:21-93:4; 99:3-6.) Shortly thereafter, in 2002, he spoke to Laura Bond of the human resource department and she confirmed what he heard from Arwood, and that is when he started to look into talking with an attorney. (Id. at

---

service credit of 64 months. (Case No. 02cv2468-H(JAH), Dkt. No. 1, Compl. ¶¶ 24, 50.) Then on May 23, 2002, after numerous inquiries to Liberty Mutual, he was advised he would not be receiving credit for his years of employment with OGE. (Id. ¶ 51.)

[11] The two state court complaints were eventually removed to this Court.

[12] The Court notes that Moyle timely filed a complaint in 2005 for breach of fiduciary duty.

[10cv2179-GPC(MDD)]

91:8-15; 99:3-100:24.)  When Rollason talked with Laura Bond, he discovered the facts concerning the alleged breach or violation.  Since the complaint in this case was filed on October 19, 2010, Moyle, Rollason and Arwood's claims for breach of fiduciary duty are barred by the six year statute of limitations under the "fraud or concealment" tolling provision in 29 U.S.C. § 1113(2).

Lastly, Sanders testified that around 2000 or 2001, she learned from other employees at work, in the break room, that they would not get past service credit because a former employee who was expecting her full retirement did not get it.  (Dkt. No. 212-27, Abel Decl., Ex. 13, Sanders Depo. at 67:8-68:25.)  Sanders testified that what she heard in the break room about not receiving past service credit from other employees was "conjecture."  (Id. at 77:4-12.)  Sanders retired on November 19, 2004 and she testified that it was not until the end of 2004 and beginning of 2005 when she received her first pension check that she became aware that her specific benefit would not include past service credit.  (Id. at 75:20-21; 77:13-24.)

Defendants acknowledge that Sanders was not aware of her specific benefits until the end of 2004 and the beginning of 2005 but argue that she received a "storm warning" that something was not right in 2000 or 2001 when she heard in the break room that she might not be getting past service credit for her years at OGE.  Despite knowing she might not get her past credit for her prior years of service, she did not contact human resources because "there would be no point."  (Dkt. No. 212-27, Abel Decl., Ex. 23, Sanders Depo. at 69:5-12.)  According to Defendants, Sanders' clock did not begin ticking when she received her first pension check after she retired on November 19, 2004 but began earlier in the year 2000 or 2001 when she knew something was amiss and failed to diligently investigate.

However, in Merck, the Court held that the discovery rule does not require that the plaintiff undertake a reasonably diligent investigation but the Court looks to determine when a "reasonably diligent plaintiff would have discovered the necessary facts." Merck, 559 U.S. at 652-53.  According to Sanders, what she heard in the break

room from other employees in 2000 or 2001 was conjecture. The comments about past service credit were not made by representatives of Liberty Mutual as the comments made to Rollason and Arwood but were hearsay statements made by employees while chatting in the break room. Since the transition to Liberty Mutual in 1997, Sanders believed that she would be receiving past credit service for her years at OGE based on her understanding of the benefits she learned about when she attended the benefit enrollment meetings. (Dkt. No. 212-27, Sanders Depo. at 57:21-24; 61:1-6, 61:13-62:2.) Therefore, unsubstantiated comments made nearly four years later by employees discussing the retirement of another employee in the break room, when viewed in the light most favorable to Sanders, could have been ignored or disregarded as conjecture, speculative, and/or gossip and creates a genuine issue of material fact whether a reasonable person would have discovered the alleged breach or violation prior to October 19, 2004.

In summary, the Court concludes that Plaintiffs Arwood and Rollason's claims are barred by the six year limitations period for fraud or concealment under § 1113 but that there are genuine issues of material fact as to whether Plaintiff Sanders' claims are barred by the six year limitations period under the fraud or concealment exception. Finally, as to Moyle, the Court finds that his complaint was filed more than six years after discovery of the claim. However, Moyle claims that he is entitled to equitable tolling which is an issue that the Court will address below in section E.

**D.      Last Opportunity to Cure**

Alternatively, Plaintiffs argue that even if the fraud or concealment exception does not apply, the case is timely based on Liberty Mutual's last opportunity to cure which is the date of final denial in 2009. Since Plaintiffs' claims are premised on an omission of material fact, a six year statute of limitations from the latest date on which the fiduciary could have cured the breach or violation applies. Defendants argue that the last opportunity to cure in an omissions case is on the last date the defendant could have averted Plaintiffs' detrimental reliance on the omitted information which was

1  when Plaintiffs accepted employment with New Golden Eagle on October 1, 1997.

2  The last opportunity to cure provision provides,

3  No action may be commenced under this subchapter with respect to a
   fiduciary's breach of any responsibility, duty, or obligation under this
4  part, or with respect to a violation of this part, after the earlier of--

5  (1) six years after (A) the date of the last action which constituted a
   part of the breach or violation, or (B) in the case of an omission the
6  latest date on which the fiduciary could have cured the breach or
   violation, . . .

7

8  29 U.S.C. § 1113(1). Not many cases have addressed this issue and the cases that have

9  looked at this issue have held that the "last opportunity to cure" an omission is the "last

10 date on which Defendant could have averted Plaintiff's detrimental reliance on the

11 incomplete information."   Fischer v. Carpenters Pension and Annuity Fund of

12 Philadelphia and Vicinity, No. 10-3048, 2012 WL 602170, at *5 (E.D. Pa. Feb. 24,

13 2012) (citing Librizzi v. Children's Mem'l Med. Ctr., 134 F.3d 1302, 1307 (7th Cir.

14 1998)).

15 The Seventh Circuit warned about confusing the two meanings of the term

16 "cure" in the sense of "to fix" with "to find a remedy." Olivo v. Elky, 646 F. Supp. 2d

17 95, 102 (D.C. Cir. 2009) (quoting Librizzi, 134 F.3d at 1307). Defining "cure" in the

18 sense "to find a remedy" would extend a fiduciary's liability indefinitely as it is always

19 possible to remedy a breach. Id. In Olivo, the plaintiffs claimed that the defendants

20 breached their fiduciary duty by failing to notify them of their eligibility to enroll in the

21 Plan in 1994, 1999 and 2000. Id. The plaintiffs suffered the injury, the inability to

22 make income contributions and receive matching employer contributions, in the year

23 they should have been notified of their eligibility. Id. In Olivo, the court noted that the

24 last opportunity to cure was the time when plaintiff first suffered the injury complained

25 of. Id.

26 Here, Plaintiffs misconstrue Defendants' last opportunity to cure to be the date

27

28

of remedying the breach.[13]  See Aull v. Cavalcade Pension Plan, 988 F. Supp. 1360, 1364 (D. Colo. 1997) (rejecting plaintiffs' argument that defendant could still cure the breach today and therefore the statue of limitations had not yet run).   The last opportunity to cure regarding notification that past service credit for time employed with OGE would not count for accrued benefits would have been October 1, 1997 when Plaintiffs accepted employment with New Golden Eagle.  October 1, 1997 was the date Plaintiffs decided to forego looking for other employment opportunities and stayed with New Golden Eagle and became a beneficiary under the Plan.  Since the complaint was not filed until 2010, Plaintiffs' claim is not timely under § 1113(1)(B).

**E.     Equitable Tolling as to Plaintiff Moyle**

Lastly, Moyle argues that his claims should be equitably tolled during the time periods when his 2002, 2003 and 2005 lawsuits were pending or being appealed, and his administrative claim was being processed.  Defendants argue that Moyle has failed to cite any authority that applies equitable tolling to ERISA to any of these time periods.  Further, Defendants argue that even if the Court tolls the applicable time limits for the period that the 2005 lawsuit was pending and Moyle exhausted his administrative remedies, the claim is untimely.  In his initial supplemental opposition to the motion for summary judgment, (Dkt. No. 298 at 12), Moyle argued that state equitable tolling applies to him; however, in his supplemental opposition pursuant to the Court's order, (Dkt. No. 305), he shifts course arguing that federal equitable tolling applies to him.

In this case, the Court has already found that the "fraud or concealment" exception applies to the facts of the case.  The next question is whether the "fraud or concealment" exception is a statute of limitations or a statute of repose in order to permit equitable tolling of the six-year filing deadline.  In the absence of statutory

---

[13]In their opposition to Defendants' motion for summary judgment, in arguing that Plaintiffs met the statute of limitations from the latest date Defendants could cure they state, "[H]ere, Defendants could still cure the ERISA violations."  (Dkt. No. 233, Ps' Opp. at 46.)

exceptions, federal statutes of limitations are generally subject to equitable principles of tolling.  Rotella v. Wood, 528 U.S. 549, 560 (2000).  However, if the "fraud or concealment" exception is a statute of repose, equitable tolling would not apply. CTS Corp. v. Waldburger, 134 S. Ct. 2175, 2183 (2014) ("[s]tatutes of limitations, but not statutes of repose, are subject to equitable tolling").  The Ninth Circuit has not ruled on whether the fraud or concealment exception is a statute of repose or a statute of limitations.  An out-of-circuit district court case has concluded that the "fraud or concealment" exception is a statute of limitations, rather than a statute of repose, and is thus subject to tolling.  Dykema Excavators, Inc. v. Blue Cross & Blue Shield of Michigan, 77 F. Supp. 3d 646, 655 (E.D. Mich. 2015).

Analysis of the language in § 1113 supports the conclusion that the "fraud or concealment" exception is a statute of limitations.  Clearly, § 1113(1) is a statute of repose and focuses on the conduct of the fiduciary as the trigger for the commencement of the time under the statute.  Bruno, 534 F. App'x at 655 (Section 1113 contains statutes of limitations and repose, the repose period requires an action be filed within six years of (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation).  By concentrating on the fiduciaries' actions, § 1113(1) operates as a statute of repose and creates an outer limit for breaches of fiduciary duties.  Meanwhile, § 1113(2) is plainly a statute of limitations which directs itself to the plaintiff's knowledge of the existence of a breach or violation.  In this way, it sets time limits based upon when the plaintiff learns of the existence of a cause of action.  Similarly, the "fraud or concealment" exception also focuses on the plaintiff and his discovery of the breach or violation.  By directing itself to what a plaintiff knows about the breach, this exception operates similarly to a statute of limitations and for purposes of equitable tolling should be treated as one.

The next question is whether Moyle is entitled to equitable tolling of the six year statute of limitations under the "fraud or concealment" exception from the filing of the

2005 federal complaint until his claims were dismissed by the district court and the ruling was affirmed by the Ninth Circuit. Defendants argue that Moyle should receive, at most, tolling for the period during which the case was pending at the district court level.

Equitable tolling may apply in ERISA cases "when the participant has diligently pursued both internal review and judicial review but was prevented from filing suit by extraordinary circumstances. . . ." Heimeshoff v. Hartford Life & Accident Ins. Co., 134 S. Ct. 604, 615 (2013) (concerning bringing ERISA action within a period that the parties agreed to by contract). "Long-settled equitable-tolling principles instruct that generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." Kwai Fun Wong v. Beebe, 732 F.3d 1030, 1052 (9th Cir. 2013), aff'd and remanded sub nom United States v. Kwai Fun Wong, 135 S. Ct. 1625 (2015) (internal quotations and citations omitted). Equitable tolling has been applied sparingly, Scholar v. Pacific Bell, 963 F.2d 264, 267 (9th Cir. 1992), and does not apply to "garden variety claim of excusable neglect." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990). "Equitable tolling is typically granted when litigants are unable to file timely [documents] as a result of external circumstances beyond their direct control." Harris v. Carter, 515 F.3d 1051, 1055 (9th Cir. 2008).

In Kwai Fun Wong, the plaintiff "inform[ed] the parties and the court of her desire to file an FTCA claim well before the filing deadline" and before filing the claim in the same action. 732 F.3d at 1053. The Court of Appeals found that the plaintiff "took special care in exercising due diligence" by filing a pleading, which included a request to file her FTCA claims in the case, prior to the expiration of the six-month window set forth by 28 U.S.C. § 2401(b). Id. at 1052-53. The Court of Appeals found the plaintiff's FTCA "claim was rendered untimely because of external circumstances beyond her control." Id. at 1053.

Here, on March 14, 2005, Moyle filed an equitable relief claim within the applicable six-year statute of limitations. On November 4, 2005, the district court, relying on Varity, held that Moyle could not pursue a claim under § 1132(a)(3) because he had adequate relief under § 1132(a)(1)(B). On August 23, 2007, the Ninth Circuit affirmed. Then in 2011, the Supreme Court decided CIGNA Corp. v. Amara, 563 U.S. 421, 440-42 (2011), which did not address the holding in Varity, and did not overturn or overrule Varity, but outlined the scope of the meaning of "appropriate equitable relief" under § 1132(a)(3). In the recent appeal of the summary judgment order in the instant case, the Ninth Circuit held that Moyle could plead relief in the alternative under both § 1132(a)(3) and § 1132(a)(1)(B) as long as the recovery is not duplicative. Moyle, 823 F.3d at 961.

Because Moyle pursued his equitable relief claim diligently in March 2005, well within the statute of limitations, and it was dismissed based upon law that was subsequently clarified in Moyle's favor, the Court concludes that extraordinary circumstances prevented him from pursuing his equitable relief claim in a timely fashion. Consequently, the Court finds that the limitations period was tolled while the 2005 lawsuit was pending from March 14, 2005 through August 23, 2007, a period of 29 months and 9 days. Cf. Outler v. United States, 485 F.3d 1273, 1281 (11th Cir. 2007) (analyzing equitable tolling based on an intervening change in law by citing to Gonzalez v. Crosby, 545 U.S. 524 (2005), a case addressing whether a change in law constituted an extraordinary circumstance under Rule 60(b) and noting it was "analogous.").

Here, Moyle learned that he would not receive credit for his OGE years of service for purposes of benefit accrual at some point between March 15 and May 23, 2002. The Court also concludes that he also had actual knowledge of the breach at the

same time.[14]  The instant class action complaint was filed on October 19, 2010.  From the discovery date of May 23, 2002 through October 19, 2010, 100 months and 26 days lapsed.  Given that the statute of limitations was tolled for 29 months and 9 days, 71 months and 17 days passed before the instant case was filed.  With a discovery date of May 23, 2002, Moyle's complaint is timely under the six year statute of limitations provided for cases involving "fraud and concealment."[15]  However, with a discovery date of March 15 through May 11, 2002, the claim would be untimely.  Given the question of fact regarding the date that the claim was discovered, summary judgment would be inappropriate.

In addition to seeking tolling during the course of the 2005 lawsuit, Moyle seeks tolling during the period that he administratively exhausted his claims.  In their papers, Defendants conceded this time frame for tolling purposes based upon the view that there was a three year statute of limitations.  Given that the Court has applied the six year time limits provided under the "fraud or concealment" exception, the Court expects that the Defendants are not prepared to concede that equitable tolling is available for this period of time and it will analyze whether tolling during this time frame is appropriate.

The Ninth Circuit has not ruled on whether exhaustion of administrative remedies for an ERISA claim is subject to equitable tolling.  In analyzing whether equitable tolling applies to ERISA cases, courts in other circuits have concluded that if a court requires a plaintiff to exhaust administrative remedies under ERISA, it should also allow for tolling of the statute of limitations during this period or it would lead to

---

[14]In its tentative order, the Court conducted a detailed analysis, albeit incorrect and based on the failure of the parties to distinguish "actual knowledge" and "discovery of such breach or violation" in their initial briefing, and concluded that Moyle had "actual knowledge of the breach or violation" in 2002, when he learned he would not be receiving past service credit for his prior years at OGE.  (Dkt. No. 300 at 22.)

[15]  Plaintiff Moyle also seeks equitable tolling for the time periods during which the 2002 and 2003 state lawsuits were pending.  Given the lack of Ninth Circuit precedent to support these requests and the fact that the lawsuit is timely based upon the tolling under the 2005 lawsuit and exhaustion of administrative remedies, it is unnecessary to decide whether tolling is justified based upon these other actions.

unfair results. See Pettaway v. Teachers Ins. And Annuity Ass'n of America, 547 F. Supp. 2d 1, 5-6 (D.D.C. 2008) (equitable tolling applied during internal appeal of denial of benefits where the plaintiff was required to exhaust before filing suit); Jeffries v. Trustees of the Northop Grumman Savings & Inv. Plan, 169 F. Supp. 2d 1380, 1382 (M.D. Ga. 2001) (time for exhausting administrative remedies was tolled for equitable relief claim that required exhaustion); Wolfe v. 3M Short-Term Disability Plan, 176 F. Supp. 2d 911, 917-18 (D. Minn. 2001) (applying equitable tolling while the plaintiff exhausted administrative remedies); Hoffman v. Central States SE & SW Areas Pension Fund, No. 90 CV 4132, 1992 WL 336376, at *9 (N.D. Ill. May 8, 1992) ("[A] policy favoring exhaustion of remedies is undermined unless the statute of limitations is tolled during the period of exhaustion.").

In these cases, the courts recognized the unfairness or the "procedural quagmire" that could result if a plaintiff is required to exhaust prior to filing a complaint and if that time period is not tolled. See Wolfe, 176 F. Supp. 2d at 918; Pettaway, 547 F. Supp. 2d at 6.

> If a plaintiff files her complaint to avoid the running of the limitations period but prior to fully exhausting her internal remedies, she risks dismissal of her claim for failure to exhaust her administrative remedies. Conversely, a plaintiff who exhausts her internal remedies as required under the plan itself, ERISA and applicable caselaw, there is a risk that, absent tolling, the limitations period will expire before she files suit in federal court.

Wolfe, 176 F. Supp. at 918. Such a situation arose in the instant case. Moyle timely filed his complaint in 2005 without exhausting his administrative remedies and he bore the risk and his complaint was dismissed for failing to exhaust. (Case No. 05cv507-DMS(WMC), Dkt. No. 32.) Therefore, following the appeal and the directive of the Ninth Circuit, Moyle sought to exhaust his administrative remedies. See Moyle, 239 F. App'x at 363 ("Moreover, on this record, Moyle is not precluded from raising his request for clarification of his rights to future benefits or, at the appropriate time, a claim for such benefits, in federal court after exhausting his administrative remedies pursuant to the plan."). To require a plaintiff to exhaust administrative remedies

without tolling the limitations period while he proceeds to exhaust is "manifestly unfair." See Pettaway, 547 F. Supp. at 6.

Therefore, in Moyle's case, the Court concludes that equitable tolling should apply while he exhausted his administrative remedies from January 26, 2008 until October 23, 2009. Tolling this time period renders Moyle's complaint timely under the six year statute of limitations for fraud or concealment.[16]

## F. Equitable Relief under 29 U.S.C. § 1132(a)(3)[17]

Defendants argue that the remaining equitable relief at issue is reformation and surcharge based on the Ninth Circuit's ruling[18] and summary judgment should be granted as those remedies are not available to Plaintiffs. In opposition, Plaintiffs argue they have sufficiently provided facts to support the equitable remedies of reformation and surcharge.

29 U.S.C. § 1132(a)(3) provides that "a civil action may be brought . . . (3) by

---

[16]The Court recognizes that the Fifth Circuit and Eighth Circuit have declined to apply equitable tolling while a plaintiff exhausts administrative remedies. See Radford v. General Dynamics Corp., 151 F.3d 396, 399-400 (5th Cir. 1998); Mason v. Aetna Life Ins. Co., 901 F.2d 662, 664 (8th Cir. 1990). However, the facts and reasoning in both cases are not applicable to the instant case. In Radford, even though exhaustion was required for a breach of fiduciary duty claim, the Fifth Circuit concluded that the six year period § 1113(1) was a statute of repose; therefore, equitable tolling could not apply. Radford, 151 F.3d at 400. Radford did not address equitable tolling of the six year statute of limitations for the fraud or concealment exception. In Mason, the Eighth Circuit held that equitable tolling during the alleged exhaustion period was not justified as the defendant provided proper notice, although late, and the plaintiff failed to request review of the defendant's decision until three years later; therefore, the plaintiff was not diligent. Mason, 901 F.2d at 664.

[17]To the extent Plaintiffs Arwood and Rollason's claims are barred by the statute of limitations, the equitable relief analysis only applies to Plaintiffs Moyle and Sanders.

[18]Relying on the Ninth Circuit ruling stating that the case is remanded for determinations of fact and equitable relief in the form of reformation and surcharge, Defendants maintain that based on the law of the case, the only equitable relief remaining is reformation and surcharge. Plaintiffs respond that they seek all available equitable remedies such as reformation, restitution and surcharge but only address reformation and surcharge in response to Defendants' supplemental brief. Since the parties only address the relief of reformation and surcharge, and do not provide updated briefing on restitution, the Court only addresses the equitable relief of reformation and surcharge.

[10cv2179-GPC(MDD)]

a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). The United States Supreme Court has recognized that equitable estoppel, reformation and surcharge are three available equitable remedies provided under § 1132(a)(3). CIGNA Corp. v. Amara, 563 U.S. 421, 440-42 (2011).

### 1. Whether Plaintiffs have Identified a Breach by a Fiduciary

Defendants argue that Michael Plavnicky, the individual that Plaintiffs allege committed the breach of duty by misrepresenting they would receive past service credit for purposes of benefit accrual, was not a plan fiduciary when he made those alleged statements. (Dkt. No. 212-1 at 32.) Plaintiffs respond to another argument raised by Defendants that LMIC Liberty Mutual and LMGI are not fiduciaries as to count four and argue that Liberty Mutual and LMGI engaged in fiduciary conduct and delegated administration to the Retirement Board, who delegated drafting SPDs to the Human Resources Director. (Dkt. No. 233 at 47.)

ERISA defines fiduciary as the following,

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

In Varity Corp., in determining whether Varity's actions fell within the definition of a "fiduciary" with discretionary acts of plan "management" and "administration", the Supreme Court explained that "[c]onveying information about the likely future of plan benefits, thereby permitting beneficiaries to make an informed choice about continued participation, would seem to be an exercise of a power 'appropriate' to

carrying out an important plan purpose." <u>Varity Corp.</u>, 516 U.S. at 502-03 (offering beneficiaries detailed plan information in order to help them decide whether to remain with the plan is essentially the same kind of plan-related activity). Determining whether an individual is a fiduciary is a fact based inquiry into the "factual context in which the statements were made, combined with the plan-related nature of the activity, engaged in by those who had plan-related authority to do so . . . ." <u>Id.</u> at 503.

Here, the parties dispute who made the alleged misrepresentation or affirmatively omitted information and whether those persons or entities are "fiduciaries" as defined under 29 U.S.C. § 1002(21)(A). As there are genuine issue of material fact, the Court DENIES Defendants' motion for summary judgment on their argument that the alleged breach of fiduciary duty was not committed by fiduciaries.

### 2. Reformation

In their original summary judgment motion, Defendants argued that summary judgment should be granted on the equitable relief of reformation because Plaintiffs have failed to identify any evidence indicating the terms of the plan or Plaintiffs' alleged reliance on the alleged misrepresentations were induced by any malfeasance. (Dkt. No. 212-1 at 43.) In their supplemental motion, Defendants argue that reformation is not applicable in this case because it would be inconsistent with the unambiguous terms of the plan document; that Plaintiffs have not met the requirement of fraud or mistake and where the remedy sought equates to money damages for past harm. (Dkt. No. 296.) Plaintiffs oppose arguing they seek reformation based on Liberty Mutual's fraudulent concealment paired with Plaintiffs' unilateral mistake. (Dkt. No. 233 at 54.) Plaintiffs argue that under § 1132(a)(3), reformation is available to remedy the false, misleading or omitted information, and § 1132 (a)(1)(B) then allows interpretation of the reformed plan to provide benefits. (<u>Id.</u> at 53.)

Reformation is a form of equitable relief used to remedy false or misleading information provided by a plan fiduciary. <u>Amara</u>, 563 U.S. at 440. It is the power to reform contracts that failed to express the agreement of the parties and is available

"only in the event of mistake or fraud." Gabriel v. Alaska Elect. Pension Fund, 773 F.3d 945, 955 (9th Cir. 2014) (citing Amara, 563 U.S. at 440); see also Skinner v. Northrop Gumman Retirement Plan B, 673 F.3d 1162, 1166 (9th Cir. 2012). In the case of a mistake, reformation is an appropriate relief "(1) 'if there is evidence that a mistake of fact or law affected the terms of [a trust] instrument and if there is evidence of the settlor's true intent'; or (2) 'if both parties [to a contract] were mistaken about the content or effect of the contract' and the contract must be reformed 'to capture the terms upon which the parties had a meeting of the minds.'" Gabriel, 772 F.3d at 955 (quoting Skinner, 673 F.3d at 1166).

       "Under a fraud theory, a plaintiff may obtain reformation when either (1) '[a trust] was procured by wrongful conduct, such as undue influence, duress, or fraud,' or (2) a 'party's assent [to a contract] was induced by the other party's misrepresentations as to the terms or effect of the contract' and he 'was justified in relying on the other party's misrepresentations.'" Id. "A plaintiff must prove mistake and fraud by clear and convincing evidence." Amara v. CIGNA Corp., 925 F. Supp. 2d 242, 252 (D. Conn. 2012) (plaintiff established basis for reformation based on defendant's fraud along with plaintiffs' unilateral mistake). On remand from the Supreme Court in Amara, the district court held that there was mistake on one side and fraud or inequitable conduct on the other which justified reformation to accord with the parties' intent. Id. at 254-55, aff'd by Amara v. CIGNA Corp., 775 F.3d 510 (2d Cir. 2014). The district court concluded that CIGNA's deficient notice led the employees' misunderstanding as to the content of the contract and CIGNA did not take steps to correct the mistake. Id. at 253. "Instead, CIGNA affirmatively misled and prevented employees from obtaining information that would have aided them in evaluating the distinctions between the old and new plans." Id. "A contract may be reformed due to the mutual mistake of both parties, or where one party is mistaken and the other commits fraud or engages in inequitable conduct." Amara, 775 F.3d at 525.

Here, similar to the facts in <u>Amara</u>[19], Plaintiffs have raised issues of fact to survive summary judgment. Similar to <u>Amara</u>, here, as discussed above, Defendants misrepresented whether past service credit would apply to OGE employees and they "actively prevented employees" from learning this fact, <u>see</u> <u>Amara</u>, 775 F.3d at 526. Plaintiffs assert they were left with the mistaken impression that past service credit applied to the plan overalls while Liberty Mutual intentionally misrepresented and affirmatively omitted information about whether past service credit would apply to benefits accrual. When Kaerth questioned Long and Sweeney about whether past service credit would be counted towards benefits accrual after the Rehabilitation Agreement had been approved, Long and Sweeney responded that the issue was still under consideration and being negotiated. When Kaerth specifically told Long and Sweeney that OGE employees were under the impression that past service credit would apply to accrual of benefits, and they should clarify with employees, they indicated they would address the problem but they did not. The misleading statements and Liberty Mutual's failure to disclose despite notice that OGE employees had concerns about past service credit caused Plaintiffs' mistaken understanding that past service credit would apply to time they were employed with OGE. Accordingly, the Court DENIES Defendants' motion for summary judgment on the equitable relief of reformation.

The Court declines to address Defendants' new arguments in their supplemental motion for summary judgment. Defendants argue, in one sentence, that the <u>Gabriel</u> case precludes reformation where it would be inconsistent with the unambiguous terms of the plan documents. However, they conduct no analysis concerning this new argument raised and the Court declines to conduct a sua sponte analysis on this issue. As to Defendants' argument that reformation is foreclosed where the remedy sought

_____

[19]On appeal of this case, the Ninth Circuit noted that the factual allegations were "highly analogous" to <u>Amara</u>; therefore, the Court looks to the district court and subsequent Second Circuit appeal of <u>Amara</u> following remand from the United States Supreme Court for guidance.

would equate to money damages for past harms citing to <u>Parsons v. Bd. of Trustees of the Nevada Resort Assoc. - I.A.T.S.E. Local 702 Retirement Plan</u>, No 12cv299, 2012 WL 3319742 (D. Nev. Aug. 13, 2012) is not supportive. This case does not address recent binding authority on the issue of reformation.

**3. Surcharge**

Defendants argue that surcharge requires a showing of harm and causation which has not been made in this case including detrimental reliance or extraordinary circumstances. They argue that Plaintiffs had no pension benefits until Liberty Mutual purchased the assets of OGE around October 1, 1997 and therefore, Plaintiffs cannot show that "but for" Defendants' alleged breach, they would be entitled to the benefits they now seek. In addition, Plaintiffs failed to demonstrate the Liberty Mutual was unjustly enriched or that the fiduciaries gained a benefit as a result of the breach. Plaintiffs argue that Liberty Mutual was unjustly enriched by the value of the past service credit that was included in Liberty Mutual's bid.

Under the doctrine of surcharge, "[e]quity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." <u>Amara</u>, 563 U.S. at 441. In the Ninth Circuit, beneficiaries can obtain surcharge under an unjust enrichment theory where a fiduciary that obtained a benefit through a breach of duty can be ordered to return that benefit to the beneficiaries or through compensatory damages for actual harm caused by its breach of duty also known as make-whole surcharge. <u>Skinner</u>, 673 F.3d at 1167; <u>Gabriel</u>, 773 F.3d at 957.

"To obtain relief by way of surcharge, a beneficiary must show a breach of fiduciary duties by an ERISA trustee, that the violation injured her or him, and that the remedy of surcharge is available for the claimed injury by reference to traditional equitable principles." <u>Monper v. Boeing Co.</u>, 104 F. Supp. 3d 1170, 1185 (W.D. Wash. 2015) (citing <u>Gabriel</u>, 773 F.3d at 958). An ERISA fiduciary "can be surcharged under [Section 1132(a)(3)] only upon a showing of actual harm–proved (under the default

rule for civil cases) by a preponderance of the evidence." <u>Amara</u>, 563 U.S. at 444. Detrimental reliance is not required for surcharge but actual harm may consist of detrimental reliance. <u>Id.</u> The Ninth Circuit has applied the "but for" causation standard where "[t]he beneficiary can pursue the remedy that will put the beneficiary in the position he or she would have attained but for the trustee's breach." <u>Skinner</u>, 673 F.3d at 1167.

The district court, in <u>Amara</u>, determined that to evaluate a make-whole surcharge claim under § 502(a)(3), it should first consider whether Plaintiffs have met their burden of establishing "(1) that CIGNA breached its fiduciary duty, and (2) that Plaintiffs suffered a "related loss." <u>Amara</u>, 925 F. Supp. 2d at 259. Once Plaintiffs have met their burden, the Court must then decide whether Defendants can demonstrate that "the loss would have occurred in the absence of a breach of duty." <u>Id.</u>

Here, the threshold issue of whether Defendants breached their fiduciary duty has not been raised in Defendants' motion for summary judgment or supplemental summary judgment. This issue remains to be tried at trial. Because the threshold issue cannot be determined at this time, the Court DENIES Defendants' supplemental motion for summary judgment on the issue of surcharge.

## Conclusion

Based on the reasoning above, the Court GRANTS in part and DENIES in part Defendants' supplemental motion for summary judgment. The Court GRANTS Defendants' motion to the extent that Plaintiffs Rollason and Arwood's claims are barred by the statute of limitations and DENIES Defendants' motion as to the remaining claims.

IT IS SO ORDERED.

DATED: April 11, 2017

HON. GONZALO P. CURIEL
United States District Judge

[10cv2179-GPC(MDD)]