**NICHOLAS & TOMASEVIC, LLP**
    Craig M. Nicholas (SBN 178444)
    Alex M. Tomasevic (SBN 245598)
    David G. Greco (SBN 299635)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: dgreco@nicholaslaw.org

**WINTERS & ASSOCIATES**
    Jack B. Winters, Jr. (SBN 82998)
    Georg M. Capielo (SBN 245491)
    Sarah Ball (SBN 292337)
1901 First Avenue, Suite 400
San Diego, CA 92101
Tel: (619) 234-9000
Email: jackbwinters@earthlink.net
Email: gcapielo@einsurelaw.com
Email: sball@einsurelaw.com

Attorneys for Plaintiffs Geoffrey Moyle,
Pauline Arwood, Thomas Rollason, and
Jeannie Sanders

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEOFFREY MOYLE, an individual, PAULINE ARWOOD, an individual, THOMAS ROLLASON, an individual, and, JEANNIE SANDERS, an individual, on behalf of themselves and all others similarly situated, and ROES 1 through 500, inclusive,<br><br>                              Plaintiffs,<br><br>v.<br><br>LIBERTY MUTUAL RETIREMENT BENEFIT PLAN; LIBERTY MUTUAL RETIREMENT PLAN RETIREMENT BOARD; LIBERTY MUTUAL GROUP INC., a Massachusetts company; LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts company; and, DOES 1 through 50, inclusive,<br><br>                              Defendants. | CASE NO.:10-cv-02179-GPC-MDD<br><br>**PLAINTIFFS'MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>**Date**:        March 2, 2018<br>**Time**:        1:30 p.m.<br>**Courtroom**:  2D, Suite 2190<br>                    221 W Broadway<br>                    San Diego, CA 92101<br><br>**Judge**: Hon. Gonzalo P. Curiel<br>**Magistrate**: Hon. Mitchell D. Dembin |

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................. 1

II.  SUMMARY OF THE SETTLEMENT ................................. 2

III. SUMMARY OF LITIGATION ........................................... 3

     A.   The Underlying Dispute ............................................. 3

     B.   Plaintiffs' Complaint ................................................. 5

     C.   The Years of Investigation, Discovery, and Appeals .......... 6

     D.   The Parties Reach a Resolution after Multiple In-Person
          Mediation Sessions in Atlanta and Los Angeles. ............ 9

IV.  TERMS OF THE SETTLEMENT ...................................... 10

     A.   Over $30 Million in Added Retirement Benefits to the Class. ...... 10

     B.   Liberty Mutual Agreed to Pay Plaintiffs' Attorneys' Fees and
          Costs. ...................................................................... 11

V.   THE COURT SHOULD AWARD THE ATTORNEYS' FEES

     SOUGHT. ....................................................................... 12

     A.   Plaintiffs' Counsel are Entitled to Fees. ......................... 12

     B.   The Requested Fee is Fair and Reasonable. ..................... 13

          1.   The Requested Fee is Reasonable Under the Percentage
               of Recovery Approach. ........................................ 13

               a.   This Complex Litigation Involved Significant Risk ...... 15

               b.   Class Counsel Achieved an Excellent Recovery ......... 16

               c.   A High Level of Skill Was Required to Succeed ......... 17

               d.   The Contingent Nature of the Fee Justifies the
                    Award ...................................................... 18

     C.   The Lodestar Cross-Check Confirms the Reasonableness of the

          Fee Award ................................................................ 19

          1.   The Hourly Rates are Reasonable ............................ 20

          2.   The Hours Expended Are Also Reasonable. ................ 21

          3.   Counsel Would Normally Be Entitled to a Multiplier, But
               is Not Seeking one Here. ..................................... 22

**VI.    CLASS COUNSEL SHOULD ALSO BE REIMBURSED FOR THEIR REASONABLE LITIGATION EXPENSES** ................................................................. 23

**VII.    CONCLUSION** ............................................................................................. 24

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

**CASES**

*Beaver v. Tarsadia Hotels*, No. 11cv01842GPC(KSC),
   2017 WL 4310707, at *13 (S.D. Cal. Sept. 28, 2017)......................................23

*Blum v. Stenson*,
   465 U.S. 886 (1984)..............................................................................19, 20

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)..............................................................................14, 15

*Boyd v. Coventry Health Care Inc.*,
   299 F.R.D. 451 (D. Md. 2014) ......................................................................14

*Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. Oct. 11,
   2016), *appeal docketed*, No. 16-56688 (9th Cir. Nov. 10, 2016)....................21

*Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.)
   Pension Fund v. CPC Logistics, Inc.,* 698 F.3d 346 (7th Cir. 2012) ..............18

*Christensen v. Stevedoring Servs. of Am.*,
   557 F.3d 1049 (9th Cir. 2009) ......................................................................20

*CIGNA Corp. v. Amara*,
   563 U.S. 421 (2011).....................................................................................18

*Evans v. Jeff D.*,
   475 U.S. 717 (1980).....................................................................................12

*Ferland v. Conrad Credit Corp.*,
   244 F.3d 1145 (9th Cir. 2001) ......................................................................19

*Gutierrez v. Wells Fargo Bank, N.A.*, No. C07-5923WHA,
   2015 WL 2438274 (N.D. Cal. May 21, 2015)..................................................21

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ......................................................................13

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ...........................................................................22

*Hemphill v. S.D. Ass'n of Realtors, Inc.*,
   225 F.R.D. 616 (S.D. Cal. 2004) ....................................................................22

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983).....................................................................................16

*In re Bluetooth Headset Products Liability Litigation*,
   654 F.3d 935 (9th Cir. 2011) ........................................................................16

*In re Colgate-Palmolive Co. ERISA Litig.*,
   36 F. Supp. 3d 344 (S.D.N.Y. 2014) ..............................................................18

*In re Glob. Crossing Securities and ERISA Litig.,*
    225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................23

*In re Google Referrer Header Privacy Litig.,*
    869 F.3d 737 (9th Cir. 2017) ..........................................................................19

*In re Hydroxycut Marketing and Sales Practices Litig.,* Nos.
    09md2087BTM(KSC), 09cv1088BTM(KSC),
    2014 WL 6473044 (S.D. Cal. Nov. 18, 2014) .................................................24

*In re Immune Response Sec. Litig.,*
    497 F. Supp. 2d 1166 (S.D. Cal. May 31, 2007) ............................................24

*In re Ins. Brokerage Antitrust Litig.,*
    579 F.3d 241 (3d Cir. 2009) ...........................................................................22

*In re Marsh ERISA Litig.,*
    265 F.R.D. 128 (S.D.N.Y. 2010) ....................................................................14

*In re Omnivision Techs., Inc.,*
    559 F. Supp. 2d 1036 (N.D. Cal. 2008)....................................................16, 17

*In re Online DVD-Rental Antitrust Litig.,*
    779 F.3d 934 (9th Cir. 2015) ..........................................................................15

*In re Pacific Enters. Sec. Litig.,*
    47 F.3d 373 (9th Cir. 1995) ............................................................................14

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
    19 F.3d 1291 (9th Cir. 1994) ..........................................................................18

*Keith v. Volpe,*
    501 F. Supp. 403 (C.D. Cal. 1980) .................................................................23

*Kerr v. Screen Extras Guild, Inc.,*
    526 F.2d 67 (9th Cir. 1975) ............................................................................19

*Ketchum v. Moses,*
    24 Cal. 4th 1122 (2001) ............................................................................19, 20

*Laffitte v. Robert Half Int'l, Inc.,*
    1 Cal. 5th 480 (2016) ......................................................................................14

*Landro v. Glendenning Motorways, Inc.,*
    625 F.2d 1344 (8th Cir. 1980) ........................................................................13

*Lealao v. Beneficial Cal., Inc.,*
    82 Cal. App. 4th 19 (2000) .............................................................................19

*Lobatz v. U.S. W. Cellular of Cal., Inc.,*
    222 F.3d 1142 (9th Cir. 2000) ........................................................................22

*Lopez v. Youngblood,* No. CV–F–07–0474 DLB,
    2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ...............................................15

*Makaeff v. Trump Univ., LLC*, No. 10cv0940GPC(WVG),
2015 WL 1579000 (S.D. Cal. Apr. 9, 2015) ..................................................21

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d 423 (2d Cir. 2007) ........................................................................14

*McElwaine v. US W., Inc.*,
176 F.3d 1167 (9th Cir. 1999) .....................................................................13

*Morales v. City of San Rafael*, 96 F.3d 359 (9th Cir. 1996), *reh'g denied, amended on other grounds* 108 F.3d 981 (9th Cir. 1997) ..................19

*Morris v. Lifescan, Inc.*,
54 Fed. Appx. 663 (9th Cir. 2003) ...............................................................14

*Moyle v. Liberty Mutual Retirement Benefit Plan*,
823 F.3d 948 (9th Cir. 2016) .........................................................................8

*Newman v. Piggie Park Enters.*,
390 U.S. 400 (1968)......................................................................................13

*POM Wonderful, LLC v. Purely Juice, Inc.*,
2008 WL 4351842 (C.D. Cal. Sept. 22, 2008) .............................................22

*Powers v. Eichen*,
229 F.3d 1249 (9th Cir. 2000) .....................................................................14

*Savani v. URS Prof'l Sol. LLC*,
2014 WL 172503 (D.S.C. Jan. 15, 2014) .....................................................14

*Serrano v. Unruh*,
32 Cal. 3d 621 (1982) ..................................................................................20

*Shirrod v. Dir., OWCP*,
809 F.3d 1082 (9th Cir. 2015) .....................................................................20

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) .....................................................................13

*Smith v. CMTA-IAM Pension Trust*,
746 F.2d 587 (9th Cir. 1984) .......................................................................13

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ..................................................................13, 23

*Steiner v. Am. Broad. Co., Inc.*,
248 Fed. Appx. 780 (9th Cir. 2007) .............................................................23

*Stephens v. US Airways Grp. Inc.*, No. 07-1264-RMC,
2015 WL 194749 (D.D.C. April 30, 2015) ...................................................14

*Syers Props. III v. Rankin*,
226 Cal. App. 4th 691 (2014) .......................................................................19

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
   896 F.2d 403 (9th Cir. 1990) ............................................................. 20

*Vasquez v. Coast Valley Roofing, Inc.*,
   266 F.R.D. 482 (E.D. Cal. 2010) ........................................................ 14

*Vincent v. Hughes Air West, Inc.*,
   557 F.2d 759 (9th Cir. 1977) ............................................................. 23

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ...................................................... passim

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ................................................................ 14

*Williams v. MGM-Pathe Comm. Co.*,
   129 F.3d 1026 (9th Cir. 1997) ...................................................... 14, 15

*Zest IP Holdings, LLC v. Implant Direct MFG., LLC*,
   No. 10CV0541GPC(WVG), 2014 WL 6851612
   (S.D. Cal. Dec. 3, 2014)..................................................................... 21

**STATUTES**

Fed. R. Civ. P. 23 ..................................................................... 12, 13

**OTHER AUTHORITIES**

1 Alba Conte, Attorney Fee Awards § 2.19 (3d ed. 2004) .................................... 23

# I.        INTRODUCTION

After more than fourteen years of disputes, twelve years of litigation, two trips to the Ninth Circuit Court of Appeals, more than seven years of class action litigation, nearly $400,000 in out of pocket costs, as well as more than 18,000 hours of attorney time spent in this class action alone, Plaintiffs finally resolved this complicated ERISA case against Defendant Liberty Mutual.

In the end, Class Counsel obtained for the Class, and this Honorable Court has preliminarily approved, a settlement worth over $30 million in additional retirement benefits to the Class, not counting additional amounts Liberty must pay toward administering the new benefits. Class Counsel now respectfully applies for an award of fees as agreed to by the parties after arms-length negotiations. Class Counsel seeks less than 20% of the overall settlement value, with none of the fees to be paid from the Class benefit obtained. The fees requested represent a negative lodestar on the time spent by Class Counsel. With respect to out-of-pocket costs, Class Counsel agreed to accept $250,000, even though the total costs are over $385,000. Liberty Mutual does not oppose the fee or cost reimbursement request and neither does any Class member as of the time of this filing.

The risks taken by Class Counsel were extraordinary. In August 2013, Class Counsel had already lost the case on summary judgment despite thousands of hours of efforts and hundreds of thousands in expenses. Counsel for Liberty Mutual filed a cost bill of $176,457.40 against the Plaintiffs (ECF No. 257), and the prospects appeared grim to recover anything for the Class, let alone satisfy Liberty Mutual's cost bill. But Class Counsel persevered, never gave up on the Class, and fought for the Class retirees until accomplishing a fair result.

Against this backdrop, an award of attorneys' fees below the Ninth Circuit benchmark and reflecting a negative multiplier, is more than justified. An award of $250,000 in costs—far less than spent—is also warranted and reflects that Class Counsel put the Class first in this case, from beginning to end.

MEMORANDUM OF POINTS AND AUTHORITIES: MOTION FOR ATTORNEYS' FEES

## II.   SUMMARY OF THE SETTLEMENT

The settlement provides Class members an additional credit towards eligible retirement benefits under the Liberty Mutual Retirement Plan ("The Plan").  *See, generally,* ECF No. 333-2 (The Settlement).  This additional benefit represents half of the years of service the class members worked at another insurance company that Liberty Mutual acquired in the 1990s:  Golden Eagle Insurance Company.

The original Plan formula already paid a retiree more the longer that retiree worked for Liberty Mutual in the past. That formula is unchanged.  Class Counsel achieved the granting of an additional amount that now factors in not just the time the class member worked for Liberty Mutual, but also half of the years the retiree/class member worked at Golden Eagle before Liberty Mutual acquired Golden Eagle.  The increase in the years worked, or "past service credit," means significantly higher retirement benefit payments for class members.  Some Class Members will collect, for example, over $100,000 each as a result of this settlement.  Nicholas Decl., ¶ 27.

For class members who have already retired and are already collecting benefits, they may elect to take their extra benefit as either a lump sum payment or, at the class member's option, an annuity spread over (added to) their monthly retirement payment stream.  Those who have not yet started collecting retirement will receive their added benefit just like they normally would under The Plan—*e.g.*, monthly retirement payments, but now at higher amounts in light of this settlement.

Liberty has agreed to fund the settlement and to pay for their benefits administrator (Aon Hewitt) to manage its distribution under the auspices of the Plan and their fiduciary obligations imposed by ERISA.  This will cost Liberty over $1 million in administrative fees alone.  Liberty will also pay for a third-party settlement administrator to deliver notice to the class members.  The estimated value to the class from this settlement, before any consideration of attorney fees or costs that Liberty will also pay, is calculated to be over $30 million dollars in terms

1  of past and future retirement monies.  *See* Declaration of Claude Poulin ("Poulin
2  Decl."), ¶ 18.

3      At issue here is Class Counsel's request for attorneys' fees in light of the
4  settlement.  The parties separately negotiated a fee amount after, and in addition to,
5  agreeing on the "past service credit" component described above.  All negotiations
6  were facilitated by an experienced and renowned mediator and the settlement
7  reflects, ultimately, the parties' adoption of that Neutral's proposal for resolution
8  after the parties themselves had reached impasse.

9      The request for fees and costs is reasonable.  Twenty percent is well within,
10  and in fact lower than, the percentage typically awarded in similar cases.  The
11  reasonableness of the request is further demonstrated when cross-checking it by
12  Class Counsel's actual lodestar in the case—for which they are seeking no
13  multiplier.  In short, this settlement, including the fee request, embodies exactly
14  what worthwhile settlements should embody: tough, arms-length negotiations
15  among experienced counsel who armed themselves with years of discovery and
16  data, weighed the complicated risks, and obtained a good faith compromise and real
17  dollars for a class of deserving citizens.

18  **III.   SUMMARY OF LITIGATION**

19      **A.   The Underlying Dispute[1]**

20      Learning and developing the below facts and theories took years of
21  investigation and discovery, requiring a deep dive into Conservation Court
22  proceedings that took place in Northern California back in the mid-1990s, a

---

25  [1] The underlying facts of the case have been described, in detail, in several
26  recently-filed documents such as the Court's recent ruling on Liberty's Motion for
   Summary Judgment (ECF No. 308) and Plaintiffs' unopposed Motion for
27  Preliminary Approval of the Settlement (ECF No. 332).  The case will be discussed
   again in Plaintiffs' forthcoming Motion for Final Approval.  Therefore, for
28  efficiency's sake, only a summary is provided here.

protracted administrative review process, and then years of class member interviews, coast-to-coast discovery, and rigorous data analysis.

Ultimately, Plaintiffs' theory was that Liberty Mutual misrepresented The Plan benefits to a group of new employees that Liberty Mutual hoped to acquire along with the acquisition of certain assets of an insolvent insurance company that was then in conservatorship in California state court: Golden Eagle Insurance Company ("Old Golden Eagle" or "OGE").  ECF No. 308, Order Granting in Part and Denying in Part Defendants' Supplemental Motion for Summary Judgment ["2017 MSJ Order"], at 6; *see generally,* ECF No. 178, Third Amended Complaint ("TAC") (the operative complaint).

Liberty Mutual wanted to acquire certain assets of OGE and was in a bidding war with American International Group, Inc. ("AIG") in the Conservatorship Court. *Id.*   In order to increase its chances to win the bidding war, Liberty Mutual submitted an enhanced bid which included improved employee benefits such as participation in Liberty Mutual's Retirement Plan, which had benefits not previously offered by OGE.  Because AIG was not offering the same benefits, the enhanced Liberty Mutual offer was leveraged to retain OGE employees and to increase the likelihood of court approval of its bid.  *Id.*

Plaintiffs allege, but Liberty Mutual vigorously disputes, that Liberty Mutual misled the OGE employees with respect to what would happen with "past service credit" if the employees accepted employment with Liberty Mutual and became participants in The Plan.   Plaintiffs further allege that, through a series of misrepresentations and material omissions, Liberty Mutual intentionally led Plaintiffs and their fellow class members to believe that their pension benefit (*i.e.*, their monthly retirement payments) would reflect the past years they had worked for OGE prior to the acquisition by Liberty Mutual.

Liberty Mutual, on the other hand, took the position that OGE employees were never told they would receive OGE past service credit for purposes of

calculation of benefits payable under the Plan, but were told only that past service credit would be given for certain limited purposes, such as eligibility for participation and vesting.   Liberty Mutual's position was that it had always accurately and fairly described the contours of the Retirement Plan. Liberty contended that the Plan's actual terms did not provide for such credit, and that Plaintiffs' claims were all barred by the statute of limitations.

### B.   Plaintiffs' Complaint

Each of the Plaintiffs, in 2008, made administrative claims directly with Liberty Mutual for increased retirement benefits.   Liberty Mutual denied those claims and denied the Plaintiffs' subsequent appeals.   After the denial of the Administrative Appeal in 2009, Plaintiffs and their counsel associated in co-counsel and then pursued the dispute as a class action.[2]   In October of 2010, Plaintiffs filed this action under ERISA, 29 U.S.C. § 1001 *et. seq.*, on behalf of the OGE plan participants, pleading causes of action for: (1) Determination of the Terms of the Plan and Clarification of Rights to Future Benefits under 29 U.S.C. § 1132(a)(1)(B), (2) To Obtain Equitable Relief Under 29 U.S.C. § 1132(a)(3), and (3) for violation of various Federal Regulations governing proper disclosures under ERISA. *See* ECF No. 178, TAC. Plaintiffs included breach of fiduciary duty claims under 29 U.S.C. § 1132(a)(2).

---

[2] The entire history of this dispute reaches back about 15 years, when individual Plaintiff Geoffrey Moyle first filed an action, in 2002, against Golden Eagle Insurance and Liberty Mutual alleging eleven causes of action related to employment and pension benefits due under the Liberty Mutual Retirement Plan. ECF No. 308, 2017 MSJ Order, at 2, fn.1. The case bounced from state to federal court.   Ultimately, that case was dismissed for failure to exhaust administrative remedies related to Moyle's claim for retirement benefits. *Id.*   In January of 2008, Moyle filed his administrative claim directly with Liberty. *Id.*   Plaintiffs Rollason, Arwood, and Sanders filed their claims later that same year. *Id.* at 3:16–20.   Liberty denied those claims. *Id.* at 3:16–4:2.   All Plaintiffs then sought administrative review of that initial denial, which Liberty Mutual finally rejected in October of 2009. *Id.*   Having exhausted their administrative remedies, the named Plaintiffs filed this case as a class action in the District Court on October 19, 2010.

MEMORANDUM OF POINTS AND AUTHORITIES: MOTION FOR ATTORNEYS' FEES

### C.   The Years of Investigation, Discovery, and Appeals

Over the next eight years, at least 15 attorneys and support staff worked on the case on behalf of Plaintiffs.  The online docket for this case is 48 printed pages and covers, so far, 337 entries.  After years of pre-complaint investigation and administrative proceedings, Plaintiffs filed their initial Complaint, then an Amended Complaint in October of 2010.  *See* ECF No. 3, First Amended Complaint ("FAC").

Liberty Mutual then filed a Motion to Dismiss.  ECF No. 10.  Plaintiffs successfully survived the Motion.  *See* ECF No. 18 (denying in part and granting in part the Motion to Dismiss, including denying the Motion to dismiss the breach of fiduciary duty claim).[3]

Plaintiffs then applied for, and were given, leave to file a Second Amended Complaint over Liberty Mutual's objection.   *See* ECF Nos. 33, 38, and 41.  Plaintiffs filed their Second Amended Complaint and then Liberty Mutual answered in October of 2011, citing 45 affirmative defenses.  ECF No. 59, Defendant's Answer.

Both sides engaged in extensive discovery throughout the case.  Declaration of Craig M. Nicholas ["Nicholas Decl."], ¶ 12.  Much of the discovery occurred cross country in several different states.  *Id.*  Discovery and investigation also included work in Sacramento and San Francisco relative to the Conservatorship issues.  *Id.*

Often the parties disagreed strenuously over the scope of allowable discovery, requiring the filing of numerous contested discovery motions over the years.  *See, e.g.,* ECF Nos. 159, 164, and 165.  In the end, the parties served hundreds of interrogatories and document requests.  Nicholas Decl., ¶ 13.  The final

---

[3] Specifically, the Court granted Defendants' motion to dismiss the Complaint's ERISA penalty claims against all Defendants except the Board, as well as Defendants' motion to dismiss Plaintiffs' demand for a trial by jury. *See* ECF No. 18 at pp. 8, 10.

MEMORANDUM OF POINTS AND AUTHORITIES: MOTION FOR ATTORNEYS' FEES

document production included millions of pages covering 36.3 gigabytes of Electronically Stored Information ("ESI") that both sides had to review and analyze.[4]  *Id.*  The parties served more than one hundred document and deposition subpoenas.  Nicholas Decl., ¶ 14.  All told, the parties took 28 depositions, from San Diego to Boston, to discover the merits of this case and prepare it for trial.  *Id.*  Plaintiffs also hired four experts and consultants to assist them with the case.  *Id.*  Defendants hired several experts of their own.  *Id.*

In December of 2011, Plaintiffs filed their motion to certify the case as a class action.  ECF No. 75; Nicholas Decl. ¶ 15.  Defendants opposed.  The motion work was complicated and voluminous.  Nicholas Decl., ¶ 15.  On April 10, 2012, the Court granted Plaintiffs' motion to certify, also appointing the named plaintiffs as class representatives and their counsel as class counsel.  ECF No. 113.  The Court certified the Class as a non-opt-out class under Federal Rules of Civil Procedure, Rule 23(b)(1).  *Id.*

Liberty Mutual then filed a Motion for Reconsideration of the Order certifying the Class, along with a Motion to stay all proceedings pending Liberty Mutual's Petition to appeal under Rule 23(f).  ECF No. 119.  The Court denied the Motion for Reconsideration, but granted the request for a stay.  ECF No. 126.  The stay was short-lived, however, because the Ninth Circuit denied the Petition to appeal the next month.  *See* ECF No. 128.  The parties then sent out a class notice and continued to investigate the case and conduct discovery.

On January 3, 2013, Defendants filed a motion for summary judgment against all four causes of action.  ECF No. 212.  Plaintiffs filed a motion for partial summary judgment ("MSJ") on the second and fourth causes of action and on certain of Defendants' affirmative defenses.  ECF No. 213.  The briefing and

---

[4] The initial data library from which these 36 gigabytes were culled was over 3 terabytes.  Nicholas Decl., ¶ 13.  In the end, millions of pages had to be processed, reviewed, and/or analyzed.  *Id.*

MEMORANDUM OF POINTS AND AUTHORITIES: MOTION FOR ATTORNEYS' FEES

1  exhibits submitted by both sides during the first round of MSJ proceedings totaled

2  over 10,800 pages of briefing and evidence. Nicholas Decl., ¶ 16. On July 1, 2013,

3  the Court granted Defendants' motion for summary judgment on all four causes of

4  action in the third amended complaint, and it denied Plaintiffs' motion for summary

5  judgment. ECF No. 252. This effectively ended the case.

6      Undeterred, Plaintiffs filed a timely appeal regarding the dismissal of the

7  first, second, and fourth causes of action. Defendants cross-appealed, claiming that

8  the suit was time-barred and that class certification was not proper. *See Moyle v.*

9  *Liberty Mutual Retirement Benefit Plan*, 823 F.3d 948, 952 (9th Cir. 2016). On

10 May 20, 2016, in a published opinion, the Ninth Circuit revived the case, restoring

11 the second cause of action for equitable relief under 29 U.S.C. § 1132 (a)(3). *Id.*

12     As to the second cause of action, the Ninth Circuit concluded that a factual

13 dispute existed whether "Liberty Mutual breached its fiduciary duty by failing to

14 inform Golden Eagle employees that past service credit for the purpose of benefit

15 accrual did not include the period prior to October 1, 1997, when they were first

16 employed by Golden Eagle." *Id.* at 962. The Ninth Circuit remanded "for

17 determinations of fact and equitable relief in the form of reformation and

18 surcharge." The appellate court also declined to consider "Liberty Mutual's

19 argument that the statute of repose in 29 U.S.C. § 1113 acts to bar some of

20 Appellants' claims under 29 U.S.C. § 1132(a)(3)." *Id.* It stated that the District

21 Court could consider such arguments on remand. *Id.* The Ninth Circuit also found

22 that class certification was proper. *Id.*

23     The District Court then considered the arguments left undecided by the Ninth

24 Circuit. Defendants filed a supplemental brief with the District Court on October

25 28, 2016. ECF No. 296. Oppositions and replies ensued per an amended briefing

26 schedule. ECF Nos. 298-99. The Court held oral argument on the Motion for

27 Summary Judgment on December 16, 2016. *See* ECF No. 301. Afterward, the

28 Court directed the parties to file additional briefing, which they all did in January of

2017.  *See* ECF Nos. 304, 305, and 307.  Ultimately, on April 11, 2017, the Court denied in part Defendants' motion for summary judgment.  ECF No. 308, 2017 MSJ Order at 42.  In doing so, the Court preserved the two causes of action that the Ninth Circuit revived.  The Court did find, however, that two of the named Plaintiffs' claims were time-barred.  *Id.*

The Court then set deadlines for Pretrial Disclosures and set a final Pretrial Conference for June 16, 2017.  *See* ECF No. 309, Amended Scheduling Order. Twelve days later, Liberty Mutual filed a Motion for Reconsideration of the Order granting in part and denying in part their Motion for Summary Judgment.  ECF. No. 311.  That Motion was pending when the parties began to seriously explore settlement before the impending trial.

### D. The Parties Reach a Resolution after Multiple In-Person Mediation Sessions in Atlanta and Los Angeles.

After this Court's Order on the motion for summary judgment, the parties engaged experienced class action and ERISA mediator Hunter Hughes, Esq. Nicholas Decl., ¶ 17.  The parties travelled to Atlanta for a full-day session of mediation.  *Id.*  The case did not resolve.  *Id.*  But the parties did agree to attend, and did attend, a second full-day mediation with Mr. Hughes in Los Angeles weeks later.  *Id.*  The parties did not resolve the case during that second session, but did make progress toward resolution.

Mr. Hughes continued to work with the parties for weeks over the phone. Nicholas Decl., ¶ 18.  Ultimately, Mr. Hughes succeeded in getting the parties to agree on the "past service credit" and, separately, on attorneys' fees.  *Id.*  Both numbers were separately proposed and recommended by Mr. Hughes.  *Id.*  The parties formally accepted Mr. Hughes' proposals on August 8, 2017.  *Id.*

[*rest of page intentionally left blank*]

MEMORANDUM OF POINTS AND AUTHORITIES: MOTION FOR ATTORNEYS' FEES

## IV.   TERMS OF THE SETTLEMENT

### A.   Over $30 Million in Added Retirement Benefits to the Class.

The settlement provides millions in both <u>past</u> catch-up retirement payments as well as <u>future</u> retirement payments to a class of retirees.  Every former employee of Golden Eagle who was or is employed by Liberty Mutual after the acquisition in 1997, and who would ordinarily be entitled to participate in The Plan, will now receive a larger retirement safety net.[5]

The Plan will be amended, consistent with ERISA, to provide a "New Benefit" (as defined in the Settlement Agreement) in addition to the existing retirement benefits provided by the Plan. The amendment will result in a larger retirement benefit through a grant of "past service credit" equivalent to half of the time that each Settlement Class Member worked for OGE before coming to work for Liberty Mutual on October 1, 1997.  Settlement, at ¶ 13.1.

Moreover, Settlement Class Members can choose to take their additional benefits in either a lump sum or an annuity over time.[6]   Settlement, ¶¶ 13.2.1–13.2.3.   Election Kits will be delivered to each Settlement Class Member at the address on record with the Plan.   All-told, the settlement will generate over $30

---

[5] The Settlement Agreement defines the Settlement Class as: "all former employees of Golden Eagle Insurance Company who are or were employed by Liberty Mutual Group, Inc. and/or Liberty Mutual Insurance Company, including, but not limited to, Golden Eagle Insurance Corporation, starting October 1, 1997, who participated or are participating in the Liberty Mutual Retirement Benefit Plan, have met all other vesting and eligibility requirements for benefits under the terms of the Plan, and who were or will be denied credit for all years of service with Golden Eagle Insurance Company for the purposes of calculating all benefits owed to them under the Plan from October 1, 1997 forward, or, in the case of any such persons who are deceased, their beneficiaries as determined under the Plan." Settlement, ¶ 1.45.

[6] This provision itself was a small victory that had to be separately negotiated.  The tax implications alone for the retiree, in taking a large lump sum now, versus an annuity over time, can be significant depending on the retiree's personal circumstances.   The retiree's choice will not necessarily be in Liberty's best interests, whether it concerns Liberty's tax obligations or otherwise.  In short, Class counsel had to weigh many complicated factors in crafting a final deal.

MEMORANDUM OF POINTS AND AUTHORITIES: MOTION FOR ATTORNEYS' FEES

million in catch-up payments for past benefits, plus years of future payments.[7]  *See* Poulin Decl., ¶ 18.

Defendants will also pay the costs and expenses for its third-party administrator to calculate the amount of the New Benefit to be paid to each Settlement Class Member under the Plan as amended pursuant to the settlement agreement, and, ultimately, to issue those payments.  Settlement, ¶ 13.2.  Liberty Mutual will also pay for the delivery of the Notice of Class Action Settlement to each member of the Class as originally certified by the Court.  *See* ECF 333-2, Settlement Agreement, ¶ 15.1.  Liberty estimates that these additional expenses will add $1 million or more to the value of the overall settlement.  Nicholas Decl. ¶ 18.

## B.  Liberty Mutual Agreed to Pay Plaintiffs' Attorneys' Fees and Costs.

The Settlement provides for Liberty Mutual separately to pay up to $7.5 million in attorneys' fees to Class Counsel for their work over the years, as well as up to $250,000 to reimburse the out-of-pocket costs.  While substantial work and expense was incurred prior to the final denial of Plaintiffs Administrative Appeal, none of this time or costs are included in the fee request.  The negotiated fees are less than the lodestar fees incurred by Class Counsel over the years.  Likewise, the reimbursable costs represent a compromise that is significantly less than the actual costs that Class Counsel had to pay out-of-pocket since the case started in 2010, totaling over $385,000.  Importantly, these fees and costs are in addition to, and are separate from, the New Benefit negotiated for the Class Members.  Those items were negotiated separately with the help of the Mediator.

---

[7] Because the settlement deals in future retirement payments as well as a number of other assumptions, it is impossible to come up with an exact present dollar value for all the benefits.  The final numbers will depend on things like how long the retiree lives.  However, Plaintiffs' Actuarial Expert, Mr. Claude Poulin, was able to use class member data, standard mortality tables, and prevailing interest rates (among other things) to value the benefits at $30,113,686.  *See* Poulin Decl., ¶¶ 16-18.

MEMORANDUM OF POINTS AND AUTHORITIES: MOTION FOR ATTORNEYS' FEES

## V.   THE COURT SHOULD AWARD THE ATTORNEYS' FEES SOUGHT.

The difficulty of the case and the work needed to achieve this result were substantial.   At bottom, the case was about what was communicated or not communicated to a group of over 1,100 workers in 1997.   Like all deception cases, the case would be won or lost on the details, on circumstantial evidence, and on the efforts expended in reconstructing and proving a long-ago history.

Plaintiffs' challenges were compounded by an able and well-resourced opponent (Liberty Mutual Insurance Company) that did not take allegations of "fraud" lightly, as well as their able counsel (Jackson & Lewis and, later, Mayer Brown).   Furthermore, the complicated subject matter (ERISA) demanded special skill and effort.

Finally, this case died on summary judgment.   Undeterred, Plaintiffs' counsel resuscitated it.   Then, only after the close of all discovery, only when on the doorstep of trial, and only after multiple mediation sessions, counsel finally engineered a result that put over $30 million in the hands of these retirees.   Class Counsel embarked on these efforts without any guarantee that their years of commitment, or their hundreds of thousands of dollars invested, would ever see a penny in return.

Class Counsels' fee request is awardable, reasonable and should be approved.

### A.   Plaintiffs' Counsel are Entitled to Fees.

In a certified class action such as this one, the court may award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).   The Supreme Court has ruled that the parties to a class action properly may negotiate not only the settlement of the action itself, but also the payment of attorneys' fees. *See Evans v. Jeff D.,* 475 U.S. 717, 734–35 (1980).

MEMORANDUM OF POINTS AND AUTHORITIES: MOTION FOR ATTORNEYS' FEES

Furthermore, in discussing ERISA fee awards, the Ninth Circuit has held that ERISA itself "should be liberally construed in favor of protecting participants in employee benefits plans." *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir. 1984); *accord, e.g.*, *McElwaine v. US W., Inc.*, 176 F.3d 1167, 1172 (9th Cir. 1999). It should be "read broadly to mean that a plan participant or beneficiary, if he prevails in his suit under § 1132 to enforce his rights under his plan, 'should ordinarily recover attorney's fees unless special circumstances would render such an award unjust.'" *Smith*, 746 F.2d at 589 (quoting *Landro v. Glendenning Motorways, Inc.*, 625 F.2d 1344, 1356 (8th Cir. 1980)) (quoting in turn *Newman v. Piggie Park Enters.*, 390 U.S. 400, 402 (1968)).

## B.    The Requested Fee is Fair and Reasonable.

The attorneys' fees sought are reasonable and less than 20% of the total recovery. In deciding whether a requested fee amount is appropriate, the Court's ultimate role is to determine whether such amount is "fundamentally 'fair, adequate, and reasonable.'" *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)). The Ninth Circuit recognizes two methods for doing so in civil class actions: the percentage of recovery method and the lodestar/multiplier method. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Here, the requested fee is reasonable when analyzed under either method.

### 1.    *The Requested Fee is Reasonable Under the Percentage of Recovery Approach.*

Where a settlement establishes a monetary benefit for the class members, it is both appropriate and preferred to award attorneys' fees based on a percentage of the total monetary benefit obtained. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Indeed, federal courts, including the Ninth Circuit, have developed a strong preference for using a percentage-of-the-recovery method. *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

MEMORANDUM OF POINTS AND AUTHORITIES: MOTION FOR ATTORNEYS' FEES

The percentage method has several recognized advantages such as relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek settlement and avoid unnecessarily prolonging the litigation. *See Laffitte v. Robert Half Int'l, Inc.,* 1 Cal. 5th 480, 503 (2016); *accord Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 121 (2d Cir. 2005).

The Ninth Circuit's "benchmark" for awarding fees is 25% of the total recovery, but percentages in the range of 20% to 33⅓% of the value of the recovery are typical. *See Powers v. Eichen,* 229 F.3d 1249, 1256 (9th Cir. 2000); *Vizcaino v. Microsoft Corp.,* 290 F.3d at 1050 (affirming a 28% fee award); *In re Pacific Enters. Sec. Litig.,* 47 F.3d 373, 379 (9th Cir. 1995) (award of 33% of settlement fund as fees affirmed); *Morris v. Lifescan, Inc.,* 54 Fed. Appx. 663, 664 (9th Cir. 2003) (affirming fee award of 33% of fund); *Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482, 491 (E.D. Cal. 2010) (33⅓% fee).

Furthermore, ERISA class actions often deserve awards higher than the benchmark. *Stephens v. US Airways Grp. Inc.,* No. 07-1264-RMC, 2015 WL 194749, at *7 (D.D.C. April 30, 2015) (38%); *Boyd v. Coventry Health Care Inc.,* 299 F.R.D. 451, 465 (D. Md. 2014) (28%); *Savani v. URS Prof'l Sol. LLC,* 2014 WL 172503, at *10 (D.S.C. Jan. 15, 2014), (30%); *In re Marsh ERISA Litig.,* 265 F.R.D. 128, 147 (S.D.N.Y. 2010) (33⅓%).

In determining the amount of the benefit conferred, the appropriate measure is the total recovery potentially available for the class, not the amount actually claimed. *See Boeing Co. v. Van Gemert,* 444 U.S. 472, 479-81 (1980); *accord Williams v. MGM-Pathe Comm. Co.,* 129 F.3d 1026, 1027 (9th Cir. 1997). This method recognizes that the efforts of Plaintiffs' Counsel established the entire Settlement, including nonmonetary benefits and ancillary expenses Defendants must also shoulder, for the benefit of the entire Class. *See Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 437 (2d Cir. 2007) (citing *Williams,* 129 F.3d at

MEMORANDUM OF POINTS AND AUTHORITIES: MOTION FOR ATTORNEYS' FEES

1027); *Vizcaino*, 290 F.3d at 1049.  Courts have long looked to the entire value of the benefit made available to class members.  *Lopez v. Youngblood,* No. CV–F–07–0474 DLB, 2011 WL 10483569, at *12 (E.D. Cal. Sept. 2, 2011); *accord Boeing*, 444 U.S. at 479-81; *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 935 (9th Cir. 2015) (affirming award of 25% of the gross fund: "The district court did not err in calculating the attorneys' fees award by calculating it as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses.").

Here, the recovery is over $30 million in benefits to the Class, $7.5 million in fees, $250,000 in costs, and over $1 million in additional notice and administration costs—all borne by Liberty Mutual.  The total recovery, thus, is about $38.75 million.  The fee component, therefore, is about 19.4% of the total recovery.  This is well-within the acceptable range—indeed lower than the "benchmark" in the Ninth Circuit.

Although it has adopted 25% as the presumptive "benchmark" for fees in class settlements, the Ninth Circuit frequently references five additional factors in evaluating the reasonableness of a requested fee.  Those are: (1) the result achieved; (2) the skill required and the quality of the work of plaintiffs' counsel; (3) the customary fees for similar cases; (4) the contingent nature of the fee and financial burden carried by counsel; and (5) the risks inherent in the litigation.  *Vizcaino*, 290 F.3d at 1048-50.  The fee award also satisfies each of these additional factors.

> a.     *This Complex Litigation Involved Significant Risk*

This case involved significant risk due to the complexity of the case, the uncertainty in the law during the litigation, and the various factual issues that could have affected the viability of the action as a whole.  The parties were on the doorstep of trial when they resolved the matter.

Also, Class Counsel, working on a contingency, advanced thousands of hours in the litigation and advanced over $385,000 in costs (of which Class counsel are

MEMORANDUM OF POINTS AND AUTHORITIES: MOTION FOR ATTORNEYS' FEES

1    only requesting $250,000).  Even though Plaintiffs believed their case was strong,

2    the factual issues at the heart of the case, in particular the statute of limitations issue

3    or the issue of individual reliance on representations made by Liberty regarding the

4    Plaintiffs' pension benefits (which could have led to decertification), made the case

5    anything but certain.  This was evident in the fact that the Court granted Liberty's

6    motion for summary judgment, which ended the case and subjected Class Counsel

7    to a hefty cost bill until Plaintiffs successfully appealed.  Right before the parties

8    reached a settlement agreement, the Court granted Liberty's renewed motion for

9    summary judgment as to a few class representatives on the grounds that their claims

10   were barred by the statute of repose. Nonetheless, Class Counsel achieved a

11   settlement for the entire class, even those that were dismissed, pulling their claims

12   from the ashes.

13        There were unique risks in this case thanks to the demographics of the class

14   members.  Nicholas Decl. ¶ 19.  Naturally, all of the class members were elderly—

15   they were actual or soon-to-be retirees.  *Id*.  Indeed a few class members,

16   unfortunately, passed away during the long course of this litigation.  *Id*.  Thus, there

17   was a risk that even if Plaintiffs *did* prevail at trial, that class members would not

18   actually get to enjoy the settlement if they had to survive motions for new trial and

19   more years of appeals.  *Id*.  Class Counsel had to respect the risks in waiting.  *Id*.

20                    b.    *Class Counsel Achieved an Excellent Recovery*

21        The single most important factor to be considered in determining an

22   appropriate fee award is the benefits obtained for the Class.  *In re Bluetooth*

23   *Headset Products Liability Litigation*, 654 F.3d 935, 942 (9th Cir. 2011); *In re*

24   *Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008); *see Hensley*

25   *v. Eckerhart*, 461 U.S. 424, 431 (1983).

26        Here, after more than seven years of litigation, a loss on summary judgment

27   and success on having the Ninth Circuit reverse and remand that decision, Class

28   Counsel secured a class settlement of 50% of the class' past service credit valued at

over $30 million.  This was the only result that could have occurred on the eve of trial given the risks inherent in trying this case.  Any percentage amount more than 50%, from Liberty's point of view, would have been an admission it was wrong—something it and its attorneys were not willing to stomach.

Under this settlement, class members will receive substantial sums.  For example, one 79 year-old class member will receive a new benefit with a present lump sum value of over $100,500.00.  Nicholas Decl., ¶ 27. Yet another 79 year-old class member will receive over $256,000 (if electing to take the lump sum).  *Id.*  A certain 54 year-old class member will receive, if they so-elect, a lump sum of over $55,000.  *Id.* Scores more will receive thousands or tens-of-thousands in added retirement benefits depending on their circumstances.[8]  *Id.*  This is real money, not coupons. These results are even more remarkable and of even greater value to the Class for the simple and obvious reason that, given the Court's recent Motion for Summary Judgment Order, the class might otherwise face the possibility of recovering nothing or prevailing at trial, only to see the Class members' retirement years fade away during still more years on appeal.

### c.    A High Level of Skill Was Required to Succeed

The effort and skill displayed by counsel and the complexity of the issues involved are additional factors used in determining a proper fee. *Vizcaino*, 290 F.3d at 1048; *In re Omnivision*, 559 F. Supp. 2d at 1046-47. These factors strongly support the reasonableness of the fee requested here in light of the circumstances of the litigation, which included contentious discovery issues, massive amounts of

---

[8] Of course, others will receive less, such as a few hundred dollars if they take the lump sum.  It all depends on the various factors, like age, date of retirement, salaries with Liberty prior to retirement, and others that The Plan itself would normally factor in as part of the regular retirement plan formulas. Regardless, the aggregate recovery is substantial and was efficiently obtained through one hard-fought proceeding.

MEMORANDUM OF POINTS AND AUTHORITIES: MOTION FOR ATTORNEYS' FEES

1   discovery (including electronic discovery and data analysis), significant economic

2   evaluation, and substantial legal analysis regarding a shifting body of law.

3          Indeed, a landmark Supreme Court decision came out in the middle of this

4   litigation and had to be applied.  *See generally CIGNA Corp. v. Amara*, 563 U.S.

5   421 (2011).   Finally, settlement was only achieved here after Class Counsel

6   demonstrated that they were ready and willing to actually try the case.

7          Notably, many courts have recognized the skill necessary to prosecute

8   ERISA cases such as this one.  Indeed, "ERISA concerns a highly specialized area

9   of law."  *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 350

10  (S.D.N.Y. 2014) ("a higher fee is warranted in ERISA cases as compared with some

11  other types of cases"); *see also Chicago Truck Drivers, Helpers & Warehouse

12  Workers Union (Indep.) Pension Fund v. CPC Logistics, Inc.,* 698 F.3d 346, 350

13  (7th Cir. 2012) ("Federal pension law is a highly specialized field that judges

14  encounter only intermittently.") (Posner, J.).  The "level of skill" factor weighs in

15  favor of approving this award.

16                    *d.       The Contingent Nature of the Fee Justifies the Award*

17         A fair fee award must include consideration of the contingent nature of the

18  fee.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1050.  It is well-established that attorneys who

19  take on the risk of a contingency case should be compensated for the risk they

20  assume.  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th

21  Cir. 1994).  Thus far, Class Counsel have not received any compensation for more

22  than seven years of work on this case.  They also bore the risk of having to pay

23  Liberty's own substantial costs, if the Class had not prevailed.  Class Counsel

24  pressed on with the Ninth Circuit appeal even though Counsel knew that a loss on

25  appeal, which is common for an appellant, would mean the total loss for the Class,

26  the inability to recover the hundreds of thousands of dollars already poured into the

27  action, and potential liability for a six-figure cost award in favor of Liberty Mutual.

28

In short, the perils of this litigation were extreme for Class Counsel.  The very real risks taken by Class Counsel  support the requested fee.

## C.   The Lodestar Cross-Check Confirms the Reasonableness of the Fee Award

District courts are not required to cross-check the percentage fee.  *See In re Google Referrer Header Privacy Litig.,* 869 F.3d 737, 748 (9th Cir. 2017).  But when they do, they typically use a two-step lodestar/multiplier method where trial courts calculate the lodestar by multiplying all the hours reasonably spent by reasonable hourly rates.  *See Blum v. Stenson*, 465 U.S. 886, 888 (1984); *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), *reh'g denied*, *amended on other grounds* 108 F.3d 981 (9th Cir. 1997).  That figure may be enhanced or multiplied to account for other factors which are not subsumed within it.[9]  *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001).  This allows the court "'to fix a fee at the fair market value for the particular action.'"  *Syers Props. III v. Rankin*, 226 Cal. App. 4th 691, 697-98 (2014) (quoting *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001)).  The purpose of using the lodestar/multiplier method is to mirror the legal marketplace: the adjusted lodestar should not significantly differ from the percentage fee freely negotiated in comparable litigation.  *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 50 (2000).

In this case, Class Counsel's lodestar alone is over $7.73 million.  Nicholas Decl., ¶ 20.  The requested $7.5 million fee award actually represents a *negative* multiplier on this amount, further establishing the reasonableness of this request.

---

[9]The factors already taken into account by the lodestar calculation are: "'(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, (4) the results obtained,' and (5) the contingent nature of the fee agreement." *Morales*, 96 F.3d at 364 n.9 (citation omitted). Other factors include: (1) time and labor required; (2) preclusion of other employment by the attorney due to acceptance of the case; (3) customary fee; (4) time limitations imposed by the client or the circumstances; (5) undesirability of the case; (6) nature and length of the professional relationship with the client; and (7) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

### 1.     *The Hourly Rates are Reasonable*

Reasonable hourly rates are determined by "prevailing market rates in the relevant community." *Blum*, 465 U.S. at 895.  Typically, the forum where the district court sits is recognized as the "relevant community." *Shirrod v. Dir., OWCP*, 809 F.3d 1082, 1087 (9th Cir. 2015) (citing *Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1053 (9th Cir. 2009)).  Thus, Class Counsel are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similar litigation.  *Blum*, 465 U.S. at 895 n.11; *Ketchum*, 24 Cal. 4th at 1133; *see also Serrano v. Unruh*, 32 Cal. 3d 621, 640 n.31 (1982) ("The formula by which 'reasonable market value' is reached is variously phrased" as "comparable salaries earned by private attorneys with similar experience and expertise in equivalent litigation," and the "hourly amount to which attorneys of like skill in the area would typically be entitled.") (citations omitted).

Class Counsel's background, experience, and hourly rates are set forth in their concurrently filed declarations.  Nicholas Decl., ¶¶ 5, 22; Declaration of Jack Winters ("Winters Decl."), ¶¶ 3-9; *see also* ECF No. 333, Declaration of Craig Nicholas in support of Motion for Preliminary Approval.  Class Counsel here has an excellent reputation as class action litigators, with demonstrated recoveries.  *Id.* Class Counsel, furthermore, have particular experience in litigation against insurance companies.  Winters Decl., ¶¶ 4, 6-8.

Declarations regarding prevailing fees in the community and rate determinations in other cases "are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  The hourly rates of Class Counsel (between $550 and $650 for partners and between $350 and $500 for associates) are well within the range of rates billed by comparable attorneys in this market and are the standard rates they charge to all of their clients.  Nicholas Decl., ¶ 22; Winters Decl., ¶¶ 30-31; Declaration of Hon. Herbert Hoffman ("Hoffman" Decl."), ¶¶ 18-22.

MEMORANDUM OF POINTS AND AUTHORITIES: MOTION FOR ATTORNEYS' FEES

The Honorable Herbert Hoffman (Ret.) has served as a Special Master in many class action cases in the United States District Court, Southern District of California. Hoffman Decl., ¶ 5.   Judge Hoffman has submitted reports and recommendations regarding motions by class counsel for attorneys' fees and costs Hoffman Decl., ¶ 6.  As a result, Judge Hoffman is intimately familiar with the rates charged by class action counsel in San Diego and the reasonableness of hours spent. Judge Hoffman's experience reflects that the hourly rates of Class Counsel here are reasonable.  Hoffman Decl. ¶ 19.

Furthermore, the hourly rates are reasonable and consistent with what attorneys of comparable skill charge for complex litigation in Southern California. *See Makaeff v. Trump Univ., LLC*, No. 10cv0940GPC(WVG), 2015 WL 1579000 at *4-5 (S.D. Cal. Apr. 9, 2015) (approving hourly rates of $600-$825 for partners, $250-$450 for associates, and $150-$430 for paralegals); *Zest IP Holdings, LLC v. Implant Direct MFG., LLC*, No. 10CV0541GPC(WVG), 2014 WL 6851612 at *6 (S.D. Cal. Dec. 3, 2014) (approving average hourly billing rates of $775 for partners and $543 for associates); *Gutierrez v. Wells Fargo Bank, N.A.*, No. C07-5923WHA, 2015 WL 2438274 at *5 (N.D. Cal. May 21, 2015) (approving rates of $475-$975 for partners, $300-$490 for associates, and $150-$430 for paralegals); Nicholas Decl., ¶ 23, Ex. B (the 2015 National Law Journal Billing Survey provides the following California rates: $200-$1,080 for partners; $300-$950 for associates; $175-$595 for Of Counsel attorneys; and $25-$325 for paralegals); *see also Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 899 (C.D. Cal. Oct. 11, 2016), *appeal docketed*, No. 16-56688 (9th Cir. Nov. 10, 2016) (showing standard partner rates among top firms "ranges from $490 to $975").  The rates charged by Class Counsel fall well within the usual framework.

### 2.    *The Hours Expended Are Also Reasonable.*

The time spent was reasonable and necessary for the prosecution of this case. Winters Decl. ¶ 28; Hoffman Decl. ¶ 22.  Class Counsel took meaningful steps to

MEMORANDUM OF POINTS AND AUTHORITIES: MOTION FOR ATTORNEYS' FEES

ensure their work was efficient and not duplicative. Nicholas Decl., ¶ 24. Furthermore, the fee request is supported by detailed records that were reviewed for reasonableness by a retired Superior Court judge and federal Special Master.[10] Nicholas Decl. ¶¶ 11, 23; Hoffman Decl. ¶ 7.

Moreover, additional work will be required. Class Counsel must still: (1) prepare for and attend the final approval hearing, including the research and drafting of the moving papers and responses to any objections; (2) continue to respond to the many inquiries from Class Members; (3) oversee the notice process; and (4) handle any appeals. If there are appeals, hundreds of thousands of dollars of additional attorney time may be incurred in post-judgment motions (such as appeal bond requests) and in defending the settlement on appeal to the Ninth Circuit. None of this additional time will be compensated.

### 3. Counsel Would Normally Be Entitled to a Multiplier, But is Not Seeking one Here.

Although the lodestar figure "presumptively provides an accurate measure of reasonable attorney's fees," that figure may be augmented or multiplied to reflect additional factors in determining a reasonable attorney fee award. *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994); *see also Ketchum,* 24 Cal. 4th at 1138 ("the unadorned lodestar reflects the general local hourly rate for a ***fee-bearing*** case; it does ***not*** include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider") (emphasis in original). Multipliers

---

[10]The actual billing records covering all of the years of litigation are voluminous, but are summarized here and in the accompanying declarations. Importantly, counsel need only submit summaries to obtain an award, submission of actual billing records is not required. *Lobatz v. U.S. W. Cellular of Cal., Inc.,* 222 F.3d 1142, 1148-49 (9th Cir. 2000) (the court may rely on summaries of the total number of hours spent by counsel); *POM Wonderful, LLC v. Purely Juice, Inc.,* 2008 WL 4351842, at *4 (C.D. Cal. Sept. 22, 2008); *Hemphill v. S.D. Ass'n of Realtors, Inc.,* 225 F.R.D. 616, 623-24 (S.D. Cal. 2004) (declining review of detailed time records where no evidence of collusion); s*ee also In re Ins. Brokerage Antitrust Litig.,* 579 F.3d 241, 284 (3d Cir. 2009) (finding district court's reliance on time summaries of counsel proper).

can range from 2 to 4, or even higher. *See Steiner v. Am. Broad. Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) ("this multiplier [of 6.85] falls well within the range of multipliers that courts have allowed"); *Vizcaino*, 290 F.3d at 1051 (multiplier of 3.65); *Keith v. Volpe*, 501 F. Supp. 403, 414 (C.D. Cal. 1980) (multiplier of 3.5); *Beaver v. Tarsadia Hotels*, No. 11cv01842GPC(KSC), 2017 WL 4310707, at *13 (S.D. Cal. Sept. 28, 2017) ("The one-third fee Class Counsel seeks reflects a multiplier of 2.89 on the lodestar which is reasonable for a complex class action."); *In re Glob. Crossing Securities and ERISA Litig.*, 225 F.R.D. 436, 469 (S.D.N.Y. 2004) (ERISA case with multiplier of 2.6.)

Here, although it would normally be reasonable to request a multiplier, Class Counsel has agreed not to.  In fact, Class Counsel agreed to a small reduction in their lodestar, or negative multiplier, to reach the settlement.  This further proves the reasonableness of this fee request.

## VI.   CLASS COUNSEL SHOULD ALSO BE REIMBURSED FOR THEIR REASONABLE LITIGATION EXPENSES

Class Counsel also request reimbursement of litigation costs and expenses they incurred on behalf of the Class in the amount of $250,000.  Nicholas Decl., ¶ 25.  Attorneys who achieve class settlements are entitled to reimbursement of their out-of-pocket expenses so long as they are reasonable, necessary and directly related to the prosecution of the action.  *See Staton*, 327 F.3d at 974; *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); 1 Alba Conte, Attorney Fee Awards § 2.19 (3d ed. 2004).

Class Counsel's expenses are summarized in the exhibits to the Declarations of Craig Nicholas and Jack Winters.  These expenses were reasonable and necessary for the prosecution of this action and are customarily approved by courts as proper litigation expenses.  Class Counsel incurred these costs for, *inter alia*, mediation fees, ESI discovery, filing and service expenses, expert fees, photocopies, postage, and telephone charges. All of these expenses were reasonably and

necessarily incurred, and are of the sort that would typically be billed to paying clients in the marketplace. *See In re Hydroxycut Marketing and Sales Practices Litig.*, Nos. 09md2087BTM(KSC), 09cv1088BTM(KSC), 2014 WL 6473044, at *10 (S.D. Cal. Nov. 18, 2014) (awarding reimbursement for "filing fees, photocopies, postage, telephone charges, computer research, mediation fees, and travel" because they are "the types of expenses routinely charged to paying clients"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. May 31, 2007) (awarding as reasonable and necessary, reimbursement for "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees"). Moreover, these expenses sought ($250,000) are far less than the expenses actually incurred, which are over $385,000. Nicholas Decl., ¶ 25. This request for expenses is especially reasonable in light of the length of this case and the fact that Class Counsel will expend additional costs in finalizing the case and settlement. *Id.*

## VII. <u>CONCLUSION</u>

Class Counsel takes great pride in the results achieved for the Class, the legal and financial obstacles overcome, and the perseverance required to deliver this stellar result. It is a personal and professional accomplishment for all concerned. Plaintiffs' discounted request for less than 20% of this excellent recovery as a negotiated fee for seven years of hard-fought litigation is reasonable. The motion for reimbursement of costs and fees should be granted in full.

[*signature of counsel appears on following page*]

Respectfully submitted:

Dated:  December 15, 2017          **NICHOLAS & TOMASEVIC, LLP**

By:     */s/ Craig M. Nicholas*
        Craig M. Nicholas (SBN 178444)
        Alex M. Tomasevic (SBN 245598)
        David G. Greco (SBN 299635)
        **NICHOLAS & TOMASEVIC, LLP**
        Email:  cnicholas@nicholaslaw.org
        Email:  atomasevic@nicholaslaw.org
        Email:  dgreco@nicholaslaw.org

        Jack B. Winters, Jr. (SBN 82998)
        Georg M. Capielo (SBN 245491)
        Sarah Ball (SBN 292337)
        **WINTERS & ASSOCIATES**
        Email: jackbwinters@earthlink.net
        Email: gcapielo@einsurelaw.com
        Email: sball@einsurelaw.com

        Attorneys for Plaintiffs

MEMORANDUM OF POINTS AND AUTHORITIES: MOTION FOR ATTORNEYS' FEES