**NICHOLAS & TOMASEVIC, LLP**
   Craig M. Nicholas (SBN 178444)
   Alex M. Tomasevic (SBN 245598)
   David G. Greco (SBN 299635)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: dgreco@nicholaslaw.org

**WINTERS & ASSOCIATES**
   Jack B. Winters, Jr. (SBN 82998)
   Georg M. Capielo (SBN 245491)
   Sarah Ball (SBN 292337)
1901 First Avenue, Suite 400
San Diego, CA 92101
Tel: (619) 234-9000
Email: jackbwinters@earthlink.net
Email: gcapielo@einsurelaw.com
Email: sball@einsurelaw.com

Attorneys for Plaintiffs Geoffrey Moyle, Pauline Arwood, Thomas Rollason, and Jeannie Sanders

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEOFFREY MOYLE, an individual, PAULINE ARWOOD, an individual, THOMAS ROLLASON, an individual, and, JEANNIE SANDERS, an individual, on behalf of themselves and all others similarly situated, and ROES 1 through 500, inclusive,<br><br>           Plaintiffs,<br><br>v.<br><br>LIBERTY MUTUAL RETIREMENT BENEFIT PLAN; LIBERTY MUTUAL RETIREMENT PLAN RETIREMENT BOARD; LIBERTY MUTUAL GROUP INC., a Massachusetts company; LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts company; and, DOES 1 through 50, inclusive,<br><br>           Defendants. | CASE NO.:10-cv-02179-GPC-MDD<br><br>**DECLARATION OF JACK B. WINTERS, ESQ. IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO SETTLEMENT**<br><br>**Date**: March 2, 2018<br>**Time**: 1:30 p.m.<br>**Courtroom**: 2D, Suite 2190<br>      221 W Broadway<br>      San Diego, CA 92101<br><br>**Judge**: Hon. Gonzalo P. Curiel<br>**Magistrate**: Hon. Mitchell D. Dembin |

I, Jack B. Winters, Jr., hereby declare:

1. I am an attorney licensed to practice before all courts in the State of California, the Ninth Circuit, and this District. I am the principal in the law firm Winters & Associates. The facts set forth herein are personally known to me and, if called upon to testify, I could and would do so competently.

2. I am one of the appointed lead counsel for Plaintiffs and the Class in this case and for more than thirteen years have been actively involved in the prosecution and attempted resolution of this dispute, initially solely on behalf of Geoffrey Moyle, and thereafter on behalf of Plaintiffs Ms. Pauline Arwood, Ms. Jeannie Sanders, Mr. Thomas Rollason, and ultimately as class counsel in the current action. My representation of Mr. Moyle on these issues began in September of 2004. During this entire time, the firm of Winters & Associates has handled the representation on a contingency fee basis and has advanced part of the costs of the litigation. I make this affidavit in support of the motion for attorney's fees and expenses resulting from the settlement achieved in the above-referenced matter. The request for fees and cost reimbursement does not include any work performed prior to October 23, 2009, when Liberty Mutual Retirement Fund finally denied Plaintiffs' claims for credit for their time served at Golden Eagle.

**PERSONAL BACKGROUND**

3. I have been an attorney since 1978 after graduating law school at the University of San Diego and a member of this Court for the last 39 years. I have been a trial attorney from the beginning of my career to the present. I have tried over 100 cases, at least 77 of which were jury trials to verdict. Though my work has been primarily in insurance litigation, my practice has included substantial experience in virtually all forms of civil litigation, including individual and class representation. I have been involved, as Plaintiff's counsel, in more than a dozen large scale consumer federal and state actions, including certified class actions, and have actively maintained my own law firm for more than 30 years.

4. For the last 32 years, my practice has primarily involved representing consumers, insureds, policyholders, beneficiaries, and individuals involved in insurance, labor, pension and contractual disputes with major corporations and businesses.

5. Prior to that time, I was a defense counsel, one of the founders of the "San Diego Defense Counsel" and actively involved in all aspects of civil defense. During those years, I defended class action matters, claims of professional liability, licensing disputes for professionals, as well as all forms of typical personal injury and economic dispute resolution.

6. Since the late 1980's, my practice has been primarily involved in the representation of individuals dealing with matters related to insurance. Since the early 1990's, I have been extensively involved in ERISA-related litigation.

7. Over the last five years, the majority of my practice has involved ERISA related litigation and other federal related litigation. I have handled to resolution dozens of ERISA-governed disputes and have argued before the Ninth Circuit Court of Appeal on at least four occasions dealing with ERISA issues. My most recent appearance before the Ninth Circuit was within the last two weeks on a matter that is still pending.

8. I have tried ERISA cases to the U.S. District Court for the Southern District of California and customarily provide consultant services to other counsel dealing with ERISA-related issues, from disability, health benefit, life insurance, as well as pension disputes.

9. By way of personal qualifications, I have during my entire legal career been consistently given an "AV" rating by Martindale Hubbell, and have received numerous awards and commendations for my work and professional activities. In 2012 and in 2014 I was named one of the Top Attorneys by the San Diego Daily Transcript, and a finalist for Top Attorney for 2014. I have also received various

awards over the years as an Outstanding Trial Attorney from the San Diego Trial Lawyers Association and the Consumer Lawyers of San Diego.

## HISTORY OF THE LITIGATION

10. In 2004, I first represented Plaintiff Geoff Moyle regarding an employment dispute with Liberty Mutual Insurance Company resulting from Mr. Moyle's termination of employment from the company. This matter was successfully tried to conclusion.

11. Thereafter, I represented Mr. Moyle in the matter against Liberty Mutual concerning the calculation of his pension benefits. That matter was eventually dismissed, then appealed to the Ninth Circuit. Ultimately, a decision was rendered by the Ninth Circuit in August of 2007, upholding the District Court's dismissal of the original claim on the grounds of failure to exhaust administrative remedies, but further indicating that Mr. Moyle was not precluded from presenting his claim for benefits directly to Liberty Mutual.

12. Mr. Moyle, with my assistance, then presented his benefits claim to Liberty Mutual in January of 2008 seeking a determination of the pension issues which ultimately became the subject of this litigation. Thereafter, Mr. Thomas Rollason, Ms. Pauline Arwood, and Ms. Jeannie Sanders retained me to make similar claims on their behalf. Liberty eventually denied all four claims (during both an initial decision phase and then an administrative appeal phase).

13. During the period of representation prior to the final denial of my clients administrative appeal, Winters & Associates performed more than 750 hours of work in the underlying District Court matter, the Ninth Circuit appeal, and then in the ensuing administrative process. The firm was not compensated in any fashion and advanced costs during this time period as well. These costs have not been reimbursed. No fees or costs are being claimed for this period of representation.

14. Liberty finally denied all of my clients' administrative appeals in October of 2009, making ripe the capacity of my clients to proceed with the current action.

15. To provide added expertise and support in the field of class actions, my offices entered into an agreement with co-counsel to jointly prosecute the current action. Together with co-counsel, the firm of Winters &Associates has been actively involved in the management, supervision and coordination of all work performed on behalf of the class since October of 2009 until the present.

## WORK PERFORMED ON THE CASE

16. Winters & Associates—myself primarily—has maintained an active day to day involvement in all aspects of the case. At all times, I have been and remain a co-lead counsel on this matter and have at all times been involved in the general supervision and coordination of this litigation, including the supervision and coordination of all work by all billers.

16. My firm prosecuted this case on a contingent-fee basis with no guarantee of recovery. My firm, along with Co-Class Counsel, incurred 100% of the risk in litigating this Action. My firm was forced to forego other employment to devote the time necessary to pursue this litigation. In addition, my firm was required to keep employed associate counsel in order to assist in the prosecution of the case. Two Associate attorneys, Mr. Andrew Myers and Ms. Sarah Ball were specifically hired in part to deal with the actual and anticipated workload associated with this case. My firm advanced expenses with the understanding that we would be paid a fee and receive reimbursement for expenses only if successful.

17. While the majority of the work performed by Winters & Associates was performed by the undersigned, during the years 2010 through the present, Associates of the firm have assisted in the services performed. Those Associates are/were Georg Capielo, Esq. Sarah Ball, Esq., and Andrew Meyers, Esq. Mr. Meyers was retained by Winters & Associates after he had worked with co-counsel

and had been one of the principal Associates of co-counsel involved in the presentation of the class action.

18. The principal Senior Associate involved in this matter has been Attorney Georg Capielo, Esq. Mr. Capielo is a graduate of the California Western School of law and began practicing in general practice in 2006. Mr. Capielo joined the firm in 2011. Mr. Capielo graduated *cum laude* from California Western School of Law in June of 2006. During law school, Mr. Capielo volunteered for the California Innocence Project and worked with the Employee Rights Center handling matters before the Labor Commission. Prior to work with Winters & Associates, Mr. Capielo was employed with Gaston & Gaston working on consumer rights matters. Mr. Capielo also maintained his own practice prior to coming to work at the firm, during which time his work focused on consumer rights and employment-related litigation. During his time with Winters & Associates, Mr. Capielo has assisted in numerous trials and has also successfully resolved and personally tried to a jury verdict a federal District Court action. Since working at Winters & Associates, Mr. Capielo has continued to handle class action and consumer insurance litigation, employment litigation, ERISA and civil rights matters. Mr. Capielo is completing his 12th year of practice.

19. Attorney Sarah Ball has been an associate at Winters & Associates since April of 2014. Ms. Ball graduated from the University Of San Diego School Of Law in May of 2013. During law school, her studies focused on employment law generally, and ERISA-related matters more specifically. Prior to coming to work with Winters & Associates, Ms. Ball worked with a private company in its legal department dealing principally with ERISA litigation and issues.

20. Since being employed at Winters & Associates, Ms. Ball has primarily worked on ERISA litigation as well as assisting in the presentation of two jury trials, including a Federal District Court trial which was successfully resolved. Since working at Winters & Associates, Ms. Ball has participated at all levels of

litigation, including the drafting of complaints, all discovery matters including discovery disputes, the drafting of dispositive motions, settlement negotiations, and has assisted in filing appeals with the Ninth Circuit, including the drafting of appellate briefs.

21. In 2012, the firm also utilized a law clerk, Mr. Daniel DeSantis, primarily to deal with services related to the prosecution of the action suitable for a law clerk position. Mr. DeSantis was, at that time, a law student at the University of San Diego and became fully licensed in 2014 to practice law in both state and federal courts here in California. Mr. DeSantis is currently employed as counsel representing consumers in the Los Angeles area.

22. During the litigation, my offices, including myself and all of the personnel listed above, performed or contributed to the performance of all tasks related to the litigation, including investigation, drafting the complaint, the taking of depositions, obtaining and responding to discovery, third-party discovery, preparing motions related to the matter, working on the appeal, as well as acting as a continual point of contact with not only the class representatives, but hundreds of class members during the seven and more years of litigation.

23. As a lead counsel, as well as the most experienced counsel and originator of the case, I have maintained involvement in all aspects of the litigation from a strategic standpoint as well as making tactical decisions regarding the matter. Had the matter been tried, I would have been a leader on the trial team. I was at all times during the case one of the principal decision makers on the case.

24. It is difficult to fully explain the nature and amount of work that was involved in this litigation over the years. Dozens of motions were made and contested, including Motions to Dismiss, Motions related to Class Certification, Motions for Summary and Partial Summary Judgment, an appeal and cross-appeal to the Ninth Circuit, as well as more than a dozen contested discovery motions. The work has taken over seven years since the final denial of the administrative appeal.

25. Furthermore, the expense and difficulty in presenting this case was exacerbated by the state of flux which existed with regard to ERISA law during the seven years. The rendering of the Supreme Court's decision in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011) as well as a plethora of other difficult legal issues, made virtually all aspects of the case challenging to research and resolve. ERISA litigation is already notoriously complex, but the issues raised by this litigation were most difficult and rarely capable of simple research or resolution. The decision resolved a significant legal issue arising after the rendering of the *CIGNA* decision. In fact, the Ninth Circuit opinion in this case is now referenced in law school texts and has been cited, as of today and according to Westlaw, 108 times, given its significance in the development of ERISA law. Those issues were then compounded by a sophisticated and well-resourced defendant (Liberty Mutual) who engaged sophisticated and specialist defense counsel over the years (Jackson & Lewis and Mayer Brown). During the entirety of the litigation, the Defendant did not waiver in any fashion in presenting a vigorous defense.

**COMPUTATION OF REQUESTED ATTORNEY FEES/EXPENSES**

26. I was able to apply my experience in complex matters and, in particular, ERISA matters, to ensure that work and time were devoted efficiently in this case by all billers. All professionals were instructed to track or bill time only for those matters that were necessary for the prosecution of this matter. Matters were assigned to those billers best-suited to complete the work effectively and efficiently.

27. My firm and my co-counsel each maintained business records of the time and expenses incurred in this matter. In preparation of this motion, I have reviewed the time records as well as the full records of the work performed by Winters &Associates since October of 2009 to the present, and have made estimates as to the expected work to be performed up and until the Court's final approval of this settlement. The records are hundreds of pages long. I have personally

reviewed all time records of the firm and have provided them to co-lead counsel for consideration in and/or reference in the concurrently-filed declaration of Co-Lead Counsel Craig M. Nicholas as to the overall number of hours and fees incurred throughout this entire case. *See* Decl. of Craig M. Nicholas, ¶¶ 20-21. In short, the total hours spent by Winters & Associates in the handling of this matter is 4909.18 hours. The details of this representation have been provided to co-counsel for inclusion in the table describing the total work performed, as seen in paragraph 21 of the concurrently-filed declaration of Craig M. Nicholas. Again, none of this time includes any work or expenses incurred prior to October of 2009 (e.g. including during the Liberty Mutual administrative review process).

28. In my professional opinion, all of the time and services performed by Winters & Associates as well as by co-counsel was reasonably necessary to secure the favorable result obtained for the Class. Specifically, all work performed in this matter was in my opinion professionally required as part of the due diligence mandated by my firm's professional obligations to the Class.

29. Furthermore, the hours and lodestar incurred by my firm will increase because as Class Counsel, my firm, along with co-lead Class Counsel, is responsible for briefing the final approval opening brief and reply, dealing with any objections, and attending the final approval hearing and the post-hearing work. On an ongoing basis, my firm has been and will continue to be in regular contact with Class Members and Defendants regarding notices and election forms sent to Class Members as well as for any issues regarding Class Member contact.

## BILLING RATES

30. For the last two years my personal billing rate has been $650 an hour for my time and varies for my associates mentioned above dependent on the nature of the services performed and varies from $350 an hour to $500 an hour. My paralegal rate is $100, for the time spent by Paralegal Sylvia Flores. Ms. Flores works as a paralegal with the firm, as well as performs, secretarial services. Ms.

Flores has substantial experience specific to ERISA litigation and class actions. The time attributed to Ms. Flores does not include clerical work.

31.  The hourly rates shown above for each professional are the usual and customary rates set by my firm for each individual. Further, based on my knowledge of the class action plaintiff's bar in California, the rates charged by my firm are in line with the rates charged by other firms that handle class actions of similar size and complexity.

## COSTS INCURRED

32.  I am also familiar with the costs and expenses incurred in this matter. In the normal course and scope of business we collected and maintained receipts and other documentation for all costs incurred that could or would normally get passed on to our clients. From the date of the denial of the original administrative appeal in October of 2009, Winters & Associates has paid and advanced $180,283.97. **Exhibit "A"**, attached hereto and incorporated by reference herein, is a true and correct copy of the breakdown of costs incurred in this matter. All of the costs itemized in **Exhibit "A"** were necessarily incurred in this matter.

33.  It is anticipated that there will be substantial additional costs incurred prior to a decision on the final order approving the settlement. For example, the firm is continuing on a daily basis dealing with and responding to questions posed by Class members.

I declare under penalty of perjury under the laws of California as well as the United States of America that the foregoing is true and correct. Executed this 15th day of December, 2017 in San Diego, California.

      /s/ Jack Winters
      Jack B. Winters

9     10-cv-02179-GPC-MDD
DECLARATION OF JACK WINTERS ISO MOTION FOR ATTORNEYS' FEES AND COSTS