**NICHOLAS & TOMASEVIC, LLP**
   Craig M. Nicholas (SBN 178444)
   Alex M. Tomasevic (SBN 245598)
   David G. Greco (SBN 299635)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: dgreco@nicholaslaw.org

**WINTERS & ASSOCIATES**
   Jack B. Winters, Jr. (SBN 82998)
   Georg M. Capielo (SBN 245491)
   Sarah Ball (SBN 292337)
1901 First Avenue, Suite 400
San Diego, CA 92101
Tel: (619) 234-9000
Email: jackbwinters@earthlink.net
Email: gcapielo@einsurelaw.com
Email: sball@einsurelaw.com

Attorneys for Plaintiffs Geoffrey Moyle,
Pauline Arwood, Thomas Rollason, and
Jeannie Sanders

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEOFFREY MOYLE, an individual, PAULINE ARWOOD, an individual, THOMAS ROLLASON, an individual, and, JEANNIE SANDERS, an individual, on behalf of themselves and all others similarly situated, and ROES 1 through 500, inclusive,<br><br>        Plaintiffs,<br><br>   v.<br><br>LIBERTY MUTUAL RETIREMENT BENEFIT PLAN; LIBERTY MUTUAL RETIREMENT PLAN RETIREMENT BOARD; LIBERTY MUTUAL GROUP INC., a Massachusetts company; LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts company; and, DOES 1 through 50, inclusive,<br><br>        Defendants. | CASE NO.: 10-cv-02179-GPC-MDD<br><br>**DECLARATION OF CRAIG NICHOLAS IN SUPPORT OF UPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**<br><br>**Date**: March 2, 2018<br>**Time**: 1:30 p.m.<br>**Courtroom**: 2D, Suite 2190<br>                  221 W Broadway<br>                  San Diego, CA 92101<br><br>**Judge**: Hon. Gonzalo P. Curiel<br>**Magistrate**: Hon. Mitchell D. Dembin |

I, Craig Nicholas, declare:

1. I am an attorney at law duly licensed to practice before all the courts of the State of California, the Southern District of California, the Northern District of California, the Eastern District of California, the U.S. Court of Appeals for the Ninth Circuit, and the U.S. Supreme Court. I am the founding and managing partner of the law firm of Nicholas & Tomasevic, LLP, counsel for Plaintiffs and the certified Class.

2. I am also a former founding and managing partner of the firm formerly known as Nicholas & Butler, LLP ("N&B"). Attorney Matthew Butler was my partner at N&B. After N&B—and during the pendency of this action—I formed Nicholas & Tomasevic, LLP ("N&T"), and Mr. Butler formed The Butler Firm, APC.

3. I am familiar with the facts of this case, and the work done by all attorneys and support staff on the matter. If called upon as a witness I could testify to the following facts based on my own personal knowledge.

4. The lawyers from both N&T and N&B have extensive experience handling class actions—employee class actions in particular—which has been half or more of the work we perform, and the majority of the work I have personally performed for the last ten years or more.

5. More about our experience in class action matters is described in my declaration recently filed in support of our Motion for Preliminary approval of the settlement (ECF No. 333). Also, a true and correct copy of N&T's firm resume is attached here as **Exhibit D.** Co-counsel, Winters & Associates (collectively, "Class Counsel"), describes their experience in the declaration of Jack B. Winters, filed concurrently with my declaration.

6. The focus of this declaration is the work done, hours expended, and costs incurred by Plaintiffs' counsel during the years this case was litigated before the District Court and the Ninth Circuit. I submit this declaration in support of Plaintiffs' unopposed motion for an award of attorneys' fees and costs after settlement.

7. Paragraph 13.5 of the Stipulation and Settlement Agreement (ECF No. 333-2) states that class counsel may petition the Court for payment of attorneys' fees in an amount not to exceed $7.5 million, and for payment of actual expenses and costs not to exceed $250,000. These amounts were negotiated separately from the relief negotiated for the Class (*i.e.*, the increased "past service credit"). Awarding or refusing to award any amount of fees pursuant to this motion will not change how much the class gets.

8. The work of these proceedings is unfinished. The Settlement must be finally approved and defended and inquiries from all class members must be handled. In fact, since notice of the proposed settlement terms was delivered, Plaintiffs' counsel has received and handled numerous inquiries from class members, with detailed questions about their specific situations. We will continue to do the same.

**SUMMARY OF SOME OF THE WORK IN THE CASE AND BILLING PRACTICES**

9. Over the years, at least 15 paralegals and attorneys actively worked on this case across the three law firms that served as Class Counsel. The work was done at my direction, supervision, or under my review.

10. Only time and expenses incurred to the benefit of the certified Class and that advanced the claims resolved in the settlement have been included in the time presented and costs submitted. Billers were instructed to be efficient with their time and to record only the time and expenses that advanced the settled claims. Regular meetings were held with myself and senior members of Class Counsel in order to efficiently delegate work, monitor work, and to avoid duplication or other inefficiencies. This was a necessity given the enormous amount of work involved over the years and the need to be efficient with and conserve available resources over this long battle of attrition spanning more than seven years.

11. Written billing records and data by associates and paralegals were maintained and updated for this case, as were records of any reimbursable costs or

1  expenses incurred.  I am familiar with and have reviewed these records.  Class
2  Counsel, including my office, also provided voluminous billing records and
3  information related to the background of all professionals who worked on the matter
4  to the Honorable Herbert Hoffman (Ret.), retired San Diego Superior Court judge
5  who has also served as a Special Master in the federal courts in other class actions,
6  who has submitted a declaration concurrently with this motion.

7  12.  Both sides engaged in extensive discovery throughout the case.  Much
8  of the discovery occurred cross-country in several different states.  Discovery and
9  investigation also included work in Sacramento and San Francisco relative to the
10  Conservatorship issues.

11  13.  The parties served hundreds of interrogatories and document requests.
12  The final document production included millions of pages covering 36.3 gigabytes
13  of Electronically Stored Information ("ESI") that both sides had to review and
14  analyze.  The initial data library from which these 36.3 gigabytes were culled was
15  over 3 terabytes.  In the end, millions of pages had to be processed, reviewed, and/or
16  analyzed.

17  14.  The parties served more than one hundred document and deposition
18  subpoenas.  All told, the parties took 28 depositions, from San Diego to Boston, to
19  discover the merits of this case and prepare it for trial.  Plaintiffs also hired four
20  experts and consultants to assist them with the case.  Defendants hired several experts
21  of their own.

22  15.  In December of 2011, Plaintiffs filed their motion to certify the case as
23  a class action.  The motion work was complicated and voluminous.

24  16.  Multiple motions for summary judgment were filed and decided.  The
25  briefing and exhibits submitted by both sides during just the first round of MSJ
26  proceedings totaled over 10,800 pages of briefing and evidence.

27  17.  After this Court's Order on the final motion for summary judgment (Doc
28  No. 308.), the parties engaged experienced class action and ERISA mediator Hunter

1  Hughes, Esq.  The parties travelled to Atlanta for a full-day session of mediation.
2  The case did not resolve.  But the parties did agree to attend, and did attend, a second
3  full-day mediation with Mr. Hughes in Los Angeles weeks later.  The parties did not
4  resolve the case during that second session, but did make progress toward resolution.

5       18.  Mr. Hughes continued to work with the parties for weeks over the phone.
6  Ultimately, Mr. Hughes succeeded in getting the parties to agree on the "past service
7  credit" and, separately, on attorneys' fees.  Both numbers were separately proposed
8  and recommended by Mr. Hughes.  The parties formally accepted Mr. Hughes'
9  proposals on August 8, 2017.  Liberty Mutual agreed to pay for the delivery of the
10 Notice of Class Action Settlement to each member of the Class as originally certified
11 by the Court, and estimates that these additional expenses will add $1 million or more
12 to the value of the overall settlement.

13      19.  There were unique risks in this case because of the demographics of the
14 class members.  All of the class members were elderly—they were actual or soon-to-
15 be retirees.  Indeed a few class members, unfortunately, passed away during the long
16 course of this litigation.  Thus, there was a risk that even if Plaintiffs *did* prevail at
17 trial, that class members would not actually get to enjoy the settlement if they had to
18 survive motions for new trial and more years of appeals.  My co-counsel and I had to
19 respect the risks in waiting when weighing settlement options.

20      20.  The total number of hours expended to date on the prosecution and
21 resolution of the settled claims against the Liberty Mutual defendants is 18,206.70
22 hours.  These hours resulted in a combined lodestar of $7,735,844.76 in fees.  Given
23 the negotiated cap on fees of $7.5 million, Plaintiffs' counsel are seeking an award
24 that represents a slightly *negative* multiplier even though, in my opinion, a *positive*
25 multiplier could reasonably have been requested and applied here.

26      21.  My office has collected and compiled the vast billing information from
27 all professionals that worked in the manner and summarized it below.  This process
28 is typical of other large-scale class actions, has been approved of (if not outright

ordered to be done this way by the Courts) especially in cases, such as this one, that involve multiple firms and many professionals working in a coordinated fashion over a long time horizon. The total number of hours worked can be and were broken down by billers into categories, as shown in Table 1 below. The task codes for the Table below are: (1) Counsel Calls/Meetings; (2) Administration; (3) Trial Court Appearances (including preparation); (4) Research; (5) Written Discovery Propounding and Responding; (6) Document Review (including review of ESI); (7) Litigation Strategy & Analysis; (8) Deposition Preparation/Take/Defense; (9) Pleadings/Briefs/Pretrial Motions/Legal; (10) Expert/Consultant Work and Consultation; (11) Settlement; (12) Trial Preparation; (13) 9th Circuit Appeal and Cross-Appeal Work (including oral argument); and (14) Miscellaneous.

**Table 1: Category Breakdown**

| Category | Total Hours | Total Lodestar |
|---|---|---|
| 1 | 761.1 | $323,383.78 |
| 2 | 318.3 | $135,242.49 |
| 3 | 232.9 | $98,956.88 |
| 4 | 738.2 | $313,653.80 |
| 5 | 1797.4 | $763,697.29 |
| 6 | 6987.7 | $2,969,003.85 |
| 7 | 707.2 | $300,482.21 |
| 8 | 1684.5 | $715,727.21 |
| 9 | 2203.3 | $936,160.14 |
| 10 | 395.8 | $168,171.46 |
| 11 | 451.9 | $192,007.79 |
| 12 | 244.1 | $103,715.65 |
| 13 | 1591.9 | $676,382.39 |
| 14 | 92.4 | $39,259.84 |
| **Total** | **18,206.70** | **$7,735,844.76** |

22. The hourly rates for partners performing the work were $550 per hour for partner Alex Tomasevic (11 years of experience); $650 for partners Craig Nicholas (22 years) and Matthew Butler (18 years); and $650 for partner Jack Winters (39 years of experience). The hourly rates for associates ranged from $350 to $450

depending on the skill and experience of the attorney. The hourly rates for paralegals or other support staff ranged from $ 165 to $ 195 depending on their skill and experience. These are the customary billing rates of the lawyers and support staff, reflecting their experience and the economies of their law practice in the San Diego market.

23.   Class Counsel sets the billing rates of attorneys and paralegals/law clerks through a process of continual monitoring of prevailing market rates charged by both defense and plaintiffs' law firms, for individuals with similar levels of skill and experience who are doing comparable work as our attorneys and staff. We gather this information from surveys, the review of other fee applications, and conversations with attorneys in the relevant billing market. We set the billing rates for our firms to be consistent with the prevailing market rates in the private sector for attorneys and staff of comparable skill, qualifications and experience. Furthermore, submitted concurrently with this declaration, in further support of these rates, is the declaration of the Honorable Herbert Hoffman (Ret.). Finally, we have also consulted the National Law Journal 2016 Survey on Attorneys' Fees, a true and correct copy of which is attached here as **Exhibit B**, which shows that the rates of Class Counsel are at or below market rates charged by comparable professionals.

24.   The work cited above reflects my ongoing efforts to assign tasks cost-effectively and to put the talents and skills of the lawyers assigned to the best use for the Class. Throughout, my co-counsel and I made every effort to manage assignments such that assignments matched the skills and experience necessary to perform them effectively under the time constraints and quality demands of this complicated litigation. For example, the total lodestar above reflects a "blended" hourly rate of $424.89, which is significantly less than the rates of the most experienced counsel working on the matter (rates up to $650), and which shows our efforts to task work efficiently over the years to those with lower rates where appropriate. Having worked on other large class actions for many years, including

complicated class actions that require the work of coordinated firms, I know that this blended rate is at or below the blended rates found in this market for similar work.

### COSTS INCURRED

25. The settlement, at paragraph 13.5, also allows for Class Counsel's recovery of up to $250,000 in costs. This was a compromise number negotiated separately from the class recovery and with the assistance of our mediator. The request is actually lower than our aggregate costs and expenses *actually* incurred of $386,681.33. A true and correct breakdown of the total costs incurred by N&T, totaling $206,397.36, are attached here as **Exhibit C**. A breakdown of the total costs incurred by co-counsel Winters & Associates, totaling $180,283.97, is attached to the concurrently-filed declaration of Jack B. Winters, Esq., as "Exhibit A." We anticipate we will expend additional costs in finalizing the case and settlement. However, we ask only for the $250,000 agreed upon by the parties and the mediator.

26. As shown above, the $250,000 request for reimbursed costs represents a discount of over 35% that class counsel will shoulder as part of the compromise. This is a significant concession of money spent to advance the case without recovering those costs. Class Counsel elected to forego those additional out-of-pocket costs because it was in the best interests of the Class to settle the dispute in full. The Class faced significant risks if the case did not settle. The Class could have recovered nothing at trial, or faced another years-long appeal that would have effectively denied the elderly Class members an opportunity to enjoy the benefits of the litigation.

27. The personal and financial sacrifices Class Counsel made to doggedly pursue this case to a successful conclusion, recovering over $30 million in value, after so many years of hard work would be difficult to overstate. We did not give up. We fought as long and as hard as necessary to achieve this just result. Now, under the terms of the settlement, class members will receive substantial sums. I have reviewed the settlement calculations for individual class members. They reveal, for example,

that one 79 year-old class member will receive a new benefit with a present lump sum value of over $100,500.00. Yet another 79 year-old class member will receive over $256,000 (if electing to take the lump sum). A certain 54 year-old class member will receive, if they so-elect, a lump sum of over $55,000. Many more will receive thousands or tens-of-thousands in added retirement benefits depending on their circumstances. I take great pride in this accomplishment. In short, I feel we have earned the fees sought.

28. Plaintiffs seek an award of $7.5 million in fees and $250,000 in costs pursuant to Federal Rule of Civil Procedure, Rule 23(h), and the parties' settlement agreement. As of the date of this declaration, there are no objectors to this request.

I declare under penalty of perjury under the laws of California and of the United States that the foregoing is true and correct. Executed on December 15, 2017, in San Diego, California.

By:    /s/ Craig Nicholas
        Craig M. Nicholas
        Declarant/Attorney for Plaintiff