UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEOFFREY MOYLE, an individual, PAULINE ARWOOD, an individual, THOMAS ROLLASON, an individual, and, JEANNIE SANDERS, an individual, on behalf of themselves and all others similarly situated, and ROES 1 through 500, inclusive,<br><br>Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL RETIREMENT BENEFIT PLAN; LIBERTY MUTUAL RETIREMENT PLAN RETIREMENT BOARD; LIBERTY MUTUAL GROUP INC., a Massachusetts company; LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts company; and, DOES 1 through 50, inclusive,<br><br>Defendant. | Case No.: 10CV2179-GPC(MDD)<br><br>**ORDER:**<br><br>**1) GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;**<br><br>**2) GRANTING PLAINTIFFS' REQUEST FOR SERVICE AWARDS; AND**<br><br>**3) GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS; AND**<br><br>**[ECF Nos. 338, 339]** |

On March 2, 2018, Plaintiffs Geoffrey Moyle, Pauline Arwood, Thomas Rollason, and Jeannie Sanders (collectively "Plaintiffs") filed a Motion for Final Approval of Class Settlement and Application for Attorneys' Fees and Costs, and Service Awards. (ECF

Nos. 338, 339.) On February 9, 2019, Defendants filed a response in support of the motion for final approval asserting the Settlement is fair, reasonable, and adequate. (ECF No. 340.)

The Court held a final approval hearing on March 2, 2018 at 1:30 p.m. pursuant to the Preliminary Approval Order dated November 15, 2017. (ECF No. 342.) Craig Nicholas, Esq., Alex Tomasevic, Esq. and Jack Winters, Esq. appeared on behalf of Plaintiffs, and Ashley Abel, Esq. appeared on behalf of Defendants. (Id.)

Based on the reasoning below, the Court GRANTS Plaintiffs' motion for final approval of class action settlement and request for service award, and GRANTS Plaintiffs' application for attorneys' fees and costs.

## Background

After years of pre-complaint investigation and administrative proceedings, on October 19, 2010, Plaintiffs filed their purported class action complaint under Employee Retirement Income Security Act, ("ERISA"), 29 U.S.C. § 1001 *et. seq.* (ECF No. 1.) On October 21, 2010, Plaintiffs filed an amended complaint. (ECF No. 3.) Liberty Mutual then filed a Motion to Dismiss. (ECF No. 10.) Plaintiffs successfully survived the Motion. (ECF No. 18 (denying in part and granting in part the Motion to Dismiss, including denying the Motion to dismiss the breach of fiduciary duty claim).) Plaintiffs then applied for, and were given, leave to file a Second Amended Complaint over Liberty Mutual's objection. (ECF Nos. 33, 38, and 41.) Plaintiffs filed their Second Amended Complaint ("SAC") and then Liberty Mutual answered in October of 2011, citing 45 affirmative defenses. (ECF No. 59.) Then on October 17, 2012, Plaintiffs filed a Third Amended Complaint ("TAC") pleading causes of action for: (1) Determination of the Terms of the Plan and Clarification of Rights to Future Benefits under 29 U.S.C. § 1132(a)(1)(B), (2) To Obtain Equitable Relief Under 29 U.S.C. § 1132(a)(3), and (3) for violation of various Federal Regulations governing proper disclosures under ERISA. (ECF No. 178, TAC.) Plaintiffs included breach of fiduciary duty claims under 29 U.S.C. § 1132(a)(2).

Both sides engaged in extensive discovery throughout the case. (ECF No. 338-4, Nicholas Decl. ¶ 12.) Much of the discovery occurred cross country in several different states. (Id.) Discovery and investigation also included work in Sacramento and San Francisco relative to the Conservatorship issues. (Id.)

Often the parties disagreed strenuously over the scope of allowable discovery, requiring the filing of numerous contested discovery motions over the years. (See ECF Nos. 159, 164, and 165.) In the end, the parties served hundreds of interrogatories and document requests. (ECF No. 338-4, Nicholas Decl. ¶ 13.) The final document production included millions of pages covering 36.3 gigabytes of Electronically Stored Information ("ESI") that both sides had to review and analyze. (Id.) The parties served more than one hundred document and deposition subpoenas. (Id. ¶ 14.) All told, the parties took 28 depositions, from San Diego to Boston, to discover the merits of this case and prepare it for trial. (Id.) Plaintiffs also hired four experts and consultants to assist them with the case. (Id.) Defendants hired several experts of their own. (Id.)

In December of 2011, Plaintiffs filed their motion to certify the case as a class action. (ECF No. 75; ECF No. 338-4, Nicholas Decl. ¶ 15.) Defendants opposed. On April 10, 2012, the Court granted Plaintiffs' motion to certify, also appointing the named plaintiffs as class representatives and their counsel as class counsel. (ECF No. 113.) The Court certified the Class as a non-opt-out class under Federal Rule of Civil Procedure 23(b)(1). (Id.) Liberty Mutual then filed a Motion for Reconsideration of the Order certifying the Class, along with a Motion to stay all proceedings pending Liberty Mutual's Petition to appeal under Rule 23(f). (ECF No. 119.) The Court denied the Motion for Reconsideration, but granted the request for a stay. (ECF No. 126.) The stay was short-lived, however, because the Ninth Circuit denied the Petition to appeal the next month. (ECF No. 128.) The parties then sent out a class notice and continued to investigate the case and conduct discovery.

On January 3, 2013, Defendants filed a motion for summary judgment against all four causes of action. (ECF No. 212.) Plaintiffs filed a motion for partial summary

judgment ("MSJ") on the second and fourth causes of action and on certain of Defendants' affirmative defenses. (ECF No. 213.) The briefing and exhibits submitted by both sides during the first round of MSJ proceedings totaled over 10,800 pages of briefing and evidence. (ECF No. 338-4, Nicholas Decl. ¶ 16.) On July 1, 2013, the Court granted Defendants' motion for summary judgment on all four causes of action in the third amended complaint, and it denied Plaintiffs' motion for summary judgment. (ECF No. 252.)

Plaintiffs then filed a timely appeal regarding the dismissal of the first, second, and fourth causes of action. Defendants cross-appealed, claiming that the suit was time-barred and that class certification was not proper. See Moyle v. Liberty Mutual Retirement Benefit Plan, 823 F.3d 948, 952 (9th Cir. 2016). On May 20, 2016, in a published opinion, the Ninth Circuit revived the case, restoring the second cause of action for equitable relief under 29 U.S.C. § 1132 (a)(3). Id.

As to the second cause of action, the Ninth Circuit concluded that a factual dispute existed whether "Liberty Mutual breached its fiduciary duty by failing to inform Golden Eagle employees that past service credit for the purpose of benefit accrual did not include the period prior to October 1, 1997, when they were first employed by Golden Eagle." Id. at 962. The Ninth Circuit remanded "for determinations of fact and equitable relief in the form of reformation and surcharge." Id. The appellate court also declined to consider "Liberty Mutual's argument that the statute of repose in 29 U.S.C. § 1113 acts to bar some of Appellants' claims under 29 U.S.C. § 1132(a)(3)." (Id.) It stated that the District Court could consider such arguments on remand. (Id.) The Ninth Circuit also found that class certification was proper. (Id.) The District Court then considered the arguments left undecided by the Ninth Circuit. Defendants filed a supplemental brief with the District Court on October 28, 2016, and an opposition and reply were filed. (ECF Nos. 296, 298-99.) The Court held oral argument on the Motion for Summary Judgment on December 16, 2016. (See ECF No. 301.) Afterward, the Court directed the parties to file additional briefing, which they all did in January of 2017. (See ECF Nos. 304, 305, and 307.)

Ultimately, on April 11, 2017, the Court denied in part Defendants' motion for summary judgment. (ECF No. 308, 2017 MSJ Order at 42.) In doing so, the Court preserved the two issues that the Ninth Circuit revived. The Court did find, however, that two of the named Plaintiffs' claims were time-barred. (<u>Id.</u>) The Court then set deadlines for Pretrial Disclosures and set a final Pretrial Conference for June 16, 2017. (<u>See</u> ECF No. 309, Amended Scheduling Order.) Twelve days later, Liberty Mutual filed a Motion for Reconsideration of the Order granting in part and denying in part their Motion for Summary Judgment. (ECF No. 311.) That Motion was pending when the parties began to seriously explore settlement before the impending trial.

After this Court's Order on the motion for summary judgment, the parties engaged experienced class action and ERISA mediator Hunter Hughes, Esq. (ECF No. 338-4, Nicholas Decl. ¶ 17.) The parties travelled to Atlanta for a full-day session of mediation. (<u>Id.</u>) The case did not resolve. (<u>Id.</u>) But the parties agreed to attend a second full-day mediation with Mr. Hughes in Los Angeles weeks later. (<u>Id.</u>) The parties did not resolve the case during that second session, but did make progress toward resolution. (<u>Id.</u>) Mr. Hughes continued to work with the parties for weeks over the phone. (<u>Id.</u> ¶ 18.) Ultimately, Mr. Hughes succeeded in getting the parties to agree on the "past service credit" and, separately, on attorneys' fees. (<u>Id.</u>) Both numbers were separately proposed and recommended by Mr. Hughes. (<u>Id.</u>) The parties formally accepted Mr. Hughes' proposals on August 8, 2017. (<u>Id.</u>)

The Settlement Agreement defines the Settlement Class as follows:

"Settlement Class" shall mean all former employees of Golden Eagle Insurance Company who are or were employed by Liberty Mutual Group, Inc. and/or Liberty Mutual Insurance Company, including, but not limited to, Golden Eagle Insurance Corporation, starting October 1, 1997, who participated or are participating in the Liberty Mutual Retirement Benefit Plan, have met all other vesting and eligibility requirements for benefits under the terms of the Plan, and who were or will be denied credit for all years of service with Golden Eagle Insurance Company for the purposes of calculating all benefits owed to them under the Plan from October 1, 1997

forward, or, in the case of any such persons who are deceased, their beneficiaries as determined under the Plan.

(ECF No. 339-2, Nicholas Decl. ¶ 2, Ex. A, Settlement at ¶ 1.45.) This Settlement Class consists of Class Members, or their beneficiaries as determined under the Plan, who will receive the New Benefit agreed to in the Proposed Settlement.

The Settlement provides added retirement benefits of fifty percent of the credit that would have been available had the entire Class obtained a 100% victory at trial and after appeal. (ECF No. 338-9, Poulin Decl. ¶ 18.) More specifically, the parties have agreed that the Plan will be amended to provide a New Benefit (as defined below) in addition to the existing retirement benefits provided by the Plan. The amendment will result in a larger retirement benefit through a grant of "past service credit" equivalent to half of the time that each Settlement Class Member worked for Old Golden Eagle ("OGE") before coming to work for Liberty Mutual on October 1, 1997, after the acquisition. As stated in the Settlement Agreement:

> The Parties agree that the Plan will be amended by the plan sponsor to provide a New Benefit to Settlement Class Members under the Plan commensurate with granting fifty percent (50%) past service credit for years of employment by Golden Eagle Insurance Company for purposes of benefits accrual, and subject to all the other terms and conditions of the Plan.

(ECF No. 339-2, Nicholas Decl. ¶ 2, Ex. A, Settlement at ¶ 13.1.)

In addition, Liberty has agreed to separately pay $7.5 million in attorneys' fees to Class Counsel, to reimburse $250,000 in out-of-pocket expenses, and pay $25,000 in total incentive awards to class representatives. (Id., Nicholas Decl. ¶ 2, Ex. A, Settlement at ¶ 13.7.) Liberty has also paid or will pay to cover the notice costs and the costs of administering the new settlement.

### Legal Standard

The Ninth Circuit adheres to a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." Class Plaintiffs v. City

6

10CV2179-GPC(MDD)

of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992); see also Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution[.]"). "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge[.]" Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).

Federal Rule of Civil Procedure 23(e) provides that a court may approve a proposed settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); see also Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003). In making this determination, a district court must consider a number of factors, including, but not limited to:

> [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

Staton, 327 F.3d at 959 (internal citation and quotation marks omitted).

In examining the settlement for "overall fairness," a court must review the settlement "as a whole, rather than the individual component parts." Hanlon, 150 F.3d at 1026. A court cannot "delete, modify or substitute certain provisions." Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 630 (9th Cir. 1982). Rather, "[t]he settlement must stand or fall in its entirety." Hanlon, 150 F.3d at 1026.

////
////
////
///
////
////

7

**Discussion**

**A.    The Settlement is Fair, Adequate and Reasonable**

    **1.    The Strength of Plaintiffs' Case; the Risk, Expense, Complexity, and Likely Duration of Further Litigation; and the Risk of Maintaining Class Action Status Throughout the Trial**

While Plaintiffs' case is strong, it had to overcome substantial hurdles to achieve the Settlement and Plaintiffs would have had to endure even greater hurdles had they not settled. Plaintiffs overcame motions to dismiss, certified the class, and overturned an adverse summary judgment ruling that terminated the entire case (and ushered in a six-figure cost bill from Liberty Mutual).

After the case was reinstated, Liberty Mutual renewed its motion for summary judgment. (ECF No. 296.) While the case survived that, Liberty successfully had two of the named plaintiffs' claims thrown out for failing to meet the applicable statute of limitations or statute of repose. (ECF No. 308.) And Liberty had filed a motion for reconsideration, (ECF No. 311), which was still pending when the parties reached a settlement, and that asked to have the entire case thrown out again.

Throughout the case, the statute of limitations was a serious issue. Many of the relevant events took place in or around the acquisition of Old Golden Eagle in 1997. Importantly, the statute of limitations issues not only threatened to shape the liability questions, they created issues that Liberty could cite to perhaps decertify the case.  For example, Liberty intended to argue that each class member had a different statute of limitations analysis that defeated commonality and/or predominance. Plaintiffs had to weigh these risks when deciding whether to settle.

It is important to remember the demographics of the class when re-assessing this case's inherent risks. This class consists of retirees in their 70s and 80s, or other mature workers who will retire soon.  (ECF No. 339-2, Nicholas Decl. ¶ 3.) Some class members, unfortunately, passed away during the course of this litigation. Id. It was unclear, therefore, what the class would look like if the Plaintiffs had rejected settlement,

and then, even if they won, to sit through the inevitable post-trial appeal process. Id. In sum, while Plaintiffs have a strong case, there were serious risks in continuing to litigate this action against a capable defendant and defense counsel with great resources and time on their side.

In sum, while Plaintiffs have a strong case, the Class faced serious risk and expense in continuing to litigate this action, and there was a risk of losing the Class status based on the statute of limitations issues. These factors weigh in favor of final approval.

### 2. The Amount Offered in Settlement

The amount in Settlement "is generally considered the most important, because the critical component of any settlement is the amount of relief obtained by the class." Bayat v. Bank of the West, No. C–13–2376 EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citation omitted). A settlement is not judged against only the amount that might have been recovered had the plaintiff prevailed at trial; nor must the settlement provide full recovery of the damages sought to be fair and reasonable. See Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998). "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982) (quoting United States v. Armour & Co., 402 U.S. 673, 681 (1971)). Because "the interests of class members and class counsel nearly always diverge, courts must remain alert to the possibility that some class counsel may urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." In re HP Inkjet Printer Litig., 716 F.3d 1173, 1178 (9th Cir. 2013) (internal quotation marks, citation, and footnote omitted).

Here, the proposed settlement gives out cash, not coupons. Without consideration of potential statute of limitations defenses as well as substantive defenses on the merits, the class members are receiving a proper and significant amount which all agree is a fair

9

compromise of a material and important dispute. Both sides have significantly compromised to reach this fair resolution.

Class Members are going to get half of the years they worked for Old Golden Eagle added into the Liberty Mutual retirement plan formula as if they had worked those years for Liberty Mutual. This will put more than millions of dollars in added retirement benefits in the pockets of class members and eliminate the uncertainty of further litigation. (ECF No. 338-9, Poulin Decl. ¶ 18.) Class members have the option to take their money in lump sum payments or in an annuity. This amounts to $30 million of extra retirement benefits for class members. (Dkt. No. 338-9, Poulin Decl. ¶ 18.)

Under this settlement, class members will receive substantial sums. For example, one 79-year-old class member will receive a new benefit with a present lump sum value of over $100,500.00. (ECF No. 339-2, Nicholas Decl. ¶ 5.) Yet another 79-year-old class member will receive over $256,000 (if electing to take the lump sum). (Id.) A certain 54-year-old class member will receive, if they so-elect, a lump sum of over $55,000. (Id.) Scores more will receive thousands or tens-of-thousands in added retirement benefits depending on their circumstances.[1] (Id.) These results are even more remarkable and of even greater value to the Class for the simple and obvious reason that, given the Court's recent Motion for Summary Judgment Order, the class might otherwise face the possibility of recovering nothing or, prevailing at trial, only to see the Class members' retirement years fade away during still more years on appeal.[2] Given the history of this

---

[1] Of course, others will receive less, such as a few hundred dollars if they take the lump sum. It all depends on the various factors, like age, date of retirement, salaries with Liberty prior to retirement, and others that The Plan itself would normally factor in as part of the regular retirement plan formulas. Regardless, the aggregate recovery is substantial and was efficiently obtained through one, hard-fought proceeding.

[2] This was essentially an all or nothing case. Either the Court would have provided a 100% credit to some or all of the Class Members or no Class Members would have recovered anything. The fifty percent figure is perhaps the only percentage that either side could have ultimately agreed to in compromise and represents an honest and good faith evaluation and compromise by both sides. It would be difficult to completely justify for either side a different percentage.

dispute, this is an excellent result for the class as evidenced by the complete lack of any complaints or objections.

### 3. Experienced Counsel Negotiated Seriously and in Good Faith, and Only Reached a Settlement after Years of Heavy Investigation, Litigation, and Discovery

Courts defer to the judgment of experienced counsel when determining whether negotiations were fair and informed. Absent fraud and collusion, the court may not only rely upon the judgment of experienced attorneys, but it should be hesitant to "substitute its own judgment for that of counsel." Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977); see also Officers for Justice, 688 F.2d at 625.

Here, all Class Counsel are experienced class action litigators and experienced in ERISA litigation. Their collective experience includes decades of litigating large class actions throughout the state and federal courts. (ECF No. 332-2, Nicholas Decl. in support of Preliminary Approval ¶¶ 2–13.) They have litigated class actions and advocated their clients' positions in trial courts across the nation, in state courts of appeal, in the Ninth Circuit Court of Appeal, the Sixth Circuit Court of Appeal, and the U.S. Supreme Court. (Id.)

Class counsel knows this settlement to be fair and just. (Id. ¶ 2.) However, counsel did not reach that conclusion until they spent years poring over the facts and the law in this case, engaging experienced experts and consultants where necessary, and utilizing technology and skill to marshal terabytes of evidence, reams of written discovery and disclosures, and dozens of depositions over the 7+ years this District Court action was pending (plus the years the matter spent in the administrative phase). Class Counsel had the information, experience, and resolve to effectively weigh the prospects of the case over time, and they only did so after the close of all discovery in the case.

There can be no serious question that this litigation and the Settlement were non-collusive. See Officers for Justice, 688 F.2d at 625 (district court scrutiny should be "limited to the extent necessary to reach a reasoned judgment that the agreement is not

the product of fraud or overreaching by, or collusion between, the negotiating parties and that the settlement, taken as a whole, is fair, reasonable, and adequate in all concerned."). The parties opposed each other vigorously and repeatedly at every turn. Defendants challenged the pleadings, challenged class certification, and resisted discovery. Then the parties battled through the appeal process and battled again after the mandate and re-briefing of summary judgment issues.

Moreover, Defendants' motion for reconsideration of the most recent motion for summary judgment ruling was still pending when the parties engaged the mediator to try to settle the matter. Defendants were briefing and intended to file a motion to decertify the class. In short, there was no collusion. There was only advocacy among adversaries. Finally, and importantly, the parties used an objective, third-party neutral to help them weigh the facts and issues, and to help fashion a settlement. This further demonstrates the presence of arm's-length negotiations and further supports a presumption of fairness. See Martens v. Smith Barney, 181 F.R.D. 243, 262-63 (S.D.N.Y. 1998); In re Toys "R" Us-Del FACTA Litig., 295 F.R.D. 438, 450 (C.D. Cal. Dec. 16, 2014) (finding a presumption of fairness where the settlement was reached following a mediation).

To resolve this matter, the parties attended multiple mediations with Mr. Hunter R. Hughes, Esq. As his resume states:

> [Mr. Hughes] has served as a neutral in scores of national class, collective, and mass actions (including mediating the Morgan Stanley, Smith Barney, FedEx, Abercrombie, Viacom, Disney, NBC, Time Warner, Coca-Cola, Home Depot, Publix, Boeing, Wal-Mart, Dell, Xerox, Lowe's, Cigna, Lockheed, Credit Suisse, Mutual of Omaha, General Dynamics, Boeing, Bechtel, Intrawest, AXA, and Allscripts class and collective action cases) with a focus on securities fraud (e.g. 10b-5 and Section 11 of the '33 Act claims) **as well as ERISA (e.g. 401k breach of fiduciary duty claims),** employment (pattern or practice and adverse impact discrimination and 216(b) FLSA claims) mass tort, business, and insurance coverage disputes.

(ECF No. 333-1, Resume of Hunter Hughes (emphasis added).)

The parties chose Mr. Hughes, and chose to travel to him, in part, for his considerable experience mediating large ERISA class actions, including <u>Abbott v. Lockheed Martin Corp.</u>, No. 06-701-MJR-DGW, 2015 WL 12670380 (S.D. Ill. Apr. 30, 2015) ($62 million settlement); <u>Kruger, et al. v. Novant Health, Inc., et al.</u>, No. 1:14CV208, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) ($32 million); <u>Kanawi, et al. v. Bechtel Corporation, et al.</u>, No. 06-cv-05566, 2011 WL 782244 (N.D. Cal. Mar. 1, 2011) ($18.5 million); <u>Nolte v. Cigna Corp.</u>, No. 07-2046, 2013 WL 3586645 (C.D. Ill. July 3, 2013) ($35 million).

Mr. Hughes guided the parties through two separate days of in-person negotiations in Atlanta and Los Angeles, respectively, and worked to continue to facilitate communication between the parties for several months until the parties eventually accepted his proposal. (ECF No. 332-2, Nicholas Decl. in support of Preliminary Approval ¶ 2.) The negotiations that led to this Settlement, in short, involved highly experienced counsel, well-informed, and done only in good faith. This warrants final approval.

### 4.    The Presence of a Governmental Participant

No governmental agency participated in this litigation or Settlement. After the Court preliminarily approved the Settlement, Defendants sent CAFA notices to the United States Attorney General and to the Attorneys General of all 50 states, the District of Columbia, and each of the United States Territories. <u>See</u> 28 U.S.C. § 1715; ECF No. 340-1, Fiereck Decl. ¶¶ 7-8.) To the parties' knowledge, no governmental agency has objected to the Settlement, which weighs in favor of the Settlement. <u>See</u> <u>Schuchardt v. Law Office of Rory W. Clark</u>, 314 F.R.D. 673, 685 (N.D. Cal. 2016).

### 5.    Class Members Reacted Positively to the Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." <u>Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.</u>, 221 F.R.D. 523, 529 (C.D. Cal. 2004). "The absence of a single objection to the Proposed

Settlement provides further support for final approval. . . . " Id.; see also Vedachalam v. Tata Consultancy Servs., Ltd, No. C06-0963CW, 2013 WL 3929119, at *1 (N.D. Cal. July 18, 2013) (same).

No Class Member has objected to the settlement. (ECF. No. 341, Nicholas Suppl. Decl. ¶ 2.) In fact, two class members wrote letters to Class Counsel expressing their gratitude for the work performed and the settlement achieved. (ECF No. 332-2, Nicholas Decl. in support of Preliminary Approval ¶¶ 2; ECF No. 339-4, Nicholas Decl. ¶ 3, Ex. B.) This factor also weighs in favor of approving the settlement.

In summary, all of the Staton factors weigh in favor of finally approving this hard-fought Settlement.

**B.    Request for Class Representative Incentive Awards**

The Settlement also provides for incentive awards to named Plaintiff Geoffrey Moyle for $10,000, and $5,000 for Plaintiffs Arwood, Rollason, and Sanders.

Incentive awards are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez v. West Publ'g Corp., 563 F.3d 948, 958–59 (9th Cir. 2009). "Incentive awards are fairly typical in class action cases," but are ultimately "discretionary." Id. at 958. In deciding whether to approve an incentive award, courts consider factors including:

> 1)  the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995).

First, the Named Plaintiffs took on the burden of litigating on behalf of a class of people denied their retirement benefit and acted for the good of the public at large. Mr.

Moyle receives $5,000 more for his efforts only because he personally travelled to the in-person mediations in Atlanta and Los Angeles from his home in Oregon and took lead in evaluating the case for the Class. (ECF No. 339-2, Nicholas Decl. ¶ 6.) He is also the "original" plaintiff insofar as he was the first one to bring this problem to the attention of Class Counsel and has been involved the longest, since 2002. Id. Each of the named Plaintiffs was deposed and had to spend many hours gathering documents, responding to discovery requests, and working with counsel. (Id.)

Likewise, the Named Plaintiffs' actions have allowed the Settlement Class Members' retirement plans to be partially restored after they believed they would not have savings to fall back on. See In re U.S. Bancorp Litig., 291 F.3d 1035, 1038 (8th Cir. 2002) (prioritizing "the degree [to which] the class has benefitted . . . ."). Moreover, these awards align with incentives for plaintiffs in other large-scale class actions. See, e.g., Zilhaver v. United Health Group, 646 F.Supp.2d 1075, 1085 (D. Minn. 2009) (permitting incentive awards of $15,000 to named plaintiffs who "bore the risks of counterclaim or collateral attack, and consulted with class counsel throughout the suit"); In re Iowa Ready-Mix Concrete Antitrust Litig., No. C10-4038-MWB, 2011 WL 5547159, at *5 (N.D. Iowa Nov. 9, 2011) (authorizing $10,000 incentive award to several named plaintiffs); In Re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 457, 463 (9th Cir. 2000) (accepting $5,000 proposed incentive award related to $1.725 million settlement).

Based on the above, the incentive awards reasonably reward the Named Plaintiffs for their work protecting their fellow Class Members' retirement benefits. The Court GRANTS Plaintiffs' request for class representative incentive awards.

## C. Plaintiffs' Motion for Attorneys' Fees and Costs

Class counsel seek attorneys' fees in the amount of $7.5 million. This amounts to less than 20% of the total recovery of $30 million.

This court has an "independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011). At the fee-

setting stage, the interests of the plaintiffs and their attorneys diverge and described as "adversarial"; therefore, the district court assumes a fiduciary role for the class plaintiffs. In re Mercury Interactive Corp. Sec. Litig., 618 F.3d 988. 994 (9th Cir. 2010).

In common fund cases, a district court has discretion to apply either the percentage of the fund method or the lodestar method.  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002); In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1295-96 (9th Cir. 1994).  The Ninth Circuit has adopted a benchmark of 25% of the total settlement; however, that amount may be "adjusted upward or downward to account for any unusual circumstances involved in [the] case."  Campbell v. Best Buy Stores, No. LA CV12-7794 JAK (JEMx), 2016 WL 6662719, at *7 (C.D. Cal. Apr. 5, 2016) (citing Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 273 (9th Cir. 1989)).  A court that applies the percentage method may cross-check the reasonableness of the fee by calculating the lodestar.   Id. (citing Vizcaino, 290 F.3d at 1050).  "The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases." Vizcaino, 290 F.3d at 1048.  Any percentage-of-the-fund award "must be supported by findings that take into account all of the circumstances of the case."  Id.  In determining whether an adjustment from the benchmark is appropriate, courts in the Ninth Circuit consider the following factors: "(1) the results achieved; (2) the risk undertaken by class counsel in pursuing the case; (3) whether the settlement generated benefits beyond a cash payment; (4) the market rate for similar representations; and (5) the nature of the representation, including whether it was executed on a contingency basis."  Taylor v. Shippers Trans. Express, Inc., Case No. CV 13-2092-BRO(PLAx), 2015 WL 12658458, at *14 (C.D. Cal. May 14, 2015) (citing Vizcaino, 290 F.3d at 1048-50).

### a.    Market Rate for Similar Representations

Class Counsel's fee request of less than 20% of the common fund is below the market rate for similar representation. Attorneys with comparable skill and experience, and who litigate class actions on a contingency basis routinely charge one-third of the recovery, or 40% or more if the case goes to trial.  Fernandez v. Victoria Secret Stores,

LLC, No. CV 06-4149-MMM(SHx), 2008 WL 8150856, at *16 n.59 (C.D. Cal. July 21, 2008) (fees representing one-third of the recovery are justified based on study showing that standard contingency fee rates are 33% if the case settles before trial, 40% if a trial commences, and 50% if trial is completed).

District courts in this circuit have routinely awarded fees of one-third of the common fund or higher after considering the particular facts and circumstances of each case. "[I]n most common fund cases, the award exceeds [the] benchmark." In re Omnivision Tech., Inc., 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (citations omitted); Taylor, 2015 WL 12658458, at *17 (holding that 33% was reasonable given the result, the risk, and counsel's time investment); Campbell, 2016 WL 6662719, at *10 (approving a fee of one-third of the common fund); Millan v. Cascade Water Servs., 12cv1821-AWI, EPG, 2016 WL 3077710, at *11-12 (E.D. Cal. June 2, 2016) (approving an award of 33% of the common fund); Barbosa v. Cargill Meat Solutions Corp., 297 F.R.D. 431, 449 (E.D. Cal. 2013) (awarding one-third of the settlement fund). The Ninth Circuit has also upheld awards of one-third of a common fund. See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 460 (9th Cir. 2000) (affirming an award of one-third of total recovery); In re Pacific Enters. Sec. Litig., 47 F.3d 373, 379 (9th Cir. 1995) (affirming an award of one-third of a $12 million common fund). Therefore, the requested fee amount is lower than the market rate for similar representation.

**b.     The Result Achieved**

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." In re Omnivision Techs., 559 F. Supp. 2d at 1046; In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d at 942. As discussed above, after more than seven years of litigation, a loss on summary judgment and success on having the Ninth Circuit reverse and remand that decision, Class Counsel secured a class settlement of 50% of the class' past service credit valued at over $30 million. This was the only result that could have occurred on the eve of trial given the risks inherent in trying this case. Any percentage amount more than 50%, from Liberty's point of view, would have

17

been an admission it was wrong-something it and its attorneys were not willing to stomach. This is money and not coupons. These results are even more remarkable and of even greater value to the Class for the simple and obvious reason that, given the Court's recent Motion for Summary Judgment Order, the class might otherwise face the possibility of recovering nothing or prevailing at trial, only to see the Class members' retirement years fade away during still more years on appeal. This represents an excellent result.

### c.      Risk of Litigation

This case involved significant risk due to the complexity of the case, the uncertainty in the law during the litigation, and the various factual issues that could have affected the viability of the action as a whole. The parties were on the doorstep of trial when they resolved the matter. Also, Class Counsel, working on a contingency, advanced thousands of hours in the litigation and advanced over $385,000 in costs (of which Class counsel are only requesting $250,000). Even though Plaintiffs believed their case was strong, the factual issues at the heart of the case, in particular the statute of limitations issue or the issue of individual reliance on representations made by Liberty regarding the Plaintiffs' pension benefits (which could have led to decertification), made the case anything but certain. This was evident in the fact that the Court granted Liberty's motion for summary judgment, which ended the case and subjected Class Counsel to a hefty cost bill until Plaintiffs successfully appealed. Right before the parties reached a settlement agreement, the Court granted Liberty's renewed motion for summary judgment as to a few class representatives on the grounds that their claims were barred by the statute of repose. Nonetheless, Class Counsel achieved a settlement for the entire class, even those that were dismissed.

There were unique risks in this case thanks to the demographics of the class members. (ECF No. 338-4, Nicholas Decl. ¶ 19.) Naturally, all of the class members are elderly—they are actual or soon-to-be retirees. (Id.) Indeed a few class members, unfortunately, passed away during the long course of this litigation. (Id.) Thus, there was

a risk that even if Plaintiffs prevailed at trial, certain class members would not actually get to enjoy the settlement if they had to survive motions for new trial and more years of appeals. (Id.) Class Counsel had to respect the risks in waiting. (Id.)

### d. Skill and Quality of Work of Plaintiffs' Counsel

The effort and skill displayed by counsel and the complexity of the issues involved are additional factors used in determining a proper fee. Vizcaino, 290 F.3d at 1048; In re Omnivision, 559 F. Supp. 2d at 1046-47. These factors strongly support the reasonableness of the fee requested here in light of the circumstances of the litigation, which included contentious discovery issues, massive amounts of discovery (including electronic discovery and data analysis), significant economic evaluation, and substantial legal analysis regarding a shifting body of law.

Indeed, a landmark Supreme Court decision came out in the middle of this litigation and had to be applied. See CIGNA Corp. v. Amara, 563 U.S. 421 (2011). Finally, settlement was only achieved here after Class Counsel demonstrated that they were ready and willing to actually try the case.

Notably, many courts have recognized the skill necessary to prosecute ERISA cases such as this one. Indeed, "ERISA concerns a highly specialized area of law." In re Colgate-Palmolive Co. ERISA Litig., 36 F. Supp. 3d 344, 350 (S.D.N.Y. 2014) ("a higher fee is warranted in ERISA cases as compared with some other types of cases"); see also Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. CPC Logistics, Inc., 698 F.3d 346, 350 (7th Cir. 2012) ("Federal pension law is a highly specialized field that judges encounter only intermittently.") (Posner, J.).

The "level of skill" factor weighs in favor of approving this award.

### e. Contingent Nature of the Fee

A fair fee award must include consideration of the contingent nature of the fee. See Vizcaino, 290 F.3d at 1050. It is well-established that attorneys who take on the risk of a contingency case should be compensated for the risk they assume. In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1299 (9th Cir. 1994). Thus far, Class

Counsel have not received any compensation for more than seven years of work on this case. They also bore the risk of having to pay Liberty's own substantial costs, if the Class had not prevailed. Class Counsel pressed on with the Ninth Circuit appeal even though Counsel knew that a loss on appeal, which is common for an appellant, would mean the total loss for the Class, the inability to recover the hundreds of thousands of dollars already poured into the action, and potential liability for a six-figure cost award in favor of Liberty Mutual. In short, the perils of this litigation were extreme for Class Counsel. The very real risks taken by Class Counsel support the requested fee.

### f. Lodestar Cross-Check

In applying the percentage-of-the-fund method, a district court has discretion to "double check the reasonableness of the percentage fee through a lodestar calculation." Spann v. J.C. Penney Corp., 211 F. Supp. 3d 1244, 1264 (C.D. Cal. 2016) (quoting Laffitte v. Robert Half Intern'l Inc., 1 Cal. 5th 480, 504 (2016)).  Because the lodestar measures counsel's time investment in the litigation, it provides a check on the reasonableness of the percentage award. Vizcaino, 290 F.3d at 1050 (". . . the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted. Thus, while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award.").

In conducting a lodestar cross-check, a court need not exhaustively catalogue and review counsel's hours, but can instead focus on "the general question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." Spann, 211 F. Supp. 3d at 1265 (quoting Laffitte, 1 Cal. 5th at 505).  To calculate the lodestar, courts multiply the number of hours reasonably expended litigating the case by a reasonable hourly rate, and adjusting the lodestar up or down by an appropriate multiplier reflecting "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment."  Jasper v. C.R.

England, Inc., Case No. CV 08-5266-GW(CWx), 2014 WL 12577426, at *9 (C.D. Cal. 2014) (quoting In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d at 941-942.)

Here, as summarized in a declaration, Class Counsel expended 18,206.70 hours litigating this action over seventeen years. (ECF No. 338-4, Nicholas Decl. ¶ 20.) Class Counsel's lodestar alone is over $7.73 million. (Id.) The requested $7.5 million fee award actually represents a negative multiplier on this amount, further establishing the reasonableness of this request. A cross-check with the lodestar confirms the reasonableness of awarding the 20% fee award.

**D.     Plaintiffs' Request for Costs**

Class Counsel seek reimbursement of $250,000 in out-of-pocket costs incurred during this litigation even though actual expenses incurred were over $385,000. (ECF No. 338-4, Nicholas Decl. ¶ 25; ECF No. 338-6, Ex. C; ECF No. 338-2, Winters Decl. ¶ 32; ECF No. 338-3, Ex. A.) "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." Ontiveros v. Zamora, 303 F.R.D. 356, 375 (C.D. Cal. 2014) (citation omitted). Class counsel assert that all the expenditures were necessary to Class Counsel's prosecution of the action and are reasonable considering the action. The Court concludes the costs are reasonable and awards Class Counsel $250,000 in costs.

## Conclusion

Based on the reasoning above, **IT IS HEREBY ORDERED** that,

1.     For purposes of this Order, the Court adopts and incorporates all definitions set forth in the Settlement Agreement unless a different definition is set forth in this Order.

2.     The Court has reviewed the Declarations of Charles Marr, Senior Project Manager - Class Action & Mass Tort Solutions, Epiq Legal Noticing, and Stephanie J. Fiereck, Legal Notice Manager for Epic Legal Noticing, and finds that Class Notice has been disseminated to the Class in compliance with the Court's Preliminary Approval Order

and that the Notice Program provided the best notice to the Class practicable under the circumstances, fully satisfied due process, met the requirements of Rule 23 of the Federal Rules of Civil Procedure, and complied with all other applicable law. The Court further finds that notice provisions of 28 U.S.C. § 1715 were complied with in this case.

3.      Two members of the Class have written to Plaintiffs' Counsel to express their support for the Settlement.  The Court has not received any objections to the Settlement. The absence of any objections bars any appeal.  (ECF No. 338-3, Settlement Agreement at ¶ 7.4) ("Any Class Member who fails to submit a timely and compliant written notice shall be barred from making any statement objecting to this Settlement Agreement at the Fairness Hearing or otherwise, and shall forever waive said Class Member's objection"); see also Newberg on Class Actions § 14:13 (5th ed.) ("[I]t is equally clear that a class member who did not object in the district court cannot pursue an appeal. Indeed, she has nothing to appeal because she waived her rights by not objecting below."); In re UnitedHealth Group Inc. Shareholder Derivative Litig., 631 F.3d 913, 917 (8th Cir. 2011) (class member must file a timely and proper objection with the district court before appealing a settlement agreement); Aichele v. City of Los Angeles, Case No. CV 12-10863-DMF (FFMx), 2015 WL 12732003, at *6 (C.D. Cal. Sept. 9, 2015) ("Since there have been no objections to the Settlement, there can be no appeals taken").

4.      No Class member has requested to speak at the Final Fairness Hearing.

5.      The Court finds that the requirements of Rule 23(b)(1) of the Federal Rules of Civil Procedure and other laws and rules applicable to preliminary settlement approval of class actions have been satisfied, and the Court approves the settlement of this Action as memorialized in the Settlement Agreement, which is incorporated herein by this reference, as being fair, just, reasonable, adequate, is in the best interests of the Class and its members, and fully and finally resolves all such claims.

6.      The release set forth in the Settlement will become binding and effective on all Class members upon the Effective Date, which under Paragraphs 1.17 and 1.22 will be thirty calendar days after entry of the Final Approval Order pursuant to Federal Rules of

Appellate Procedure, Rule 4.  To avoid ambiguity, these releases read as follows:

> 8.  **Claims Released by Class Members.** Upon the Effective Date of the Final Approval Order, the Class Members (and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors and assigns) shall be deemed to have absolutely and unconditionally released, waived, and forever discharged the Defendant Releasees from all claims, known or unknown, suspected or unsuspected, contingent or non-contingent, discovered or undiscovered, which they directly, indirectly, derivatively, or in any other capacity ever had, now have, hereafter may have, or may ever bring, that were or, under the allegations of the Complaint, could have been asserted, including all claims any or all Class Members could assert on behalf of the Retirement Plan, whether under state, federal, or local law of any type or description.

7.   The Plan Administrator is hereby directed to implement and carry out the Settlement in accordance with the terms and provisions thereof, including the Settlement Plan, as described in Paragraph 13 and elsewhere in the Settlement Agreement.

8.   Class Counsel and the Class Representatives fairly and adequately represented the interests of Class members.   The Court finds that Class Counsel's request for $7,500,000 in attorneys' fees which represents approximately 19.4% of the total recovery is fair and reasonable, given the high level of risk involved, the result achieved, the high quality of the legal representation, the duration of this case, the novelty of their claim, and the complexity of the issues in this Court and the Court of Appeals.  In addition, this Court has cross-checked the fee award and finds that Class Counsel's combined lodestar of $7.73 million is reasonable under the circumstances of this case, and finds that the fee award represents a small fee reduction in their lodestar, or a negative multiplier.  The Court finds that time spent by Class Counsel representing the Class's interests over the course of this litigation was reasonable and necessary, that Class Counsel's hourly rates are reasonable and in line with the prevailing rates in the community for complex class action litigation. The Court further finds that the approximately $380,000 in costs incurred to prosecute the

litigation were necessary, and accordingly that the reduced cost award in the amount of $250,000 is reasonable. Accordingly, Class Counsel is hereby awarded attorney fees in the amount of $7,500,000, and costs in the amount of $250,000.

9. Defendants shall make the payment specified in Paragraph 13.6 of the Settlement Agreement, within the deadline specified in that paragraph (*i.e.*, 30 days after the Final Approval Order has become Final).

10. Payment for the award of attorneys' fees and costs in all or any part of the amount to be received by the attorneys may be deferred (such as in the case of an annuity, a structured settlement, or periodic payments). The attorneys' fees will be paid out at the time and in the manner to be agreed upon by the Parties, which may include payment of the attorneys' fees in a single lump sum, a series of periodic payments, or both. If an attorney decides to receive their award of all or a portion of their fees in an annuity, structured settlement, or periodic payments, their interest in the funds will be paid from a Qualified Settlement Fund and assigned to a third party to provide such payments. Any such agreement as to the time and manner of paying the attorney's fees shall be irrevocable.

11. The fees and expenses shall be allocated among Class Counsel by Class Counsel Craig Nicholas in a manner that in a good-faith judgment, reflects each firm's contribution to the institution, prosecution, and resolution of the litigation.

12. The Court further finds the requested service awards are fair and reasonable, given the time and effort expended by the Class Representatives on behalf of the Class, and the risk they incurred in pursuing relief on behalf of the Class. The Court awards three $5,000 service awards to: (1) Pauline Arwood; (2) Thomas Rollason; and (3) Jeannie Sanders, and one $10,000 service award to Geoffrey Moyle. These incentive awards shall be distributed by Defendants at the same time as the attorneys' fees and costs.

13. There being no just reason for delay, the Court, in the interests of justice, expressly directs the Clerk of the Court to enter this Final Order and Judgment, and hereby decrees that, upon entry, it be deemed a Final Judgment.

14.    Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over (a) implementation and administration of the Settlement; and (b) the Parties and the Class members for the purpose of construing, enforcing, and administering the Settlement Agreement and all orders and judgments entered in connection therewith.

IT IS SO ORDERED.

Dated:  March 2, 2018

Hon. Gonzalo P. Curiel
United States District Judge

10CV2179-GPC(MDD)